DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

PHILIP KOPCZYNSKI (NYBN 4627741)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
Fax: (415) 436-7027
USACAN.USA-Filings@usdoj.gov
Philip.Kopczynski@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 20-CR-265 YGR |
| Plaintiff, | **UNITED STATES' OPPOSITION TO DEFENDANTS' DEMANDS TO DELAY THE DOJ'S DEATH PENALTY PROTOCOL (DKT. 37, 38)** |
| v. | |
| STEVEN CARRILLO and ROBERT ALVIN JUSTUS, JR, | Hearing Date: October 28, 2020 |
| Defendants. | Hearing Time: 2:00 PM |
| | Judge: Hon. Yvonne Gonzalez Rodgers |

OPP'N TO DKT. 37 & 38
20-CR-265 YGR

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

PROCEDURAL HISTORY .......................................................................................................2

    1.    Defendants Are Charged with Capital Federal Murder ...........................2

    2.    The United States Expedites the Production of Discovery ......................3

    3.    The Parties Meet and Confer about the Timing of the DPP .................3

ARGUMENT .............................................................................................................................5

    1.    The United States' DPP Timing Is Reasonable .......................................5

    2.    The Court Should Not Intervene into the DPP Timetable .....................8

    3.    Defendants' Factual Claims Are Vague and Unsubstantiated .............13

CONCLUSION ........................................................................................................................15

# TABLE OF AUTHORITIES

Federal Cases

*Bordenkircher v. Hayes*, 434 U.S. 357 (1968) .................................................................................. 10

*Hollingsworth v. Perry*, 558 U.S. 183 (2010) .................................................................................... 12

*Matter of Grand Jury Subpoena of Rochon*, 873 F.2d 1705 (7th Cir. 1989) .................................... 10

*Rinaldi v. United States*, 434 U.S. 22 (1977) ...................................................................................... 9

*Sullivan v. United States*, 348 U.S. 170 (1954) .................................................................................. 9

*United States v. Aguilar*, No. 18-CR-119-RS (N.D. Cal.) ............................................................. 7, 13

*United States v. Armstrong*, 517 U.S. 456 (1996) ............................................................................ 10

*United States v. Benavides*, No. 06-CR-62 (D. Mt.) ......................................................................... 12

*United States v. Bowers*, No. 18-CR-292 (W.D. Penn.) ..................................................................... 6

*United States v. Caceres*, 440 U.S. 741 (1979) .................................................................................. 9

*United States v. Chavez,* No. 15-CR-285-LHK (N.D. Cal.) .............................................................. 13

*United States v. Crusius*, No. EP-20-CR-389-DCG, 2020 WL 4340550
(W.D. Tex. July 28, 2020) .............................................................................................................. 9, 11

*United States v. Fernandez*, 231 F.3d 1240 (9th Cir. 2000) ........................................................... 7, 9

*United States v. Furrow*, 100 F. Supp. 2d 1170 (C.D. Cal. 2000) ..................................................... 9

*United States v. Gatto*, 763 F.2d 1040 (9th Cir. 1985) ..................................................................... 10

*United States v. Gomez-Olmeda*, 296 F. Supp. 2d 71 (D.P.R. 2003) ............................................... 11

*United States v. Hardrick*, No. 10-CR-202, 2011 WL 2516340 (E.D. La. June 22, 2011) ................ 9

*United States v. Jackson*, No. 04-CR-801, 2006 WL 59559 (S.D.N.Y. Jan. 9, 2006) ....................... 9

*United States v. Le*, 306 F. Supp. 2d 589 (E.D. Va. 2004) ................................................................. 7

*United States v. Lee*, 274 F.3d 485 (8th Cir. 2001) ............................................................................ 9

*United States v. Lopez-Matias*, 522 F.3d 150 (1st Cir. 2008) ...................................................... 9, 11

*United States v. McGill*, No. 09-CR-2856-IEG, 2010 WL 1571200 (S.D. Cal. Apr. 16, 2010) ...... 12

*United States v. McVeigh*, 944 F. Supp. 1478 (D. Colo. 1996) ......................................................... 9

*United States v. Pena-Gonzalez,* 62 F. Supp. 2d 358 (D.P.R. 1999) ................................................ 11

1 | *United States v. Pray*, 764 F. Supp. 2d 184 (D.D.C. 2011) ............................................................................ 9

2 | *United States v. Roof*, No. 15-CR-472 (D.S.C.) .......................................................................................... 6

3 | *United States v. Shakir*, 113 F. Supp. 2d 1182 (M.D. Tenn. 2000) ......................................................... 7, 9

4 | *United States v. Slone*, 969 F. Supp. 2d 830 (E.D. Ky. 2013) ................................................... 9, 10, 11, 12

5 | *United States v. Stone,* No. 12-CR-072-JCC, 2013 WL 5934346, (E.D. Cal. Nov. 5, 2013) .................... 11

6 | *United States v. Torres-Gomez*, 62 F. Supp. 2d 402 (D.P.R. 1999) ........................................................ 11

7 | *United States v. Tsarnaev*, No. 13-CR-10200-GAO, 2013 WL 5701582
   (D. Mass. Oct. 18, 2013)) .......................................................................................................... 6, 13

8 | *United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008) .................................................................... 12

9 | *United States v. Williams*, 181 F. Supp. 2d 267 (S.D.N.Y. 2001) .............................................................. 9

10 | *United States v. Williams*, No. 13-CR-764-WHO (N.D. Cal.) ................................................................... 7

11 | *United States v. Wilson*, 413 F.3d 382 (3d Cir. 2005) ............................................................................... 9

Federal Statutes

15 | 18 U.S.C. § 1111(b) ..................................................................................................................................... 3

16 | 18 U.S.C. § 3592 ........................................................................................................................................ 10

17 | 18 U.S.C. § 3593(a) ............................................................................................................................... 3, 10

18 | 18 U.S.C. § 3593(b) ..................................................................................................................................... 3

19 | 18 U.S.C. §§ 3591–99 .................................................................................................................................. 9

20 | 28 U.S.C. § 331 .......................................................................................................................................... 12

**PRELIMINARY STATEMENT**

In this capital case, the United States must determine whether it will seek the death penalty against one or both defendants. This determination will be made by the Attorney General after receiving confidential recommendations from the United States Attorney, the DOJ's Capital Review Committee, and the Deputy Attorney General. Pursuant to the DOJ's Death Penalty Protocol ("DPP"), defense counsel are invited to make mitigation presentations, first locally and then nationally.

Arguing that they need more time to prepare their local mitigation presentations, defendants ask the Court to enjoin the DPP while our community shelters in place. Defendant Robert Justus has filed a motion with a customary request for relief, Dkt. 38, while defendant Steven Carrillo has filed a pleading purporting to provide the Court with "notice" that counsel cannot conduct a satisfactory mitigation investigation without more time, Dkt. 37. For three independent reasons, the Court should deny Justus's motion and provide direction to Carrillo on his pleading.

First, the United States has given defendants a reasonable opportunity to make a local mitigation presentation. Following each of the 2013 Boston Marathon bombing, the 2015 Charleston church shooting, and the 2018 Pittsburgh synagogue shooting, the entire DPP was completed and the Attorney General's death-penalty determination was made within ten months of charging. In this case, the United States seeks to resolve the local DPP process, which is just the first step of the DPP, in five months. This five-month local timetable is consistent with a one-year DPP determination. Although the defense takes the position that no part of the DPP can move forward while we shelter in place, no one in our courthouse community is entitled to "freeze" their work, Dkt. 37 at 25, not even defense counsel in a capital case. Judges, courtroom deputies, probation officers, and other lawyers are getting their work done by phone, by Zoom, or in person with appropriate precautions. It is unreasonable for defendants to take the position that even the first step in the DPP cannot be completed until after shelter restrictions are lifted.

Separately, as the courts have repeatedly held, the DPP does not create judicially-enforceable rights. The DPP is a discretionary Executive process into which the Judicial Branch has declined to intervene on Separation-of-Powers grounds. It is true that courts have set time limits on the resolution of the DPP to ensure its completion reasonably in advance of trial dates, which the courts indisputably

have the power to set. It is also true that in 2008 the Judicial Conference's Committee on Defender Services urged the courts to use such time limits to control the cost of capital representations. Dkt. 38 at 60. What defendants demand in this case is quite different and indeed the opposite of a time limit. Defendants demand an order delaying the DPP indefinitely. Not one of defendants' cases squarely supports this request for relief.

Finally, there is a glaring factual omission at the heart of defendants' motion papers. While the defendants devote pages of briefing space and supporting declarations to generalized claims about the difficulty of conducting a mitigation presentation while sheltering in place, they fail to identify anything they have been unable to do in fact in this case. They emphasize, for example, their inability to have normal contact visits with their clients at Santa Rita. *See, e.g.*, Dkt. 37 at 24 n.4; Dkt. 38 at 18. But they fail to address the offer made by this Court at the first district-court status conference to make a courtroom available to defense counsel for contact visits with their clients. Likewise, defendants posit that family members may be unwilling to open up over Zoom or that documents may be unavailable. But these arguments are pure boilerplate. *See, e.g.*, Dkt. 38 at 70, 89 (declarations signed in April 2020 emphasizing the uncertainty in April 2020 that courthouses would open and lawyers would be able to do their work).

The Court should deny Justus's motion and provide direction to Carrillo about the filing of "notice" pleadings that do not move for relief but instead may create a false impression of error. *Cf.* Dkt. 28 (Carrillo's "status report" expressing unresolved misgivings about Zoom), 33 (Carrillo's "status report" containing a partial recitation of the parties' meet and confer on the present motion practice). Aspects of Carrillo's filings seem to test defense power to dictate the course of this case. It cannot be true that every defense demand is necessary to constitutionally effective representation and that any departure from those defense demands threatens constitutional error. With all due respect for the important role of defense counsel, it is for the United States to prosecute and for this Court to preside.

## PROCEDURAL HISTORY

### 1.     Defendants Are Charged with Capital Federal Murder.

Defendants Steven Carrillo and Robert Alvin Justus, Jr. are charged with murdering a protective security officer at the Oakland federal courthouse and attempting to murder a second officer on the night

of May 29, 2020. Defendants were charged by complaint on June 15–16, 2020, No. 20-mj-70771, Dkt. 1; No. 20-mj-70785, Dkt. 1, and by indictment on June 25, 2020, Dkt. 12. Count One of the indictment carries a sentence of life imprisonment or death. 18 U.S.C. § 1111(b). Justus appeared in the case on June 19, 2020, and his counsel was appointed effective to June 17, 2020. Dkt. 7.[1] Carrillo appeared on June 23, 2020, Dkt. 6, and his counsel was appointed effective to June 27, 2020, Dkt. 8.[2]

### 2. The United States Expedites the Production of Discovery.

Beginning in early July, the United States has produced discovery to Carrillo and Justus on an expedited basis. This discovery is described in detail in the accompanying Declaration of AUSA Philip Kopczynski ("Kopczynski Decl."). The page and gigabyte counts reflect substantial productions of video footage and social media postings. Most of the video footage focuses on the tragic events of just one evening, May 29, 2020. Kopczynski Decl. ¶ 2. The social media postings are mostly from defendants' own social media accounts. *Id*. As defendants have made supplemental discovery requests, the United States has responded promptly. *Id.* at ¶ 3.

### 3. The Parties Meet and Confer about the Timing of the DPP.

Because the defendants are charged with a capital crime, the United States must give notice "a reasonable time before the trial" of whether it intends to seek the death penalty. 18 U.S.C. § 3593(a). The decision to seek or not seek the death penalty will then shape subsequent phases of the case. *See generally* 18 U.S.C. § 3593(b)–(f).

The Department of Justice's procedures for deciding whether to seek the death penalty are described in Chapter 9-10.000 of the Justice Manual ("JM"), available here. These procedures are known as the Death Penalty Protocol or DPP. As applicable here, the DPP has four phases:

- The United States Attorney provides case information and a death-penalty recommendation to the DOJ's Capital Review Committee. JM 9-10.080. Cases must be submitted before indictment except when extenuating circumstances require a later submission. JM 9-10.060.

---

[1] Justus says that his counsel was appointed on July 6, 2020. Dkt. 38 at 8. It is correct that this Court's appointment order was entered that day, but the appointment was "*nunc pro tunc* to the date of any work begun by counsel," Dkt. 20, which was nearly three weeks earlier, on June 17, 2020, Dkt. 7.

[2] Carrillo says that his counsel was appointed on July 8, 2020. Dkt. 37 at 14. This Court's appointment order was entered that day, but Carrillo's counsel had appeared on July 2, 2020, and had been appointed *nunc pro tunc* to June 27, 2020. Dkt. 18.

OPP'N TO DKT. 37 & 38
20-CR-265 YGR                                        3

     In cases presenting extenuating circumstances, the United States Attorney receives a 45-day extension from the indictment date, which may be further extended in 45-day increments by providing a memorandum describing the circumstances that continue to prevent the submission of the case for review. *Id*. When the United States Attorney "is contemplating requesting authorization to seek the death penalty or otherwise believes it would be useful to the decision-making process to receive a submission from defense counsel," he or she "shall give counsel for the defendant a reasonable opportunity to present information for the consideration of the United States Attorney . . . .which may bear on the decision whether to seek the death penalty." JM 9-10.080.

- The Capital Review Committee reviews all the information and the recommendation submitted by the United States Attorney. JM 9-10.130. When the United States Attorney has recommended seeking the death penalty, or when "two or more members of the Capital Review Committee request a Committee conference," then a meeting is held among members of the Capital Review Committee, representatives of the United States Attorney's Office, and defense counsel. *Id*. The Committee then makes a recommendation to the Deputy Attorney General about whether to seek the death penalty, which may or may not differ from the United States Attorney's recommendation. *Id*.

- The Deputy Attorney General makes a recommendation about whether to seek the death penalty to the Attorney General. JM 9-10.130.

- The Attorney General decides whether the United States will seek the death penalty. JM 9-10.130. The final decision is made only after "defense counsel has . . . been afforded an opportunity to present evidence and argument in mitigation." *Id*.

These procedures, together with guiding principles of "fairness, national consistency, adherence to statutory requirements, and law-enforcement objectives," JM 9-10.140, aim to ensure that the death penalty decision in each capital case is "based upon the facts and law applicable to the case and . . . set within a framework of consistent and even-handed national application of Federal capital sentencing laws," JM 9-10.030. "The overriding goal of the review process is to allow proper individualized

consideration of the appropriate factors relevant to each case." *Id*.[3]

On July 30, 2020, the United States asked defendants to schedule local mitigation presentations before September 15, 2020, and offered to provide defense counsel with "reverse proffers" to speed their mastery of the case. Kopczynski Decl. Ex. A. Defense counsel accepted that offer, and the United States provided reverse proffers on August 14 and 17, 2020. Kopczynski Decl. ¶ 6. Defendants did not, however, schedule their local mitigation presentations.

For months the United States has asked defendants to provide a date for their local mitigation presentations. *Id*. In response, defendants have taken the position that they would not schedule and could not estimate when they would make their local mitigation presentations. *Id*. For the convenience of the Court and the orderly presentation of the present motion practice, the parties agreed on a briefing schedule, and the United States agreed not to make the local DPP recommendation before October 28, 2020. Dkt. 33-2, 34.

Defendants have now both filed papers with the Court on this issue. Justus asks for relief in the form of an order "compel[ling] the United States Attorney to provide his counsel with a reasonable opportunity to prepare for a mitigation presentation on his behalf." Dkt. 38 at 24. Carrillo does not ask for any relief but instead purports to provide "notice" of his counsel's "inability to constitutionally represent" him without indefinite delay. Dkt. 37 at 1.

## ARGUMENT

### 1.   The United States' DPP Timing Is Reasonable.

The DPP provides defendants with a "reasonable opportunity" to make a local mitigation presentation before the United States Attorney makes the local DPP recommendation. JM 9-10.080. In this case, the United States Attorney intends to make that recommendation approximately five months from when the defendants were first charged by complaint and three and one-half months after first asking defendants for their presentations.

There is ample precedent for a death penalty decision within the timeframe contemplated here. In other, similar federal capital cases in recent years, the United States completed the DPP and

---

[3] The DPP may also be reopened if there are changed circumstances including the emergence of new mitigation evidence. JM 9-10.160.

announced its death penalty decision well within a year of charging. These cases include the 2018 Pittsburgh synagogue shooting, *United States v. Bowers*, No. 18-CR-292, Dkts. 1 & 86 (W.D. Penn.) (ten months between complaint and notice of intent to seek death penalty), the 2015 Charleston church shooting, *United States v. Roof*, No. 15-CR-472, Dkts. 1 & 164 (D.S.C.) (ten months between indictment and notice of intent to seek death penalty), and the 2013 Boston Marathon bombing, *United States v. Tsarnaev*, No. 13-CR-10200, Dkts. 3 & 167 (D. Mass.) (nine months between complaint and notice of intent to seek death penalty). Every case must be judged on its own facts, but these cases, which were in many ways more sprawling than this one, are useful benchmarks. If the United States here is to make its decision on the death penalty within a similar timeframe of one year from charging, the case must not be unduly delayed at the first stage of the process.

Defendants argue that the coronavirus changes everything, but at this point in the pandemic, in nearly all segments of life, people have found ways to safely carry forward. Courts and lawyers have changed the way they work, but they have not simply stopped working, nor should they. The criminal justice system must continue to function through the present challenges.

The case is not overly complicated by the standards of capital prosecutions, and it has been prosecuted in a way that should speed the work of the defense. The heart of the case is a single criminal episode occurring on May 29, 2020. The United States filed detailed complaints, prioritized the production of discovery, and provided reverse proffers.

Defendants' arguments for delaying the DPP fall into four broad categories. First, Carrillo argues that the DPP does not set a particular date for the United States Attorney's recommendation. Dkt. 37 at 10. He writes that "the timing is controlled by reasonableness, not arbitrary deadlines." *Id.* at 17. But there is nothing arbitrary about the timing here. It is the product of careful consideration of all the factors in play, as the United States Attorney explained in a letter over two months ago notifying defense counsel of his thinking and intentions on this matter. Kopczynski Decl. Ex. A.

Second, both defendants argue that the volume of discovery is too great to allow a mitigation presentation at this time. Dkt. 38 at 9; Dkt. 37 at 15. But many key items of discovery were produced months ago, *see* Dkt. 38 at 29–40, and the overall volume of discovery in this case is not especially large by the standards of federal litigation. Much of the discovery consists of things like body camera

recordings from Oakland police officers who responded to the scene of the shooting. Defendants make no effort to explain why the ongoing review of such items prevents them from preparing a local mitigation presentation. Although Carrillo argues that he has sent discovery letters that are "awaiting the government's response," Dkt. 37 at 15, those letters request things like victim autopsy reports or a copy of Carrillo's criminal history report, despite the United States having already confirmed that Carrillo has no criminal history. Kopczynski Decl. ¶ 3. More fundamentally, Carrillo does not draw any logical connection between those letters and the mitigation presentation that he says he cannot now prepare. Faced with similar arguments, courts in this district and elsewhere have roundly rejected the notion that the DPP can proceed only after the production and defense review of particular discovery. *E.g.*, *United States v. Aguilar*, No. 18-CR-119-RS, Dkt. 168 at 1 (N.D. Cal.) (mitigation presentations are not "a triggering event for discovery scheduling"); *United States v. Williams*, No. 13-CR-764-WHO, Dkt. 197 at 4–5 (N.D. Cal.) ("the government's death penalty protocols do not create additional discovery and disclosure rights for defendants"); *United States v. Le*, 306 F. Supp. 2d 589, 592 (E.D. Va. 2004) ("defendant has no constitutional right to exculpatory material in connection with, or in time for, its effective use during the DOJ's internal death penalty authorization process"); *United States v. Shakir*, 113 F. Supp. 2d 1182, 1187 (M.D. Tenn. 2000) (DPP "does not create any enforceable substantive or procedural rights in the defendants," including discovery rights); *see also United States v. Fernandez*, 231 F.3d 1240, 1246 (9th Cir. 2000) (Justice Manual "does not create any . . . discovery rights").

Third, defendants argue that they must complete their factual investigation before they can make a local mitigation presentation, *see, e.g.*, Dkt. 38 at 16–22, and that some aspects of their investigation, such as in-person witness interviews and contact jail visits, are impossible while we shelter in place, *see* Dkt. 37 at 20, 23; Dkt. 38 at 26. But the interference caused by shelter restrictions is not as extensive as defendants claim, particularly at this point in the pandemic when practices like social distancing and mask wearing have allowed many activities, essential and otherwise, to carry on safely. Most fundamentally, defendants' argument fails because it equates the preparation required for their local mitigation presentations with trial readiness. Carrillo claims that all the standards governing what it means to properly defend a capital case at trial "apply at the decision submission stage," Dkt. 37 at 16, yet he cites no authority for that extraordinary proposition. There can be no authority for it, because it

runs contrary to a core purpose of the DPP, which is to ensure that decisions about seeking the death penalty are made well before trial.[4]

Fourth, and related to the prior point, defendants claim that the combination of shelter restrictions and the "realities" of capital casework make it "impossible" to say when a local mitigation presentation could occur. Dkt. 37 at 6, 15, 25–26; Dkt. 38 at 23. Carrillo, going further, says that his counsel cannot effectively represent him for "the foreseeable future." Dkt. 37 at 20. These hyperbolic claims cannot be squared with the DPP or any reasonable conception of the administration of justice. For all the challenges created by the shelter restrictions, it cannot be that the only reasonable approach is indefinite delay. In fact, by insisting that anything short of indefinite delay violates the "reasonable opportunity" provision of the Justice Manual, JM 9-10.080, defendants argue in essence for the United States to violate another provision of the Justice Manual. Each time the United States Attorney requests an extension of the deadline to submit the case to the Capital Review Committee, he "must provide an estimated date by which the case will be submitted for capital review." JM 9-10.060. No such estimate could be given if defendants' notions were to prevail.

### 2. The Court Should Not Intervene into the DPP Timetable.

The DPP guides the DOJ's internal charging deliberations and is not justiciable. The Justice Manual itself provides:

> The Justice Manual provides internal DOJ guidance. It is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal. Nor are any limitations hereby placed on otherwise lawful litigation prerogatives of DOJ.

JM 1-1.200. The Ninth Circuit has considered this issue in the context of a death penalty-eligible case and determined that, "it is clear that the [Justice Manual] does not create any substantive or procedural

---

[4] Defendants also argue that preparation of a full defense is necessary even at this early stage because the local DPP recommendation "is typically given great deference." Dkt. 38 at 16; *see also* Dkt. 37 at 17–18. Defendants have no basis to make this assertion because the local recommendation is confidential; only the Attorney General's decision is public. *See* JM 9-10.050. Carrillo cites the so-called "Spencer report," but the source of that report's statements on the effect of the local recommendation is unclear and may be nothing more than ipse dixit. Moreover, that report, published in 1998 and revised in 2010, does not reflect the DOJ's current practice. The review of the Capital Review Committee and the Deputy Attorney General are not simply a rubber stamp of the United States Attorney's recommendation. Their review ensures nationwide consistency among other important purposes.

OPP'N TO DKT. 37 & 38
20-CR-265 YGR                                    8

rights, including discovery rights." *Fernandez*, 231 F.3d at 1246. In *Fernandez*, the Ninth Circuit considered a district court order precluding the United States from seeking the death penalty because it had refused to comply with an order directing it to produce to the defense the internal memorandum and other forms submitted as part of the capital case review. *Id.* at 1242. The Court of Appeals concluded that because internal Department of Justice policies do not create any rights for criminal defendants, they "cannot serve as a legal basis for the district court's discovery order." *Id.* at 1246.

The Ninth Circuit's decision in *Fernandez* is consistent with the holdings of other circuit and district courts finding that the DPP does not create enforceable rights. *See, e.g.*, *United States v. Lopez-Matias*, 522 F.3d 150, 155–56 (1st Cir. 2008) (violation of DPP does not support dismissal of death notice); *United States v. Wilson*, 413 F.3d 382, 389 (3d Cir. 2005) ("Department of Justice guidelines and policies do not create enforceable rights for criminal defendants."); *United States v. Lee*, 274 F.3d 485, 493 (8th Cir. 2001) (same); *United States v. Crusius*, No. EP-20-CR-389-DCG, 2020 WL 4340550, at *5 (W.D. Tex. July 28, 2020) (same); *United States v. Slone*, 969 F. Supp. 2d 830, 834 (E.D. Ky. 2013) (same); *United States v. Tsarnaev*, No. 13-CR-10200-GAO, 2013 WL 5701582, at *1 (D. Mass. Oct. 18, 2013) (same); *United States v. Pray*, 764 F. Supp. 2d 184, 188 (D.D.C. 2011) (same); *United States v. Hardrick*, No. 10-CR-202, 2011 WL 2516340, *2 (E.D. La. June 22, 2011) (same); *United States v. Jackson*, No. 04-CR-801, 2006 WL 59559, *2 (S.D.N.Y. Jan. 9, 2006) (same); *United States v. Williams*, 181 F. Supp. 2d 267, 299 (S.D.N.Y. 2001) (same); *United States v. Furrow*, 100 F. Supp. 2d 1170, 1178 (C.D. Cal. 2000) (same); *Shakir*, 113 F. Supp. 2d at 1187 (same); *United States v. McVeigh*, 944 F. Supp. 1478, 1483–84 (D. Colo. 1996) (same); *cf. United States v. Caceres*, 440 U.S. 741 (1979) (finding no application of exclusionary rule to evidence obtained in violation of Internal Revenue Service procedures); *Rinaldi v. United States*, 434 U.S. 22, 29, 31 (1977) (*Petite* policy enforceable only at request of United States); *Sullivan v. United States*, 348 U.S. 170 (1954) (violation of internal requirement to receive departmental approval for submission of tax cases to grand jury did not provide basis to attack grand jury's indictment).

In enacting the Federal Death Penalty Act ("FDPA"), 18 U.S.C. §§ 3591–99, Congress broadly provided that the death penalty may be sought for a capital offense when "the attorney for the government believes that the circumstances of the offense are such that a sentence of death is justified"

and thereafter files, within a reasonable time before a trial or guilty plea, a notice indicating that the United States will seek the death penalty. 18 U.S.C. § 3593(a). Thus, the decision whether to seek the death penalty is an exclusively Executive function. The Supreme Court has noted that the decision "whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [the prosecutor's discretion]," so long as it is supported by probable cause. *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1968); *see also United States v. Armstrong*, 517 U.S. 456, 464 (1996) (decision whether to prosecute rests in government's discretion unless premised on constitutionally prohibited criteria).

In discussing a district court's supervisory powers, the Ninth Circuit has recognized the limits placed on those powers by the Separation-of-Powers principle. In *United States v. Gatto*, 763 F.2d 1040 (9th Cir. 1985), the Ninth Circuit wrote that "the separation-of-powers principle suggests that the creation of a rule by supervisory power can be justified only when a recognized right has been violated. Even then, it may be wise for the courts to await congressional action." *Id.* at 1046. The Seventh Circuit cited *Gatto* when reversing a district court's order disqualifying the Attorney General from a grand jury investigation, noting that where it is not a violation of any "specific constitutional provision, statute, or rule . . . separation-of-powers principles preclude [courts] from intruding on the Attorney General's executive prerogative." *Matter of Grand Jury Subpoena of Rochon*, 873 F.2d 170, 174–75 (7th Cir. 1989).

To give defendants what they request here, which is essentially an injunction prohibiting the United States from moving forward with its decision-making process on whether to seek the death penalty, would be an unwarranted intrusion into the Executive Branch's prosecutorial discretion. *See, e.g.*, *Slone*, 969 F. Supp. 2d at 836–38. Defendants claim that the timeframe contemplated by the United States Attorney violates the Justice Manual's "reasonable opportunity" provision, but, as noted above, those internal procedures create no judicially enforceable rights. As to any possible statutory rights at issue, while the FDPA provides for presentation of mitigation evidence to the jury, *see* 18 U.S.C. § 3592, it is silent on how the "attorney for the government" should go about deciding that "the circumstances of the offense are such that a sentence of death is justified," 18 U.S.C. § 3593(a). There is therefore no statutory source of authority for defendants' extraordinary request to enjoin an internal

DOJ decision-making process.

Nor is there a constitutional source of authority for their request. Justus asserts that a thorough defense "mitigation investigation . . . is required by the Fifth, Sixth and Eighth Amendments" before the United States Attorney makes his death penalty recommendation, Dkt. 38 at 23, while Carrillo offers the conclusory claim that the United States' actions threaten violations of "due process and equal protection" as well as "the Sixth and Eighth Amendments," Dkt. 37 at 14. Carrillo also says his counsel had a duty rooted in the Constitution "to investigate the case before acting in a way that could jeopardize the client." Dkt. 37 at 10. But neither defendant cites any precedent for importing the Fifth and Eight Amendments into the DPP. As for the Sixth Amendment, Carrillo cites a single case, *United States v. Pena-Gonzalez*, 62 F. Supp. 2d 358, 363 (D.P.R. 1999), which held that the capital case review process is a "critical stage" of the case that gives rise to a Sixth Amendment right to the assistance of counsel. Dkt. 38 at 32. But that decision, along with another by the same judge, *United States v. Gomez-Olmeda*, 296 F. Supp. 2d 71, 78 (D.P.R. 2003), are the only two cases of which the undersigned counsel is aware that support defendants' Sixth Amendment argument. To say those cases have not been followed and have limited value to this Court would be an understatement. Repeatedly other courts have held that the capital case review process "is not a 'critical stage' of a criminal proceeding for Sixth Amendment purposes that affects a defendant's right to a fair trial." *Crusius*, 2020 WL 4340550, at *5 (collecting cases); *see also United States v. Stone*, No. 12-CR-072-JCC, 2013 WL 5934346, at *3 n.3 (E.D. Cal. Nov. 5, 2013); *Slone*, 969 F. Supp. 2d at 833–34. Even another judge in the same district reached a contrary conclusion to *Pena-Gonzalez* and *Gomez-Olmeda*. *See United States v. Torres-Gomez*, 62 F. Supp. 2d 402, 404–07 (D.P.R. 1999) (finding *Pena-Gonzalez* "mistaken" and that DPP does not implicate Sixth Amendment). The First Circuit also undercut the reasoning of *Pena-Gonzalez* and *Gomez-Olmeda* when it ruled in *Lopez-Matias* that a violation of Justice Manual policies does not give rise to the sanction of dismissing a death notice. 522 F.3d at 156. The First Circuit's decision vacated an order issued by the same judge who decided *Pena-Gonzalez* and *Gomez-Olmeda*. The defendants' constitutional claims are therefore unavailing. And because that is so, the Separation-of-Powers principle precludes the Court from granting the requested relief.

Defendants attempt to support their request for judicial intervention with a smattering of other

authorities, but those authorities are not persuasive. Justus relies in large part on *United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008) (en banc). Dkt. 38 at 13. Justus argues that under *W.R. Grace*, the Court has "authority to enter pretrial case management orders designed to ensure that the parties are adequately and timely prepared so that the trial can proceed efficiently and intelligibly." *Id*. But while *W.R. Grace* affirms the Court's broad authority in many areas of case management, such as setting a deadline for the United States' death notice, it does not give the Court authority to intervene in internal DOJ processes. *W.R. Grace* involved a court order concerning pretrial witness lists. 526 F.3d at 508. The Ninth Circuit explained that "a district court has the authority to enter pretrial case management and discovery orders designed to ensure that the relevant issues to be tried are identified, that the parties have an opportunity to engage in appropriate discovery and that the parties are adequately and timely prepared so that the trial can proceed efficiently and intelligibly." *Id.* at 509. Each of these matters relates directly to the trial and management of the trial process. *W.R. Grace* did not involve circumstances like those here, where the defense seeks judicial intervention in internal Executive Branch functions.

Justus also cites a guideline from the Judicial Conference of the United States suggesting that district courts may set a deadline for defense mitigation presentations to the United States Attorney. Dkt. 38 at 14. But Judicial Conference guidelines, while worthy of consideration, are only "suggestions and recommendations." 28 U.S.C. § 331. The Judicial Conference's conclusions are not binding on courts. *See Hollingsworth v. Perry*, 558 U.S. 183, 193 (2010). The district court in *Slone*, confronted with the same argument Justus makes here, explained that the "Guidelines create no enforceable rights because they were not adopted pursuant to an enabling statute authorizing the Judicial Conference to act with the force of law." 969 F. Supp. 2d at 835. Unpersuaded by the small number of cases to the contrary (including two cases relied on by Justus: *United States v. McGill*, No. 09-CR-2856-IEG, 2010 WL 1571200 (S.D. Cal. Apr. 16, 2010) and *United States v. Benavides*, No. 06-CR-62, Dkt. 724-3 (D. Mt.)), *Slone* concluded that the "Guidelines . . . assume a power district courts simply do not have." 969 F. Supp. 2d at 835. *Slone* also recognized an irony in the fact that "the entire purpose" of the guideline at issue "is to control litigations costs by *speeding up*, rather than slowing down, the DOJ's process." *Id.* at 836 n.3; *accord* Dkt. 38 at 61 (describing potential for the guideline to "significantly reduce costs in

capital representations"); *Tsarnaev*, 2013 WL 5701582, at *2 (the Judicial Conference "guideline was plainly intended to help expedite the government's death penalty decision," and by "contending that it should be a reason for extending or postponing the decision, the defendant argues against its objective").

Finally, defendants cite Judge Koh's 2019 order in the *Chavez* case and Magistrate Judge Larson's 2010 order in the *Ablett* case. Dkt. 38 at 15; Dkt. 37 at 31–32.[5] But Judge Koh's ruling, made in a case management order, contains no reasoning or analysis. *See United States v. Chavez*, No. 15-CR-285-LHK, Dkt. 736 at 2 (N.D. Cal.). More persuasive is Judge Seeborg's conclusion last year in *Aguilar*, reached after a lengthy motion hearing, that "questions regarding the timing of [Capital Review] Committee proceedings are internal to the Department of Justice." *United States v. Aguilar*, No. 18-CR-119-RS, Dkt. 168 (N.D. Cal.). At that motion hearing, Judge Seeborg explained that the DPP is "an elective process by the Department of Justice," not "a statutorily mandated proceeding," and that he had "no control over when the Department of Justice schedules" the defense mitigation presentations. *United States v. Aguilar*, No. 18-CR-119-RS, Dkt. 177 at 6–7, 10 (N.D. Cal.). He also made clear that the other decision from this district cited by Carrillo, *Ablett*, is entitled to no weight. *See id.* at 39 (The Court: "[*Ablett*] was my case. I referred the matter to Magistrate Judge Larson. . . . I never reviewed the decision that Judge Larson issued. And, I will tell you candidly, I would have reversed Judge Larson's decision.").

### 3. Defendants' Factual Claims Are Vague and Unsubstantiated.

The centerpiece of Justus's motion is a pair of factual declarations from the ACLU and the ABA Death Penalty Representation Project. Dkt. 38 at 64, 72. The declarants practice on the East Coast. *Id.* at 64, 89. The declarations were executed on April 1–2, 2020. *Id.* at 70, 89. Neither declaration has anything to say about Carrillo or Justus in particular, which is not surprising, since the declarations pre-date the crimes they are alleged to have committed.

With limited exceptions, the declarations focus on the importance and the extensiveness of defense counsel's trial investigation. Neither declaration takes the position that defense counsel are

---

[5] In addition, Carrillo identifies the District of Arizona district court's decision in *United States v. Schlesinger* as an instance of a court "finding jurisdiction" over the Department of Justice's DPP, Dkt. 37 at 27, but in fact, the court said it was "not convinced" that it had jurisdiction, Dkt. 37-3.

required to complete their trial investigation in advance of the very first step of the DPP. The only reference to the DPP appears in the ACLU declaration, which asserts that mitigation presentations can only occur in person. *Id.* at 87 (a remote presentation "introduces an element of arbitrariness to capital decision making"). These declarations argue, from the perspective of early April 2020, that death penalty counsel cannot complete their trial investigations by phone or video and may not be able to collect pertinent court records. *See, e.g.*, *id.* at 66, 80, 81, 84. These declarations do not support defendants' position that the DPP needs to be delayed indefinitely because defense counsel have not completed their trial investigations.

Carrillo's pleading is notable for the strength of its language and the weakness of its evidentiary support. Carrillo argues that the coronavirus "paralyzes" and "freezes" the defense investigation. Dkt. 37 at 2, 18, 22, 25. Carrillo argues that the shelter regulations represent an "insurmountable impediment" that is "impossible" to overcome. *Id.* at 14, 19, 20, 26. Carrillo argues that while social distancing and travel restrictions remain in place, a meaningful and reliable mitigation investigation "cannot occur." *Id.* at 23. The United States' intention to move forward with the DPP is characterized by Carrillo as "irresponsible" and "violative of due process and equal protection." *Id.* at 14. Carrillo argues that his counsel would be "foolish and unprofessional" even to estimate when they might be ready to make a defense mitigation presentation. *Id.* at 15. During meet and confer, Carrillo's counsel went even further, arguing that turning over a time estimate for a local DPP presentation "might well compel us to turn over our bar cards at the same time." Dkt. 33-1 at 4. Not one of the defense quotations appearing in this paragraph is supported by an evidentiary citation. Nonetheless, Carrillo takes the position that any course other than indefinite delay "invites potential error." Dkt. 37 at 26.

What is missing from both defendants' briefing is a concrete discussion particularized to this case of the obstacles they have encountered in fact despite their best efforts to prepare a local DPP mitigation presentation on a timetable that is well within the range of reasonableness of other, similar cases. Although defendants argue that Santa Rita will not allow them to have contact visits with their clients, and argue that their trial investigation depends on contact visits, they do not address this Court's offer to facilitate contact visits, nor do they substantiate their apparent premise that a local DPP mitigation presentation must meet the standards of full trial readiness. Along the same lines, the

defendants argue that documentary evidence may not be available to them, but they fail to identify anything they have been unable to obtain in fact.

The absence of factual support for defendants' broad arguments undermines their position and may foreshadow the way in which they intend to defend this case.

## CONCLUSION

For all the foregoing reasons, the Court should deny Justus's motion and provide direction to Carrillo in response to his "notice" pleading.

DATED: October 13, 2020                          Respectfully submitted,

                                                 /s/ David L. Anderson
                                                 DAVID L. ANDERSON
                                                 United States Attorney

                                                 PHILIP KOPCZYNSKI
                                                 Assistant United States Attorney