EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No.13-10200-GAO |
| | ) | |
| DZHOKHAR A. TSARNAEV, | ) | |
| Defendant | ) | |

## NOTICE OF INTENT TO SEEK THE DEATH PENALTY

The United States of America, by and through its
undersigned counsel and pursuant to 18 U.S.C. § 3593(a),
notifies the Court and Defendant DZHOKHAR TSARNAEV that the
United States believes the circumstances of the offenses charged
in Counts One through Ten and Counts Twelve through Eighteen of
the Indictment are such that, in the event of a conviction, a
sentence of death is justified under Chapter 228 (Sections 3591
through 3598) of Title 18 of the United States Code, and that
the United States will seek the sentence of death for these
offenses: Conspiracy to Use A Weapon of Mass Destruction
Resulting in Death; Use of A Weapon of Mass Destruction
Resulting in Death; Possession and Use of a Firearm During and
in Relation to a Crime of Violence Resulting in Death;
Conspiracy to Bomb a Place of Public Use Resulting in Death;
Bombing of a Place of Public Use Resulting in Death; and
Malicious Destruction of Property Resulting in Personal Injury
and Death, all of which carry a possible sentence of death.

The United States proposes to prove the following factors as justifying a sentence of death with regard to Counts One through Ten and Counts Twelve through Eighteen (except where other Counts are specified):

A.  DZHOKHAR TSARNAEV was 18 years of age or older at the time of the offense.

B.  Statutory Threshold Factors Enumerated under 18 U.S.C. § 3591(a)(2)(A)-(D).

**1. Intentional Killing.**  DZHOKHAR TSARNAEV intentionally killed Krystle Marie Campbell (Counts One, Two, Three, Six, Seven, Eight, Twelve, and Thirteen), Martin Richard (Counts One, Four, Five, Six, Nine, Ten, Fourteen, and Fifteen), Lingzi Lu (Counts One, Four, Five, Six, Nine, Ten, Fourteen, and Fifteen), and Officer Sean Collier (Counts One, Six, Sixteen, Seventeen, and Eighteen).  18 U.S.C. § 3591(a)(2)(A).

**2. Intentional Infliction of Serious Bodily Injury.** DZHOKHAR TSARNAEV intentionally inflicted serious bodily injury that resulted in the deaths of Krystle Marie Campbell (Counts One, Two, Three, Six, Seven, Eight, Twelve, and Thirteen), Martin Richard (Counts One, Four, Five, Six, Nine, Ten, Fourteen, and Fifteen), Lingzi Lu (Counts One, Four, Five, Six, Nine, Ten, Fourteen, and Fifteen), and Officer Sean Collier (Counts One, Six,

Sixteen, Seventeen, and Eighteen).  18 U.S.C. § 3591(a)(2)(B).

**3. Intentional Participation in Acts Resulting in Death.**

DZHOKHAR TSARNAEV intentionally participated in acts contemplating that the life of a person or persons would be taken and intending that lethal force would be used in connection with a person or persons, other than one of the participants in the offense, and Krystle Marie Campbell (Counts One, Two, Three, Six, Seven, Eight, Twelve, and Thirteen); Martin Richard (Counts One, Four, Five, Six, Nine, Ten, Fourteen, and Fifteen); Lingzi Lu (Counts One, Four, Five, Six, Nine, Ten, Fourteen, and Fifteen); and Officer Sean Collier (Counts One, Six, Sixteen, Seventeen, and Eighteen) died as a direct result of the acts.  18 U.S.C § 3591(a)(2)(C).

**4. Intentional Engagement in Acts of Violence, Knowing that the Acts Created a Grave Risk of Death to a Person.**

DZHOKHAR TSARNAEV intentionally and specifically engaged in acts of violence, knowing that the acts created a grave risk of death to a person or persons, other than one of the participants in the offense, such that the participation in the acts constituted a reckless disregard for human life, and Krystle Marie Campbell (Counts One, Two, Three, Six, Seven, Eight, Twelve, and Thirteen), Martin Richard (Counts

3

One, Four, Five, Six, Nine, Ten, Fourteen, and Fifteen),
Lingzi Lu (Counts One, Four, Five, Six, Nine, Ten,
Fourteen, and Fifteen), and Officer Sean Collier (Counts
One, Six, Sixteen, Seventeen, and Eighteen) died as a
direct result of the acts.  18 U.S.C § 3591(a)(2)(D).

C. <u>Statutory Aggravating Factors Enumerated under 18 U.S.C.
§ 3592(c)</u>.

**1. Death During Commission of Another Crime.**  The death, and
injury resulting in death, occurred during the commission
and attempted commission of, and during the immediate flight
from the commission of, an offense under (1) 18 U.S.C. §
2332a (use of a weapon of mass destruction)(Counts One
through Ten and Twelve through Eighteen) and (2) 18 U.S.C. §
844(i) (destruction of property affecting interstate
commerce by explosives)(Counts One through Ten and Twelve
through Fifteen).  18 U.S.C. § 3592(c)(1).

**2. Grave Risk of Death to Additional Persons.**  DZHOKHAR
TSARNAEV knowingly created a grave risk of death to one or
more persons in addition to the victim of the offense in
the commission of the offense and in escaping apprehension
for the violation of the offense.  18 U.S.C. § 3592(c)(5).

**3. Heinous, Cruel and Depraved Manner of Committing the
Offense.**  DZHOKHAR TSARNAEV committed the offense in an
especially heinous, cruel and depraved manner in that it

involved serious physical abuse to the victim (Counts One through Ten and Twelve through Fifteen). 18 U.S.C. § 3592(c)(6).

**4. Substantial Planning and Premeditation**. DZHOKHAR TSARNAEV committed the offense after substantial planning and premeditation to cause the death of a person and commit an act of terrorism (Counts One through Ten and Twelve through Fifteen). 18 U.S.C. § 3592(c)(9).

**5. Multiple Killings**. DZHOKHAR TSARNAEV intentionally killed and attempted to kill more than one person in a single criminal episode (Counts One through Ten and Twelve through Fifteen). 18 U.S.C. § 3592(c)(16).

**6. Vulnerable Victim**. DZHOKHAR TSARNAEV is responsible for the death of a victim, Martin Richard, who was particularly vulnerable due to youth (Counts One, Four, Five, Six, Nine, Ten, Fourteen, and Fifteen). 18 U.S.C. § 3592(c)(11).

D. <u>Non-Statutory Aggravating Factors Identified under 18 U.S.C. § 3593(a)(2)</u>.

**1. Betrayal of the United States**. DZHOKHAR TSARNAEV received asylum from the United States; obtained citizenship and enjoyed the freedoms of a United States citizen; and then betrayed his allegiance to the United

States by killing and maiming people in the United States.

**2. Encouragement of Others to Commit Acts of Violence and Terrorism.** In conjunction with committing acts of violence and terrorism, DZHOKHAR TASARNAEV made statements suggesting that others would be justified in committing additional acts of violence and terrorism against the United States.

**3. Victim Impact.** DZHOKHAR TSARNAEV caused injury, harm and loss to Krystle Marie Campbell and her family and friends (Counts One, Two, Three, Six, Seven, Eight, Twelve, and Thirteen); to Martin Richard and his family and friends (Counts One, Four, Five, Six, Nine, Ten, Fourteen, and Fifteen); to Lingzi Lu and her family and friends (Counts One, Four, Five, Six, Nine, Ten, Fourteen, and Fifteen), and to Officer Sean Collier and his family and friends (Counts One, Six, Sixteen, Seventeen, and Eighteen). The injury, harm and loss caused by DZHOKHAR TSARNAEV with respect to each victim is evidenced by the victim's personal characteristics and by the impact of the victim's death upon his or her family and friends.

**4. Selection of Site for Acts of Terrorism.** DZHOKHAR TSARNAEV targeted the Boston Marathon, an iconic event that draws large crowds of men, women and children to its final stretch, making it especially susceptible to the act and

effects of terrorism (Counts One through Ten and Counts Twelve through Fifteen).

**5. Lack of Remorse**. DZHOKHAR TSARNAEV demonstrated a lack of remorse.

**6. Status of Victim.** DZHOKHAR TSARNAEV murdered Officer Sean Collier, a law enforcement officer who was engaged in the performance of his official duties at the time of his death (Counts One, Six, Sixteen, Seventeen, and Eighteen).

**7. Participation in Additional Uncharged Crimes of Violence**. DZHOKHAR TSARNAEV participated in additional uncharged crimes of violence, including assault with a dangerous weapon, assault with intent to maim, mayhem, and attempted murder, on April 15, 2013 in Boston, Massachusetts (Counts One through Ten and Twelve through Fifteen) and on or about April 19, 2013 in Watertown, Massachusetts (Counts One through Ten and Twelve through Eighteen).

> Respectfully submitted,
> CARMEN M. ORTIZ
> United States Attorney
>
> By:
> /s/Nadine Pellegrini
> NADINE PELLEGRINI
> WILLIAM D. WEINREB
> ALOKE S. CHAKRAVARTY
> Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

/s/Nadine Pellegrini
Nadine Pellegrini
Assistant United States
Attorney

Date: January 30, 2014

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CR. NO.: 2:15-cr-00472-RMG |
| v. | |
| **DYLANN STORM ROOF** | |

## NOTICE OF INTENT TO SEEK THE DEATH PENALTY

The United States of America, by and through its undersigned counsel and pursuant to 18 U.S.C. § 3593(a), notifies the Court and Defendant DYLANN STORM ROOF that the United States believes the circumstances of the offenses charged in Counts 13-21 and 25-33 of the Indictment are such that, in the event of a conviction, a sentence of death is justified under Chapter 228 (Section 3591 through 3598) of Title 18 of the United States Code, and that the United States will seek the sentence of death for these offenses: Obstruction of Exercise of Religion by Force Resulting in Death and Use of a Firearm to Commit Murder During and In Relation to a Crime of Violence, all of which carry a possible sentence of death.

The United States proposes to prove the following factors as justifying a sentence of death with regard to Counts 13-21 and 25-33 (except where other Counts are specified):

(A) DYLANN STORM ROOF was 18 years of age or older at the time of the offense.

(B) Statutory Threshold Factors Enumerated under 18 U.S.C. § 3591(a)(2)(A)-(D).

(1) Intentional Killing. DYLANN STORM ROOF intentionally killed Reverend Sharonda Coleman-Singleton, Cynthia Hurd, Susie Jackson, Ethel Lee Lance, Reverend DePayne Middleton-Doctor, Reverend Clementa Pinckney, Tywanza Sanders, Reverend Daniel Simmons, Sr., and Myra Thompson. 18 U.S.C. § 3591(a)(2)(A).

(2) Intentional Infliction of Serious Bodily Injury. DYLANN STORM ROOF intentionally inflicted serious bodily injury that resulted in the deaths of Reverend Sharonda Coleman-Singleton, Cynthia Hurd, Susie Jackson, Ethel Lee Lance, Reverend DePayne Middleton-Doctor, Reverend Clementa Pinckney, Tywanza Sanders,

Reverend Daniel Simmons, Sr., and Myra Thompson. 18 U.S.C. § 3591(a)(2)(B).

(3) Intentional Participation in Acts Resulting in Death. DYLANN STORM ROOF intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Reverend Sharonda Coleman-Singleton, Cynthia Hurd, Susie Jackson, Ethel Lee Lance, Reverend DePayne Middleton-Doctor, Reverend Clementa Pinckney, Tywanza Sanders, Reverend Daniel Simmons, Sr., and Myra Thompson died as a direct result of such action. 18 U.S.C. § 3591(a)(2)(C).

(4) Intentional Engagement in Acts of Violence, Knowing that the Acts Created a Grave Risk of Death to a Person. DYLANN STORM ROOF intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than

one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Reverend Sharonda Coleman-Singleton, Cynthia Hurd, Susie Jackson, Ethel Lee Lance, Reverend DePayne Middleton-Doctor, Reverend Clementa Pinckney, Tywanza Sanders, Reverend Daniel Simmons, Sr., and Myra Thompson died as a direct result of such action. 18 U.S.C. § 3591(a)(2)(D).

(C) Statutory Aggravating Factors Enumerated under 18 U.S.C. § 3592(c).

(1) Multiple Killings. DYLANN STORM ROOF, in committing the offenses in Counts 13-21 and 25-33, intentionally killed and attempted to kill more than one person in a single criminal episode. 18 U.S.C. § 3592(c)(16).

(2) Substantial Planning and Premeditation. DYLANN STORM ROOF committed the offenses charged in Counts 13-21 and 25-33 after substantial planning and premeditation to cause the death of a person. 18 U.S.C. § 3592(c)(9).

4

(3) Vulnerable Victim. DYLANN STORM ROOF committed
the offenses in Counts 15 and 27 (for killing
Susie Jackson who was eighty-seven years old),
Counts 16 and 28 (for killing Ethel Lee Lance,
who was seventy years old), and Counts 20 and
32 (for killing Reverend Daniel Simmons, Sr.,
who was seventy-four years old) on victims who
were particularly vulnerable due to old age.
18 U.S.C. § 3592(c)(11).

(D) Non-Statutory Aggravating Factors Identified under
18 U.S.C. § 3593(a)(2).

(1) Attempt to Incite Violence. In preparation
for, in committing, and subsequent to the acts
of violence, the Defendant attempted to incite
violent action by others.

(2) Victim Impact. DYLANN STORM ROOF caused
injury, harm, and loss to the individuals that
he killed as well as to the family, friends,
and co-workers of those individuals. The
injury, harm, and loss caused by DYLANN STORM
ROOF with respect to each victim is evidenced
by the victim's personal characteristics and

by the impact of the victim's death upon his
or her family, friends, and co-workers.

(3) Endangering the Safety of Others. DYLANN STORM
ROOF endangered the safety of one or more
persons in addition to the victims of the
murders charged in the Indictment in the
commission of these offenses.

(4) Racially Motivated Killing. DYLANN STORM ROOF
has expressed hatred and contempt towards
African Americans, as well as other groups,
and his animosity towards African Americans
played a role in the murders charged in the
Indictment.

(5) Selection of Victims. DYLANN STORM ROOF
targeted men and women participating in a
Bible-study group at the Emanuel AME Church in
order to magnify the societal impact of the
offenses charged in the Indictment.

(6) Lack of Remorse. DYLANN STORM ROOF
demonstrated a lack of remorse.

Respectfully submitted,


s/ Julius N. Richardson
JULIUS N. RICHARDSON (ID #9823)
NATHAN WILLIAMS
Assistant United States
Attorneys
1441 Main Street, Suite 500
Columbia, SC 29201
May 24, 2016                    (803) 929-3000

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 18-292 |
| | ) | |
| ROBERT BOWERS | ) | |

## NOTICE OF INTENT TO SEEK THE DEATH PENALTY

The United States of America, through undersigned counsel and pursuant to 18 U.S.C. § 3593(a), notifies the Court and defendant ROBERT BOWERS that the United States believes the circumstances in Counts One through Eleven and Twenty-Three through Thirty-Three of the Superseding Indictment, Doc. No. 44, are such that, in the event of a conviction, a sentence of death is justified under 18 U.S.C. §§ 3591-3598, and that the United States will seek the sentence of death for these offenses: Obstruction of Free Exercise of Religious Beliefs Resulting in Death (Counts One through Eleven) and Use and Discharge of a Firearm to Commit Murder During and in Relation to a Crime of Violence and Possession of a Firearm in Furtherance of a Crime of Violence (Counts Twenty-Three through Thirty-Three), all of which carry a possible sentence of death.

The United States proposes to prove the following factors as justifying a sentence of death with regard to Counts One through Eleven and Twenty-Three through Thirty-Three as specified below:

(A)    ROBERT BOWERS was 18 years of age or older at the time of the offense. (Counts One through Eleven and Twenty-Three through Thirty-Three).

(B)    Statutory Threshold Factors Enumerated Under 18 U.S.C. § 3591(a)(2)(A)-(D):

1. **Intentional Killing.**  ROBERT BOWERS intentionally killed J.F., R.G., R.M., J.R., C.R., D.R., B.S., S.S., D.S., M.W., and I.Y.    18 U.S.C.

§ 3591(a)(2)(A).   (Counts One through Eleven and Twenty-Three through Thirty-Three).

2. **Intentional Infliction of Serious Bodily Injury.**   ROBERT BOWERS intentionally inflicted serious bodily injury that resulted in the deaths of J.F., R.G., R.M., J.R., C.R., D.R., B.S., S.S., D.S., M.W., and I.Y.   18 U.S.C. § 3591(a)(2)(B).   (Counts One through Eleven and Twenty-Three through Thirty-Three).

3. **Intentional Participation in an Act Resulting in Death.**   ROBERT BOWERS intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and J.F., R.G., R.M., J.R., C.R., D.R., B.S., S.S., D.S., M.W., and I.Y. died as a direct result of the act.   18 U.S.C. § 3591(a)(2)(C).   (Counts One through Eleven and Twenty-Three through Thirty-Three).

4. **Intentional Engagement in an Act of Violence, Knowing that the Act Created a Grave Risk of Death to a Person.**   ROBERT BOWERS intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that the participation in the act constituted a reckless disregard for human life, and J.F., R.G., R.M., J.R., C.R., D.R., B.S., S.S., D.S., M.W., and I.Y. died as a direct result of the act.   18 U.S.C. § 3591(a)(2)(D). (Counts One through Eleven and Twenty-Three through Thirty-Three).

(C)   <u>Statutory Aggravating Factors Enumerated Under 18 U.S.C. § 3592(c)</u>:

     1.  **Grave Risk of Death to Additional Persons.**  ROBERT BOWERS, in the commission of the offense, and in escaping apprehension for the violation of the offense, knowingly created a grave risk of death to one or more persons in addition to the victim of the offense, to include responding public safety officers A.B., J.C., J.G., J.H., T.M., D.M., A.M., J.P., J.R., M.S., M.S.2 and C.T.  18 U.S.C. § 3592(c)(5).  (Counts One through Eleven and Twenty-Three through Thirty-Three).

     2.  **Substantial Planning and Premeditation.**  ROBERT BOWERS committed the offense after substantial planning and premeditation to cause the death of a person.  18 U.S.C. § 3592(c)(9).  (Counts One through Eleven and Twenty-Three through Thirty-Three).

     3.  **Vulnerable Victims.**  ROBERT BOWERS committed the offense against a victim who was particularly vulnerable due to old age (Counts One, Three, Seven through Ten, Twenty-Three, Twenty-Five, and Twenty-Nine through Thirty-Two) and infirmity (Counts Five, Six, Twenty-Seven, and Twenty-Eight).  18 U.S.C. § 3592(c)(11).

     4.  **Multiple Killings or Attempted Killings.**  ROBERT BOWERS intentionally killed and attempted to kill more than one person in a single criminal episode. 18 U.S.C. § 3592(c)(16).  (Counts One through Eleven and Twenty-Three through Thirty-Three).

(D)   <u>Non-Statutory Aggravating Factors Identified Under 18 U.S.C. § 3593(a)(2)</u>:

     1.  **Victim Impact.**  ROBERT BOWERS caused injury, harm, and loss to J.F., R.G., R.M., J.R., C.R., D.R., B.S., S.S., D.S., M.W., and I.Y., as well as to the

family, friends, and co-workers of those individuals. The injury, harm, and loss caused by ROBERT BOWERS with respect to each deceased victim is evidenced by the victim's personal characteristics and by the impact of the victim's death upon his or her family, friends, associates, and co-workers. (Counts One through Eleven and Twenty-Three through Thirty-Three).

2. **Killings Motivated by Religious Animus.** ROBERT BOWERS expressed hatred and contempt toward members of the Jewish faith and his animus toward members of the Jewish faith played a role in the killings of J.F., R.G., R.M., J.R., C.R., D.R., B.S., S.S., D.S., M.W., and I.Y. (Counts One through Eleven and Twenty-Three through Thirty-Three).

3. **Selection of Site.** ROBERT BOWERS targeted men and women participating in Jewish religious worship at the Tree of Life Synagogue, located in the Squirrel Hill neighborhood of Pittsburgh, Pennsylvania, which is home to one of the largest and oldest urban Jewish populations in the United States, in order to maximize the devastation, amplify the harm of his crimes, and instill fear within the local, national, and international Jewish communities. (Counts One through Eleven and Twenty-Three through Thirty-Three).

4. **Lack of Remorse.** ROBERT BOWERS has demonstrated a lack of remorse for the offenses charged in the Superseding Indictment, as evidenced by his statements and actions during the course of and following the commission of the offenses. (Counts One through Eleven and Twenty-Three through Thirty-Three).

5. **Injury to Surviving Victims.** ROBERT BOWERS caused serious physical and emotional injury, including maiming, disfigurement, permanent disability,

severe psychological impacts, and grievous economic hardship to individuals who survived the offense, to include: 1) physically injured civilian survivors, D.L. and A.W.; 2) otherwise injured civilian survivors, C.B., D.D., J.C., L.F., A.G., M.G., J.M., J.P., D.R.2, A.S., J.S., S.W., and B.W.; 3) physically injured law enforcement survivors, A.B., T.M., D.M., J.P. and M.S.; and 4) otherwise injured law enforcement survivors, J.C., J.G., J.H., A.M., J.R., M.S.2, and C.T. (Counts One through Eleven and Twenty-Three through Thirty-Three).

Respectfully submitted,

SCOTT W. BRADY
United States Attorney

ERIC S. DREIBAND
Assistant Attorney General
Civil Rights Division

TROY RIVETTI
Assistant U.S. Attorney
PA ID No. 56816

SOO C. SONG
Assistant U.S. Attorney
DC ID No. 457268

JULIA GEGENHEIMER
Special Litigation Counsel
Civil Rights Division
NY ID No. 4949475

5

EXHIBIT B

Case 4:20-cr-00265-YGR   Document 41-2   Filed 10/20/20   Page 23 of 45

No. 17-3

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

UNITED STATES OF AMERICA,
Plaintiff/Appellee,

v.

DYLANN STORM ROOF,
Defendant/Appellant.

_____

On Appeal from the United States District Court
for the District of South Carolina, Charleston Division
(The Honorable Richard M. Gergel)

_____

**BRIEF OF APPELLANT**

_____

AMY M. KARLIN                         JAMES WYDA
Interim Federal Public Defender       Federal Public Defender
ALEXANDRA W. YATES                    SAPNA MIRCHANDANI
Deputy Federal Public Defender        Assistant Federal Public Defender
321 East 2nd Street                   6411 Ivy Lane, Suite 710
Los Angeles, CA 90012                 Greenbelt, MD 20770
(213) 894-2854 (tel.)                 (301) 344-0600 (tel.)
(213) 894-0081  (fax)                 (301) 344-0019 (fax)
Amy_Karlin@fd.org                     James_Wyda@fd.org
Alexandra_Yates@fd.org                Sapna_Mirchandani@fd.org

*Counsel for Appellant*

# TABLE OF CONTENTS

**Page(s)**

Introduction ................................................................................. 1

Jurisdictional statement ............................................................. 2

Statement of issues ..................................................................... 3

Statement of facts ....................................................................... 7

    A. The crime ........................................................................... 7

    B. Roof's arrest and confession ............................................ 8

    C. The government seeks a death sentence ........................ 10

    D. Doubts about Roof's competency surface on the eve of trial ......... 11

    E. The court agrees Roof's competency is in doubt and holds an expedited hearing .................................................. 15

        1. Experts testify Roof exhibits symptoms of a psychotic-spectrum disorder ....................................... 16

        2. Experts testify Roof believes he will be rescued by post-revolutionary white nationalists ........................ 18

        3. Experts testify Roof has autism-spectrum and anxiety disorders .......................................................... 19

        4. Counsel attests to Roof's inability to make essential trial decisions ........................................... 20

        5. Roof asserts he isn't mentally ill and his counsel are "serial liars" ................................................ 21

    F. The court finds Roof competent to stand trial ............... 22

    G. The court grants Roof's motion to discharge counsel, then reappoints counsel at his request ...................... 23

    H. The guilt phase ................................................................ 24

# TABLE OF CONTENTS

**Page(s)**

I. Roof confirms his intent to represent himself at penalty and present no mitigation .................................................. 30

J. Standby counsel request a second competency hearing ................ 31

K. The court agrees to a limited competency hearing ...................... 32

L. The court finds Roof competent to proceed to penalty and represent himself ........................................................... 33

M. The penalty phase ........................................................ 34

  1. Pretrial rulings ...................................................... 34

  2. Opening statements .................................................. 35

  3. Stipulations ......................................................... 35

  4. Prosecution case .................................................... 36

  5. Defense case ........................................................ 38

  6. Closing arguments ................................................... 38

  7. Jury notes .......................................................... 40

  8. Verdict and sentencing .............................................. 41

Summary of argument ...................................................... 42

Argument ................................................................. 44

Points Related to Competency to Stand Trial .............................. 44

I. Background ............................................................ 45

  A. The expedited November 2016 competency hearing ................ 45

  1. The court refuses a one-week continuance .......................... 45

  a. Ballenger has 8 days to evaluate Roof ........................... 46

## TABLE OF CONTENTS

**Page(s)**

     b. Loftin is temporarily unavailable to testify about her 4-month evaluation of Roof ...............................................47

   2. Experts uniformly testify Roof expects white nationalists will free him after the revolution ...........................................48

   3. Experts uniformly testify Roof exhibits signs of psychosis including somatic delusions, paranoia, grandiose beliefs, and disordered thinking .........................................................51

   4. The court finds Roof does not have a psychotic disorder and his hope to be rescued by white-nationalists is not a delusion.................................................................................54

  B. The abridged January 2017 competency hearing ....................55

   1. The court excludes material, newly-presented evidence of Roof's incompetency .................................................................55

   2. The court admits only post-November 2016  evidence..........57

    a. Standby counsel's declaration............................................58

    b. Loftin's testimony .............................................................59

    c. Parker's testimony.............................................................59

    d. Ballenger's testimony .......................................................60

    e. Roof's testimony................................................................61

   3. The court finds Roof competent to stand trial .......................62

II. Standards of review ........................................................................63

III. The court forced Roof to stand trial while he was incompetent ...................................................................................65

  A. The court's finding that Roof's expectation of a white-nationalist rescue was not a delusion was clearly erroneous...66

iii

# TABLE OF CONTENTS

**Page(s)**

B. The court's reliance on Roof's in-court statements denying or minimizing delusional beliefs was clearly erroneous .............. 70

C. The court's failure to weigh counsel's sworn statements was clearly erroneous ................................................................ 73

D. The court's conflation of *Dusky*'s cognitive and rationality prongs was clearly erroneous .................................................... 75

E. The court's reliance on Ballenger's flawed opinion, which ignored substantial contrary evidence, was clearly  erroneous 77

    1. Ballenger's credibility was impaired ...................................... 78

    2. Ballenger's evaluation was flawed ........................................ 78

    3. Ballenger's findings were refuted by substantial evidence ... 80

IV. The court denied Roof a full and fair competency hearing before trial ........................................................................................ 82

A. The court abused its discretion by denying experts sufficient time to evaluate Roof and present live testimony .................... 82

B. The court's error prejudiced Roof by leaving one expert unprepared and another unavailable ........................................ 86

V. The court denied Roof a full and fair competency hearing before sentencing ................................................................................ 89

A. The court abused its discretion by using the law-of-the-case doctrine to exclude material evidence of Roof's incompetence . 89

    1. The court misapplied the law-of-the-case doctrine .............. 90

    2. The court deliberately blinded itself and its expert to material evidence ................................................................ 92

B. The court's errors prejudiced Roof ........................................... 93

iv

# TABLE OF CONTENTS

**Page(s)**

Points Related to Self-Representation.......................................96

  VI. Background .........................................................98

    A. Roof reluctantly waives counsel solely to block mental-health
      evidence.....................................................98

    B. The court holds a hearing on Roof's motion to self-represent ..99

    C. Roof represents himself at voir dire.........................100

    D. Roof represents himself at penalty .........................101

      1.  Roof forgoes substantial mental-health mitigation............101

      2.  Roof forgoes substantial non-mental-health mitigation .....102

    E. The Supreme Court holds a defendant need not waive
      counsel to control his defense................................103

  VII. Standards of review.................................................106

  VIII. The court misadvised Roof that counsel could present
      mental-health evidence over his objection ...............................107

    A. *McCoy* held counsel cannot override a defendant's broadly-
      defined objective .....................................................108

    B. Per *McCoy*, counsel could not override Roof's primary
      objective—precluding mental-health mitigation....................110

  IX. Roof had no right to self-represent at penalty............................113

    A. *Martinez* establishes the test for when a defendant may
      self-represent .........................................................113

    B. *Martinez* confirms there is no penalty-phase right to self-
      representation.........................................................116

# TABLE OF CONTENTS

**Page(s)**

C. This Court should hold there is no penalty-phase right to self-representation ................................................. 119

X. Roof was prohibited from waiving both counsel and mitigation .. 121

    A. The Constitution requires juries to consider mitigation ........ 122

    B. The FDPA requires juries to consider mitigation ................... 123

    C. These demands outweigh any implicit right to self-represent at penalty .................................................................. 124

XI. Roof's initial waiver of counsel was invalid ................................. 127

    A. The court misadvised Roof on standby counsel's role ............. 127

    B. The court failed to advise Roof of his option to self-represent at penalty only ....................................................... 130

XII. The court incorrectly believed it lacked discretion to deny Roof's untimely motion ............................................................. 131

    A. Roof's motion to self-represent was untimely ......................... 132

    B. The court had absolute discretion to deny Roof's untimely motion ....................................................................... 133

XIII. Even if Roof was competent to stand trial, he was not competent to represent himself ................................................. 135

    A. A "gray-area" defendant is competent to stand trial but not represent himself ....................................................... 136

    B. Roof is a "gray-area" defendant ............................................... 137

        1. Roof was diagnosed with severe mental illness ................... 138

        2. Roof's mental illness interfered with his capacity to represent himself ................................................................. 138

# TABLE OF CONTENTS

**Page(s)**

    a. Roof's anxiety inhibited him from speaking up and presenting mitigation .................................................... 139

    b. Roof's disorganized thinking and attention deficits interfered with his decision-making ............................. 141

C. The court ignored this evidence, relying on questionable sources to conclude Roof is not a "gray-area" defendant ........ 143

D. Roof lacked capacity to represent himself in a capital case ... 147

XIV. The court unreasonably denied Roof's requests for necessary accommodations ........................................................ 149

A. The court denied Roof needed assistance and accommodations ........................................................ 150

B. The court abused its discretion by denying Roof generally-accepted assistance ................................................. 152

C. The court compounded the error by denying Roof minor accommodations ........................................................ 156

Points Related to Death Verdict .......................................... 158

XV. The court precluded mitigating evidence about Roof's lack of future-dangerousness ................................................. 159

A. Standards of review ................................................. 160

B. The court precludes crucial mitigating factors and evidence, the government improperly capitalizes on its ruling, and the court refuses to answer juror calls for clarification ............... 161

C. The errors violated the Constitution and FDPA .................... 165

    1. The court improperly excluded individualized evidence about Roof's future-dangerousness ........................ 167

# TABLE OF CONTENTS

**Page(s)**

2.  The government misleadingly argued Roof's mitigating factors were "not true" ........................................................ 170

3.  The court denied jurors' requests for clarification, exacerbating these errors .................................................... 177

D. The errors mattered ................................................................ 180

XVI. Victim testimony that Roof was "evil" and belonged in "the pit of hell" tainted the death verdict ................................ 183

A. Standards of review ................................................................ 183

B. The government's first witness called Roof "evil" and said he belonged in "the pit of hell" ...................................... 184

C. This inflammatory testimony was unconstitutional .............. 189

D. The court was obligated to correct the errors ........................ 191

E. The testimony prejudiced Roof .............................................. 194

XVII. The government introduced and argued improper victim-worth aggravating evidence ...................................................... 199

A. Standards of review ................................................................ 199

B. The government asked jurors to impose death because the victims were good and religious people .................................. 200

C. Victim-worth evidence and argument are unconstitutional ... 203

D. The errors prejudiced Roof .................................................... 206

XVIII. Roof's death sentence is unconstitutional because he was 21, autistic, and mentally ill at the time of his crime .............. 208

A. Standard of review ................................................................ 209

# TABLE OF CONTENTS

**Page(s)**

B. This Court should extend the categorical ban on executions
to offenders 21 and younger .......................................209

  1. Human brains develop through a person's 20s ..................210

  2. There exists a national consensus that young adults can
     be rehabilitated ............................................211

C. Executing Roof for conduct committed when 21, autistic,
   and mentally ill violates the Eighth Amendment.................212

  1. Adaptive, reasoning, and communications skills are
     essential to a fair trial .................................213

  2. Roof's autism and psychiatric disorders undermined his
     right to a fair trial......................................214

D. Roof's death sentence is cruel and unusual..........................215

Points Related to Guilt Verdict.............................................216

XIX. The religious-obstruction statute is an unconstitutional
     exercise of Congress's Commerce Clause authority...............216

A. Standards of review ..............................................217

B. The court rejected Roof's facial and as-applied challenges to
   the statute .....................................................218

C. Congress's Commerce Clause authority is limited ...............220

D. Section 247(a)(2) is facially invalid........................222

  1. The statute's jurisdictional element doesn't sufficiently
     limit its reach .............................................222

  2. Theoretical effects on commerce are not enough ...............224

  3. The statute doesn't satisfy *Lopez*..........................225

ix

# TABLE OF CONTENTS

**Page(s)**

    a. The proscribed conduct does not target "channels" or
"instrumentalities" of interstate commerce ...................225

    b. The proscribed conduct does not "substantially affect"
interstate commerce ......................................................226

        i. The regulated conduct is neither commercial nor
economic..................................................................226

        ii. The statute's jurisdictional element is
insufficient..............................................................228

        iii. Congress made scant findings about effects on
interstate commerce...............................................228

        iv. The link to interstate commerce is attenuated......230

  4. Invalidating Section 247(a)(2) doesn't preclude
punishment...........................................................................230

E. Section 247(a)(2) is invalid as applied here............................231

  1. Using goods sold interstate does not render conduct "in"
interstate commerce............................................................231

  2. Using interstate "channels" to prepare for later conduct
does not render conduct "in" interstate commerce..............233

F. The instructions prejudicially misstated Section 247(a)(2)'s
jurisdictional element................................................................235

  1. The court told jurors Roof's use of any "channel," even
entirely intrastate, was "in" interstate commerce...............235

  2. The court told jurors Roof's use of items that once crossed
state lines was "in" interstate commerce............................236

  3. The court told jurors "any" effect on interstate commerce
(not a "substantial" effect) sufficed .....................................238

# TABLE OF CONTENTS

**Page(s)**

4. The instructional errors prejudiced Roof ............................. 239

XX. The religious-obstruction statute requires proof of religious
hostility ........................................................................... 240

A. Standards of review ............................................................... 241

B. Religious hostility is an element of religious obstruction ....... 241

C. The government presented insufficient evidence of religious
hostility ........................................................................... 243

D. The court never instructed jurors to find religious
hostility ........................................................................... 244

XXI. The Hate Crimes Prevention Act is an unconstitutional
exercise of Congress's Thirteenth Amendment authority ....... 245

A. Standard of review ............................................................... 246

B. Thirteenth Amendment-based legislation must be
"necessary," justified by "current needs," and a "congruent
and proportional" response to slavery or a badge thereof ...... 246

C. Section 249(a)(1) is neither justified by "current needs" nor
a "congruent and proportional" response to a
badge of slavery ................................................................ 250

1. Section 249(a)(1) is not justified by "current  needs" .......... 250

2. Section 249(a)(1) is not a "congruent and proportional"
response to a badge of slavery ......................................... 252

D. Section 249(a)(1) is not "necessary" to abolish badges of
slavery ............................................................................. 253

E. The court incorrectly rejected Roof's constitutional
challenge .......................................................................... 254

# TABLE OF CONTENTS

**Page(s)**

F. The certification process doesn't save the statute from unconstitutionality .................................................. 255

XXII. The Attorney General erroneously certified Roof's federal prosecution ......................................................... 258

XXIII. Vacatur of the religious-obstruction and hate-crimes counts requires vacatur of the firearm counts and death sentence in full ........................................................................ 261

XXIV. Roof's firearm convictions are invalid because the predicate offenses aren't crimes of violence ............................ 262

A. Standard of review .................................................... 264

B. Section 924(c)'s force clause requires an intentional act of violent physical force against the person or property of another ................................................................ 265

1. The clause requires violent physical force ........................... 265

2. The clause requires force against the person or property of another .................................................................. 266

3. The clause requires intentional use of violent force ........... 266

C. Section 249(a)(1) hate crimes don't satisfy the force clause because they can be committed with de minimis force, no force, or unintentional force ............................................ 267

D. Section 247(a)(2) religious-obstruction crimes don't satisfy the force clause because they can be committed with (i) de minimis force (ii) against one's own property (iii) resulting in unintentional death ............................................... 270

E. At least one juror likely considered Roof's unconstitutional firearm convictions in voting for death .............................. 273

# TABLE OF CONTENTS

**Page(s)**

1.  The Eighth Amendment and due process require resentencing ..................................................................... 273

2.  The sentencing package doctrine requires a new penalty hearing ................................................................ 277

Conclusion ........................................................................... 278

Request for oral argument ................................................... 279

Addendum ............................................................................ 280

Certificate of compliance ................................................... 281

Certificate of service .......................................................... 282

xiii

EXHIBIT C



**U.S. Department of Justice**

*United States Attorney*
*Northern District of California*

| | |
|---|---|
| *11th Floor, Federal Building* | *(415) 436-7200* |
| *450 Golden Gate Ave., Box 36055* | |
| *San Francisco, CA 94102-3495* | *Fax: (415) 436-7234* |

October 9, 2020

<u>**VIA EMAIL**</u>
Richard Novak, Esq.
Shaffy Moeel, Esq.



*Counsel for Justus*

    Re: *United States v. Robert Alvin Justus, Jr.*
       20-CR-00265-YGR-2

Dear Counsel:

   Pursuant to your request for discovery, I am sharing with you electronically a link from USAfx that contains the below discovery. Please maintain this discovery pursuant to the terms of the parties' agreed-upon Stipulated Protective Order, as we have previously discussed.

| Beg. Bates | End Bates | General Description of Contents |
|---|---|---|
| | | **0000001 Series - FBI Reports** |
| US-0000995 | US-0000997 | FD-302 Report re Documentation from The UPS Store █████████ |
| US-0000998 | US-0000998 | FD-302 Report re E-mail from ████████████ ████████████████████ |
| US-0000999 | US-0000999 | FD-302 Report re Information received from US Army CID |
| US-0001000 | US-0001001 | FD-302 Report re Interview of ████████████ |
| US-0001002 | US-0001002 | FD-302 Report re Interview of ████████████ |
| US-0001003 | US-0001003 | FD-302 Report re Interview of ████████████ |
| US-0001004 | US-0001004 | FD-302 Report re Interview of ████████████ |
| US-0001005 | US-0001006 | FD-302 Report re Interview of ████████████ |
| US-0001007 | US-0001008 | FD-302 Report re Interview of ████████████ █████ |
| US-0001009 | US-0001009 | FD-302 Report re Interview of ████████████ |
| US-0001010 | US-0001010 | FD-302 Report re Interview of ████████████ |
| US-0001011 | US-0001011 | FD-302 Report re Interview of ████████████ |

1

| Beg. Bates | End Bates | General Description of Contents |
|---|---|---|
| US-0001012 | US-0001013 | FD-302 Report re Interview of ████████ |
| US-0001014 | US-0001014 | FD-302 Report re Interview of ████████ |
| US-0001015 | US-0001016 | FD-302 Report re Interview of FPS Officer ████ on May 30 2020 |
| US-0001017 | US-0001017 | FD-302 Report re Interview of ████████ |
| US-0001018 | US-0001018 | FD-302 Report re Interview of ████████ |
| US-0001019 | US-0001021 | FD-302 Report re Interview of ██████ 6 17 2020 |
| US-0001022 | US-0001023 | FD-302 Report re Interview of █████████ █ and ██████ |
| US-0001024 | US-0001024 | FD-302 Report re Interview of ████████ |
| US-0001025 | US-0001030 | FD-302 Report re Interview of ████████ ████████ |
| US-0001031 | US-0001031 | FD-302 Report re Interview of ████████ |
| US-0001032 | US-0001033 | FD-302 Report re Interview of ████████ and ██ |
| US-0001034 | US-0001035 | FD-302 Report re Interview of ████████ |
| US-0001036 | US-0001036 | FD-302 Report re Interview of ████████ 6 25 2020 |
| US-0001037 | US-0001037 | FD-302 Report re Investigation of ██████ ████-Benicia PD |
| US-0001038 | US-0001039 | FD-302 Report re Investigation of ████████ |
| US-0001040 | US-0001043 | FD-302 Report re June 11 2020 Physical Surveillance of ROBERT ALVIN JUSTUS JR |
| US-0001044 | US-0001044 | FD-302 Report re Location of DNA Evidence (second grouping of casings) |
| US-0001045 | US-0001045 | FD-302 Report re Mailbox Rental Agreement for STEVEN CARRILLO ████████ |
| US-0001046 | US-0001046 | FD-302 Report re Medical Records of Victim 2 |
| US-0001047 | US-0001047 | FD-302 Report re Buccal Swab and Fingerprint Card Obtained from ROBERT JUSTUS JR |
| US-0001048 | US-0001048 | FD-302 Report re Interview of ████████ |
| US-0001049 | US-0001049 | FD-302 Report re Interview of ████████ |
| US-0001050 | US-0001050 | FD-302 Report re ████████ San Leandro PD Evidence Technician |
| US-0001051 | US-0001051 | FD-302 Report re OPD Technician Reference Samples |
| US-0001052 | US-0001053 | FD-302 Report re Physical Surveillance conducted at ████████ █ ████████ |
| US-0001054 | US-0001054 | FD-302 Report re Police Artist sketch of subject based on FPS Inspector ████████ observation |
| US-0001055 | US-0001055 | FD-302 Report re Police Artist sketch of subject based on FPS observation |
| US-0001056 | US-0001057 | FD-302 Report re probable cause arrest of ROBERT JUSTUS JR on 06 11 2020 |
| US-0001058 | US-0001058 | FD-302 Report re Receipt of 911 calls and CAD for report 20-026622 from Oakland Police Department |
| US-0001059 | US-0001060 | FD-302 Report re Receipt of evidence relating to Victim 2 from ████████ |

| Beg. Bates | End Bates | General Description of Contents |
|---|---|---|
| US-0001061 | US-0001061 | FD-302 Report re Receipt of Glock pistol magazine and Motorola radio from FPS |
| US-0001062 | US-0001062 | FD-302 Report re Receive Evidence from ERT |
| US-0001063 | US-0001063 | FD-302 Report re Receive Evidence from Santa Cruz District Attorney Office |
| US-0001064 | US-0001064 | FD-302 Report re Request information from ███████ |
| US-0001065 | US-0001066 | FD-302 Report re Return of Evidence-Tablet and iPad |
| US-0001067 | US-0001068 | FD-302 Report re Review of Twitter screenshot on 06 04 2020 |
| US-0001069 | US-0001071 | FD-302 Report re Search of ███████ |
| US-0001072 | US-0001075 | FD-302 Report re Search Warrant at ███████ on June 23 2020 |
| US-0001076 | US-0001076 | FD-302 Report re Search Warrant Served on ███████ |
| ███████ | ███████ | ███████ Warrant Served on ███████ |
| US-0001078 | US-0001080 | FD-302 Report re Self-surrender of ROBERT JUSTUS JR to FBI on June 11 2020 |
| US-0001081 | US-0001082 | FD-302 Report re Search Warrant at ███████ |
| US-0001083 | US-0001083 | FD-302 Report re Spot checks of three addresses in Oakland |
| US-0001084 | US-0001084 | FD-302 Report re Surveillance Video Obtained from ███████ |
| US-0001085 | US-0001085 | FD-302 Report re Surveillance Video Obtained from ███████ |
| US-0001086 | US-0001086 | FD-302 Report re Surveillance Video Obtained from ███████ |
| US-0001087 | US-0001087 | FD-302 Report re Telephonic interview of ███████ |
| US-0001088 | US-0001088 | FD-302 Report re Telephonic interview of ███████ |
| US-0001089 | US-0001089 | FD-302 Report re Tip from ███████ |
| US-0001090 | US-0001090 | FD-302 Report re Transfer of evidence from the Oakland Police Department |
| US-0001091 | US-0001091 | FD-302 Report re Transport Evidence |
| US-0001092 | US-0001092 | FD-302 Report re Transport of ROBERT JUSTUS JR |
| US-0001093 | US-0001094 | FD-302 Report re Interview of ███████ |
| US-0001095 | US-0001098 | FD-302 Report re Interview of ███████ |
| US-0001099 | US-0001106 | FD-302 Report re Interview of ███████ |
| US-0001107 | US-0001109 | FD-302 Report re Interview of ███████ and ███████ |
| US-0001110 | US-0001111 | FD-302 Report re Interview of ███████ |
| US-0001112 | US-0001112 | FD-302 Report re San Francisco SWAT Providing Protection for ERT Processing FPS Homicide |
| US-0001113 | US-0001113 | FD-302 Report re Surveillance June 11 2020 ROBERT ALVIN JUSTUS JR - Evidence Collection |

| Beg. Bates | End Bates | General Description of Contents |
|---|---|---|
| US-0001114 | US-0001114 | FD-302 Report re CHP Officer ███████ |
| US-0001115 | US-0001116 | FD-302 Report re Interview of ███████ |
| US-0001117 | US-0001117 | FD-302 Report re Interview of ███████ |
| US-0001118 | US-0001119 | FD-302 Report re Interview of ███████ |
| US-0001120 | US-0001121 | FD-302 Report re Interview of ███████ |
| US-0001122 | US-0001124 | FD-302 Report re Interview of ███████ on June 17 2020 |
| US-0001125 | US-0001125 | FD-302 Report re Interview of ███████ |
| US-0001126 | US-0001128 | FD-302 Report re Interview of ███████ |
| US-0001129 | US-0001131 | FD-302 Report re Interview of ███████ on 06 11 2020 |
| US-0001132 | US-0001135 | FD-302 Report re Interview of ███████ on 06 07 2020 |
| US-0001136 | US-0001137 | FD-302 Report re Interview with ███████ on 06 18 2020 |
| US-0001138 | US-0001138 | FD-302 Report re Interview of ███████ |
| US-0001139 | US-0001139 | FD-302 Report re Evidence Collection from Victim 2 |
| US-0001140 | US-0001140 | FD-302 Report re Telephonic Interview of FPS Area Commander ███████ |
| US-0001141 | US-0001141 | FD-302 Report re Interview of Victim 2's Wife |
| US-0001142 | US-0001143 | FD-302 Report re Interview of Victim 2 |
| US-0001144 | US-0001144 | FD-302 Report re Recorded call between ROBERT JUSTUS JR and ███████ |
|  |  | **1000000 Series - ATF Reports** |
| US-1000087 | US-1000090 | FEO ███ Firearms Report Draft |
| US-1000091 | US-1000094 | FEO ███ Firearms Report Signed |
| US-1000095 | US-1000116 | NIBIN/IBIS Ballistics Report |
|  |  | **2000000 Series - SC Reports** |
| US-2000207 | US-2000213 | ███████ Autopsy Report |
| US-2000214 | US-2000215 | SCSO Correspondence re Ben Lomond Videos and Images |
|  |  | **3000000 Series – OPD Reports** |
| US-3000130 | US-3000130 | OPD Incident Recall CAD |
| US-3000131 | US-3000133 | OPD Incident Recall CAD |
| US-3000134 | US-3000136 | CAD Report |
|  |  | **5000000 Series – Photographs** |
| US-5004559 | US-5004564 | Selected Justus Cellphone Images and Information (Messages) |
| US-5004565 | US-5004587 | Selected Justus Cellphone Images and Information (Phone Photos) |
| US-5004588 | US-5004854 | Selected Justus Cellphone Images and Information (FB Screenshots) |
| US-5004855 | US-5004862 | Photographs of Individuals Shown to ███████ 6 8 2020 |
| US-5004863 | US-5004938 | Drone Photos 6-7-2020 ███████ |
| US-5004939 | US-5004944 | SCSO Aerial Imagery |

| Beg. Bates | End Bates | General Description of Contents |
|---|---|---|
| | | **7000000 Series - Search Warrants** |
| US-7002102 | US-7002103 | Exigent Request Email - ATT |
| US-7002104 | US-7002106 | Exigent Request Form - ATT |
| US-7002107 | US-7002108 | Exigent Request Form - Sprint |
| US-7002109 | US-7002109 | Exigent Request Email - Sprint |
| US-7002110 | US-7002110 | Exigent Request Form - T-Mobile |
| US-7002111 | US-7002111 | Exigent Request Form - T-Mobile |
| US-7002112 | US-7002112 | Exigent Request Email - T-Mobile |
| US-7002113 | US-7002117 | Exigent Request Email - Verizon |
| US-7002118 | US-7002119 | Exigent Request Form - Verizon |
| US-7002120 | US-7002121 | Exigent Request Email - Verizon |
| US-7002122 | US-7002164 | 20-mj-70960-DMR  Carrillo_Snapchat  SW FILED |
| US-7002165 | US-7002207 | 2020.07.07  Carrillo  Justus_Gmail Search Warrant FILED 20-mj-70912-DMR |
| US-7002208 | US-7002250 | 2020.07.09 Justus T-Mobile  Search Warrant FILED 4 20-mj-70924-DMR |
| US-7002251 | US-7002258 | 2020-06-12  Carrillo  FB warrant 3-20-70776  767-1 |
| US-7002259 | US-7002295 | 2020-06-12  Carrillo  FB warrant app 3-20-70776  767-main |
| US-7002296 | US-7002297 | 2020-06-12  Carrillo  FB warrant Sealing  Motion 3-20-70776  767-2 |
| US-7002298 | US-7002299 | 2020-06-12  Carrillo  FB warrant Sealing  Order 3-20-70776  767-3 |
| US-7002300 | US-7002305 | 2020-08-07  Justus T-Mobile_SW  Return 20-mj-70924-DMR |
| US-7002306 | US-7002312 | 2020-08-25  Justus_SW Return_Samsung Device_20-mj-70822-JSC |
| US-7002313 | US-7002319 | 2020-08-27  Carrillo_SW Return_Device Warrant_20-mj-70777-LB |
| US-7002320 | US-7002325 | Google_SW Return_20-70912 |
| US-7002326 | US-7002332 | Carrillo_T-Mobile  SW Return_20-70892 |
| US-7002333 | US-7002339 | WPD ▓▓▓ ▓▓▓ SW |
| US-7002340 | US-7002341 | 2020.06.18_Carrillo_SW_Return_2_Acct |
| US-7002342 | US-7002349 | 2020-06-26  Carrillo  FB 20-mj-70776-LB  - Warrant returned executed |
| US-7002350 | US-7002351 | steve.c.rrillo-  SW Return |
| US-7002352 | US-7002370 | BESK ▓▓▓ 1st Piggy Back |
| US-7002371 | US-7002420 | BESK corrected Expansion  Warrant 2 |
| US-7002421 | US-7002439 | BESK Expansion  Warrant 1 |
| US-7002440 | US-7002444 | Carrillo  SW Computer |
| US-7002445 | US-7002448 | Cell Phone SW Carrilo |
| US-7002449 | US-7002454 | Facebook SW |
| US-7002455 | US-7002494 | ▓▓▓  Carrillo  SW on Phones Social Media Computers  Phone Numbers |

5

| Beg. Bates | End Bates | General Description of Contents |
|---|---|---|
| US-7002495 | US-7002500 | Snapchat SW |
| US-7002501 | US-7002510 | WPD ███████████████████ Original |
| US-7002511 | US-7002511 | ████ Video SW |
| US-7002512 | US-7002515 | OPD SW-510-379-8170 |
| US-7002516 | US-7002519 | OPD SW-510-915-5320 |
| US-7002520 | US-7002528 | OPD SW-Aff-510-379-8170 |
| US-7002529 | US-7002537 | OPD SW-Aff-510-915-5320 |
| US-7002538 | US-7002546 | OPD SW-Aff-JustusPhone |
| US-7002547 | US-7002555 | OPD SW-JustusPhone |
| US-7002556 | US-7002556 | OPD SW-SealingOrder |
| US-7002557 | US-7002558 | Search Warrant Affidavit ████████████ |
| US-7002559 | US-7002562 | Search Warrant Affidavit ████████████ |
| US-7002563 | US-7002572 | State Tower Dump Warrant |
| US-7002573 | US-7002582 | State Tower Dump Warrant |
| US-7002583 | US-7002594 | State Tower Dump Warrant |
|  |  | **800000 Series - Audio/Video** |
| US-800146 | US-800146 | Call between Robert Justus and ████████ File Name: Justice Phone Call.mp3 (Native File) |
| US-800147 | US-800148 | 911 Calls (2 Native Files) |
| US-800149 | US-800155 | CHP Video Footage 6-7-2020 ████████ (7 Native Files) |
| US-800157 | US-800159 | SCSO Body Cam ████ (3 Native Files) |
| US-800160 | US-800161 | SCSO Body Cam ████ (3 Native Files) |
| US-800162 | US-800163 | SCSO Video re Exit Routes (2 Native Files) |
|  |  | **90000000 Series – Miscellaneous** |
| US-9000178 | US-9000185 | Carrillo's CLETS report |
| US-9000186 | US-9000191 | OSI Investigative Target Package re Steven Carrillo |
| US-9000192 | US-9000206 | FBI CAST Draft Oakland Shooting Cell Site Timeline |
| US-9000207 | US-9000207 | Steven Carrillo DMV Record Photo |
| US-9000208 | US-9000214 | UPS Store Rental Agreement Carrillo |
| US-9000215 | US-9000215 | Email re FW_SLPD Facebook Comment Justus |
| US-9000216 | US-9000216 | Attachment to US-9000215 |
| US-9000217 | US-9000218 | ACSO Fax Justus re Reports |
| US-9000219 | US-9000219 | Email re New Call Request - Robert Justus |
| US-9000220 | US-9000220 | FBI Santa Rita Calls Request |
| US-9000221 | US-9000221 | SLPD Chain of Custody Justus Phone |
| US-9000222 | US-9000222 | Victim 2 - Final Offer Letter - Triple Canopy Employment Agreements |
| US-9000223 | US-9000223 | ████████ - Final Offer Letter - Employment Agreements |
| US-9000224 | US-9000224 | Photo |
| US-9000225 | US-9000227 | ACCB ████ Draft Coroner Report |
| US-9000228 | US-9000230 | CalVCB Form - Victim 2 |

| Beg. Bates | End Bates | General Description of Contents |
|---|---|---|
| US-9000231 | US-9000231 | CalVCB Form - ████████ |
| US-9000232 | US-9000232 | Email_re_Fairfield_LPR |
| US-9000233 | US-9000234 | Email_re_van_fingerprints |
| US-9000235 | US-9000236 | Email_with_van_VIN |
| US-9000237 | US-9000237 | Ford_email |
| US-9000238 | US-9000238 | Ford_email_2 |
| US-9000239 | US-9000239 | OPD-Stored Towed Vehicle Report |
| US-9000240 | US-9000240 | OPD cancel want flyer |
| US-9000241 | US-9000242 | Stolen white Ford Vans 92 to 95_05-20 thru 05-29 1.xlsx (Native File) |
| US-9000243 | US-9000243 | Van ███████████████ Registered Vehicles |
| US-9000244 | US-9000256 | 5F91390 LEARN Vehicle Detection Report 6-01-20 |
| US-9000257 | US-9000274 | 64282C2 LEARN Vehicle Detection Report 6-01-20 |
| US-9000275 | US-9000289 | 6V49657 LEARN Vehicle Detection Report 6-01-20 |
| US-9000290 | US-9000303 | 7X79607 LEARN Vehicle Detection Report 6-01-20 |
| US-9000304 | US-9000318 | 8E11695 LEARN Vehicle Detection Report 6-01-20 |
| US-9000319 | US-9000321 | NICRIC LPR hits 1 Jun 20 |
| US-9000322 | US-9000322 | ████ Email re LPR attaching US-9000244 through US-9000322 |
| US-9000323 | US-9000323 | Suspect Sketch by PO ████ |
| US-9000324 | US-9000326 | Intentionally Left Blank |
| US-9000327 | US-9000329 | Carrillo Mailbox Package History Report-Reno |
| US-9000330 | US-9000336 | Carrillo UPS Application |
| US-9000337 | US-9000337 | Consent To Search - Big Basin |
| US-9000338 | US-9000784 | ████████ Contract Award |
| US-9000785 | US-9000785 | Email re ██████████████: List of guards |

We note two points about this production. First, as with prior productions, a large portion of these materials exceed the scope of discovery mandated by the Federal Rules of Criminal Procedure, federal statute, or relevant case law. We are providing these materials voluntarily and solely as a matter of discretion. By producing such materials to you, the government does not waive its right to object to any future discovery requests beyond the ambit of its legal obligations. We reject any suggestion that the criminal local rules, including Criminal Local Rule 16-1(c), serve as valid authority for any substantive discovery obligations beyond that required under the applicable federal statutes and rules (e.g., Rule 16 and Jencks).

Second, due to the unusually sensitive nature of the videos produced at control numbers US-800157 through US-800161, we ask that you treat those videos in their entirety as if they are Protected Information under our Stipulated Protective Order. If you anticipate any issues with complying with this request, please let us know right away.

//

//

//

7

Please contact me if you have any questions concerning the foregoing.

Very truly yours,

DAVID L. ANDERSON
United States Attorney

/s/ *Philip Kopczynski*

PHILIP KOPCZYNSKI
Assistant United States Attorney

Encl:   USAfx Folder entitled "2020-10-09 Production-Justus"