DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

PHILIP KOPCZYNSKI (NYBN 4627741)
Assistant United States Attorney

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
   Telephone: (415) 436-7200
   Fax: (415) 436-7027
   USACAN.USA-Filings@usdoj.gov
   Philip.Kopczynski@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 20-CR-265 YGR |
| Plaintiff, | JOINT RESPONSE TO NOVEMBER 11, 2020 ORDER (DKT. 48) |
| v. | |
| STEVEN CARRILLO and ROBERT ALVIN JUSTUS, JR., | |
| Defendants. | |

JOINT FILING RE: SCHEDULING
20-CR-265 YGR

United States' Proposed Schedule

In response to the Court's order of November 11, 2020, Dkt. 48, the parties met and conferred and did not reach an agreement. The United States proposes that the defendants make their submissions to the U.S. Attorney regarding the decision to seek the death penalty by June 18, 2021. The defendants reject this proposal and remain unwilling to identify a date by which they will make their submissions.

Scheduling the defendants' mitigation submissions in June would mean they have a full year to prepare their submissions. This would be far more time than the defendants in other recent, high-profile capital cases had. *See* Dkt. 39 at 10. A year affords the defendants more than a reasonable opportunity to give their input, particularly considering that the U.S. Attorney's recommendation is only the first step in the Department of Justice's capital case review process. Another opportunity for input exists later in the process. Justice Manual 9-10.130.

The Court's prior order recognized "indefinite delay is . . . unreasonable," Dkt. 48 at 5, yet the defendants continue to propose exactly that. Offering generalities rather than any information specific to this case, the defendants continue to insist that COVID-related restrictions are an insurmountable barrier to their work. Although it is now seven months since charging, and inoculation against COVID-19 has begun, the defendants still have said not a word about when their mitigation submissions might be ready or what information they might contain. Nor have they suggested that they have any material information that is not already known to the United States. Yet still they insist that the United States' capital case process must be held up indefinitely. The defendants' position conflates the preparation required for the mitigation submissions with trial readiness. *See* Dkt. 39 at 11–12. More significantly, it puts the defendants in control of a prosecutorial decision that belongs to the Executive Branch, and that involves defendants at all only because the DOJ invites them into the process. The Court already acknowledged that the defendants' insistence on indefinite delay implicates "separation of powers" principles, Dkt. 48 at 1, and as more time passes those concerns become more pressing. The COVID-19 public health restrictions are unquestionably serious, but the defendants' favored response—indefinite delay—is not compatible with the victims' rights, the swift administration of justice, and the many other values at stake.

Relatedly, it is not too early to set a pretrial schedule for this case. No matter the outcome of the

death penalty protocol, other work can and should move forward in the meantime. In *United States v. Nelson*, No. 17-CR-533 EMC, for example, which is a multi-defendant murder and racketeering case, the parties litigated a variety of motions, and the Court ordered the parties to agree upon a pretrial schedule containing "as many dates as possible irrespective of the ultimate trial date(s)," *id.* at Dkt. 1047, all before the capital case process concluded. So too here, much can be accomplished notwithstanding any impacts of COVID-19. The United States offers for the Court's consideration the following proposed schedule for pretrial motions and related matters. This schedule puts the case on track for a trial in the spring or summer of 2022.

| Deadline | Description |
|---|---|
| May 3, 2021 | Filing of any motions to compel discovery |
| June 1, 2021 | Provision to Court of any grounds for recusal and filing of any motions to disqualify |
| August 2, 2021 | Filing of any motions for severance, bills of particulars, or discovery of jury composition records, and any motions under Fed. R. Crim. P. 8 and 12(b)(3) except for those under Fed. R. Crim. P. 12(b)(3)(C) and (E) |
| November 1, 2021 | Filing of any motions to suppress evidence[1] |
| December 1, 2021 | Filing of any notices under Fed. R. Crim. P. 12.1(a) and 12.2(a) and (b)[2] |
| January 18, 2022 | Exchange of expert disclosures, if any, under Fed. R. Crim. P. 16(a)(1)(G) and (b)(1)(C) |
| February 28, 2022 | Filing of any *Daubert* motions |

During meet and confer, the United States invited the defendants to discuss the pretrial schedule, hoping to agree upon at least some dates, but they replied that they view this, too, as premature. Thus, on the defendants' view, the Court and parties ought to carry forward as we have for seven months with no idea of when the death penalty question or any other pretrial matter will be resolved. The Court should reject that view and give meaning to its finding that "indefinite delay is . . . unreasonable," Dkt. 48 at 5, by setting a schedule for orderly progress in this case.

---

[1] For any discovery produced after this deadline, the United States agrees that the defendants may file a motion to suppress that material within two weeks of its production.

[2] Any mental examinations under Fed. R. Crim. P. 12.2 should occur on a schedule to be set by the Court.

Defendant Steven Carrillo's Statement

Sergeant Carrillo asks this Court to set the matter for a further conference in 90 days regarding the status of the presentation of the death penalty submission to the local United States Attorney.[3] Sgt. Carrillo proposes monitored progress, not an "indefinite delay". The government's charge that Carrillo's defense team's proposal is unreasonable simply ignores the oversight proposed and dismisses the impact of the pandemic on the defense team's ability to fulfil its constitutional mandate.

---

[3] Pursuant to this Court's order, Doc. #48, Sergeant Carrillo attaches to this joint submission the argument in favor of this proposed schedule.

Defendant Robert Justus's Statement Concerning the Scheduling of a Local Presentation

The Court's order of November 11, 2020 (Doc. No. 48) directed the parties to meet and confer concerning the scheduling of the local presentation contemplated in Title 9-10.080 of the Justice Manual and to either agree upon a deadline for that presentation or submit their respective views on the scheduling of the local presentation.[4]  The government has proposed, without any particular rationale, a date of June 18, 2021.  Mr. Justus' very specific alternative proposed course of action is for this Court to schedule another status conference in 90 days, at which time the Court and the parties can determine whether it is appropriate at that time to set a specific date for that local presentation.

It is Mr. Justus' view that the public health conditions which significantly interfered with his defense team's ability to conduct a constitutionally adequate mitigation investigation prior to the hearing on October 28, 2020 not only continue to this point in time but have actually become more severe.  Not only is the Santa Rita Jail still closed to all visitors other than counsel, who can still have only non-contact visits, but the Governor of California and local public health agencies have now essentially directed the residents of California not to have extended contact with individuals outside of their households and have directed residents to quarantine for extended periods of time upon leaving this region and then returning home.  These restrictions on travel are based on sound public health criteria which Mr. Justus' entire defense team both embrace and comply with as much as possible, in order to protect their own health, as well as the health of their spouses, their parents, their children, and other relatives and members of the community.

It may be that the government anticipates that the COVID-19 pandemic will be over sufficiently in advance of June 18, 2021 that Mr. Justus' defense team can carry out a constitutionally adequate mitigation investigation and be prepared to share the results of their investigation by that date, but there is presently no reliable evidence that this will come to pass.  While the members of Mr. Justus' defense team view themselves as providing "essential services" none of them anticipate being eligible to receive

---

[4] Title 9-10.080 states, in part, "In any case in which the United States Attorney or Assistant Attorney General is contemplating requesting authorization to seek the death penalty or otherwise believes it would be useful to the decision-making process to receive a submission from defense counsel, the United States Attorney or Assistant Attorney General shall give counsel for the defendant a reasonable opportunity to present information for the consideration of the United States Attorney or Assistant Attorney General which may bear on the decision whether to seek the death penalty."

a COVID-19 vaccine for many months.  Vaccines have not been provided to Mr. Justus and other inmates at Santa Rita Jail, nor to the correctional officers who work there.  Among the numerous individuals with whom Mr. Justus' defense team needs to conduct extended, face-to-face, in person interviews in order to identify, develop and fully present mitigation information, few are in the age groups or occupational groups that have already been given access to vaccines.  The government's selection of an arbitrary deadline in the middle of a deepening pandemic ironically asks Mr. Justus' defense team to place their own health and the health of many others at risk in order to do what is constitutionally required to protect Mr. Justus from a government decision that may place his own life at risk.  The alternative, of course, is for Mr. Justus' defense team to just "phone it in" which of course we will not do.

The Court's order of November 11, 2020 directed the United States Marshal's Service (USMS) to facilitate face-to-face contact visits for the defendants with members of their defense teams at the federal courthouse.  Mr. Justus' counsel promptly scheduled an initial contact visit, which occurred in a courtroom at the federal courthouse in San Francisco in late November.  The visit lasted approximately 90 minutes.  Unfortunately, numerous deputies of the USMS remained in the courtroom throughout this visit, rendering the visit less than confidential.  During the visit, Mr. Justus sat in the jury box and was chained to a bolt in the floor.

Mr. Justus' counsel thereafter attempted to schedule another visit for some time in December, but it was agreed that the second visit would occur in early January.  That visit, slightly more than two hours in length, was confidential as the USMS deputies remained outside of the locked courtroom.  A third visit is presently scheduled to occur later this month.

While Mr. Justus and his counsel very much appreciate the Court's creation of opportunities to have confidential face-to-face visits in a space significantly safer, from a public health perspective, than the Santa Rita Jail, which continues to struggle with outbreaks of COVID-19 among inmates and staff, face-to-face visits between Mr. Justus and members of his defense team are only a small part of a constitutionally adequate mitigation investigation.  The *sine qua non* of a constitutionally adequate mitigation investigation are robust record collection and review, comprehensive interviews with a wide range of individuals who know the defendant, his family, his educational and employment history, his

physical and mental health history and other factors that may be mitigating and, in appropriate cases, skilled forensic evaluations that require extensive contact between forensic professionals and the defendant and a thoughtful synthesis of all of the information garnered from this complex, time-consuming and iterative process. Of course, each defendant's role in the charged offense is also often an important part of the mitigation/aggravation picture, and that is certainly true in this matter.

This tragic affair began *after* the COVID-19 pandemic had already descended upon us. There is no basis for claiming a lack of diligence on the part of Mr. Justus defense team. Mr. Justus is fully cooperative with his defense team which, as this Court knows, is not always the case in matters such as this.

Mr. Justus does not seek "indefinite delay" nor is Mr. Justus insensitive to the concerns of the victims in this case. However, the government has not presented any cogent rationale for its selection of June 18, 2021 as a deadline for the local presentation in this matter.

A status conference in early May 2020 would provide the Court and the parties with an opportunity to assess the extent to which the impediments described above have been removed. If they have, it may be that a local presentation in the very late summer or early Fall would be realistic.

<u>Mr. Justus' *Preliminary* Response to the Government's Proposal to Schedule Deadlines for the Filing of Pre-Trial Motions and Expert Disclosures</u>

As Mr. Justus' counsel explained to counsel for the government during our meet and confer on January 5, 2021, it is our view that, with some modest exceptions, the scheduling of pre-trial motions and deadlines for expert disclosures in advance of a decision by the Attorney General as to whether both, neither, one, or the other of the two defendants will face the death penalty is premature and inefficient.

While this Court did not direct the parties to meet and confer on the scheduling of pre-trial motions and disclosures, the government certainly can ask this Court to set a schedule if it wishes to do so. Mr. Justus proposed that the parties refrain from undertaking complex scheduling issues in a *potential* death penalty case until the Attorney General makes decisions about that potentiality. The government declined to take a wait and see approach. Mr. Justus also proposed, in the alternative, that the parties meet and confer shortly after the next status conference in this case in order to attempt to

identify certain motions and deadlines which are independent of the death penalty determination, but the government declined to adopt that course of action as well.

This Court ordered the parties to meet and confer and file a single document setting forth either their agreement or, in the absence of an agreement, their respective views on the single issue of *when the local presentation should occur*, limited to five pages per party.  Mr. Justus has done so.  The complex issue of when certain motions should be litigated and in what order, and what disclosures should be made by which dates, is beyond the scope of this Court's directive.  Therefore, Mr. Justus will file a separate pleading concerning the government's premature proposals, and he will do so no later than January 22, 2021, absent an order from the Court that directs some other course of action.

In closing on this issue, Mr. Justus will just note for the Court *by way of example*, as he told counsel for the government during the meet and confer, that it is difficult to see the wisdom in setting a deadline for the defendants to file motions to sever six weeks after the proposed local presentation deadline, especially where the government takes the position that this Court cannot set a deadline for the Attorney General to make a decision absent an impending trial date.  Even if the local presentations were to occur on June 18, 2020, experience teaches us that there is virtually no chance of the Attorney General making a decision six weeks later.  Thus, the government's proposal that the defendants file motions to sever by August 2, 2021 would place the parties and the Court in the position of addressing severance issues before it is known if one or the other or both or neither of the defendants will face the death penalty at trial, rendering the entire analysis of prejudicial joinder wholly speculative.  Mr. Justus has much more to say about other aspects of the government's proposed pre-trial schedule, which he will reserve for his separate pleading which will be filed no less than 10 days before the February 1, 2021 hearing in this matter.

JOINT FILING RE: SCHEDULING                    7
20-CR-265 YGR

The undersigned United States Attorney certifies that counsel for the defendants have given their approval for this joint filing.

Dated: January 15, 2021

_____/s/_____
DAVID L. ANDERSON
United States Attorney


_____/s/_____
JAMES THOMSON
KATHRYN ROSS
Counsel for Defendant STEVEN CARRILLO


_____/s/_____
SHAFFY MOEEL
RICHARD NOVAK
Counsel for Defendant ROBERT ALVIN JUSTUS, JR.