Pages 1 – 27

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**Before the Honorable Yvonne Gonzalez Rogers, Judge**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | NO. CR-20-00265 YGR |
| | ) | |
| VS. | ) | Monday, April 19, 2021 |
| | ) | |
| STEVEN CARRILLO AND | ) | Oakland, California |
| ROBERT ALVIN JUSTUS, | ) | |
| | ) | **Status Conference** |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

<u>**REPORTER'S TRANSCRIPT OF ZOOM PROCEEDINGS**</u>

<u>APPEARANCES:</u>

| | | |
|---|---|---|
| For Plaintiff: | | **STEPHANIE HINDS, ESQUIRE** |
| | | Acting United States Attorney |
| | | 450 Golden Gate Avenue, 11th Floor |
| | | San Francisco, California  94102 |
| | **BY:** | **PHILIP A. KOPCZYNSKI,** |
| | | **Assistant United States Attorney**s |
| | | |
| For Defendant | | LAW OFFICES OF JAMES S. THOMSON |
| Carrillo: | | 732 Addison Street, Suite A |
| | | Berkeley, California 94710 |
| | **BY:** | **JAMES S. THOMSON, ESQUIRE** |

(Appearances continued.)

**Reported By:**       Diane E. Skillman, CSR 4909, RPR, FCRR
                      Official Court Reporter

TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

```
1    For Defendant          MOEEL LAH FAKHOURY LLP
     Justus:                1300 Clay Street, Suite 600
2                           Oakland, California 94612
                     BY:   SHAFFY MOEEL, ESQUIRE
3

4                           RICHARD GLENN NOVAK, ESQUIRE
                            65 North Raymond Avenue, Suite 320
5                           Pasadena, California 91103

6

7    Also Present:          FRANK RIEBLI, ASSISTANT U.S. ATTORNEY

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

```
1     Monday, April 19, 2021                              2:45 p.m.

2                      P R O C E E D I N G S

3                              o0o

4         THE CLERK:  Calling criminal action 20-0265 United

5     States versus Steven Carrillo, whose appearance has been

6     waived, and Robert Alvin Justus.

7        Counsel, please state your appearances.

8         MR. KOPCZYNSKI:  Good afternoon Your Honor Philip

9     Kopczynski for the United States.

10        MR. THOMSON:  James Thomson on behalf of Sergeant

11    Steven Carrillo whose presence as been waived, Your Honor.

12        MR. NOVAK:  Good afternoon, Your Honor.  Richard

13    Novak and Shaffy Moel for Mr. Justus who is appearing by VTC

14    from Santa Rita, and his physical appearance in the courtroom

15    is waived for today's hearing.

16        THE COURT:  All right.  Good afternoon.  So we are

17    still, for purposes of the record, in the COVID-19 era.  We

18    continue to do proceedings remotely and are still operating

19    under General Order 74 and 72-6.  We are frequently, I think,

20    most often these days doing status conferences in criminal

21    cases via video which we are able to do with the accommodation

22    of Santa Rita jail who has provided us with a temporary

23    classroom to have people appear using video.

24       Okay.  In preparation for these proceedings, I did review

25    Docket 71, 72, and 75.  I appreciate having those.  Let me
```

ask -- and the record will also reflect we do have Mr. Riebli
with us who I believe is counsel of record for the Government
in a case *U.S. versus Blancas*.

Is that right?

**MR. RIEBLI:**  That is correct, Your Honor.

**THE COURT:**  21-105.  *U.S. versus Rush*, 21-121.

**MR. RIEBLI:**  That's correct.

**THE COURT:**  Given -- let me just -- I'm curious,
Mr. Riebli, that is why I told you it was fine with me if you
stayed on, I'm curious, given that the allegations in *U.S.
versus Rush* involve destruction of evidence related to this
case, why it wasn't related to this case.

**MR. RIEBLI:**  It's a good question.  I think a couple
of reasons.

One is, the allegations -- as I understand it, the
allegations in this case relate to events that took place on
or about May 29th, 2020 and earlier.  The allegations in --
well, the allegations in 21-105 *U.S. v. Blancas*, it's a child
pornography case.  They don't have anything to do with this.

The allegations in 21-121, those relate to events that
took place on or about June 6th, 2020, and after.  So at least
in our mind, we thought that the second case was separated in
time and is related to -- it's related to the evidence of
communications and some other things related to the Grizzlys
but not -- we aren't planning to produce in our case the

1    discovery related to the shootings in Oakland or any of the

2    evidence that was seized in -- on May 29th or after.  So our

3    evidence is more limited.

4         We spoke to Mr. Kopczynski, my co-counsel and I spoke to

5    Mr. Kopczynski this morning.  There may be some things that we

6    will provide to him to turn over to the defense in this case,

7    but at least at the moment, unless there's -- unless

8    there's -- unless in this case there are Rule 16 statements of

9    the defendants that we need to turn over in our case, I don't

10   anticipate that we are going to be seeking much in the way of

11   discovery from this case to turn over in ours.

12        So we did see a fairly clean break in the discovery.  And

13   I also think that in terms of resolving the cases, we didn't

14   see however the case against Mr. Carrillo and Mr. Justus turns

15   out, we were -- the resolutions in our case weren't going to

16   depend on how this case resolves or when it resolves.  We saw

17   them on fairly separate tracks.

18        Now, if the Court sees a greater relation and we should

19   file a related case notice, we will do that.  We filed a

20   related case notice as to 105 and 121 because Robert Blancos

21   was in both of those cases and we saw the evidence in both of

22   those cases arose from the analysis of the same devices, and

23   we also saw some potential efficiencies in attempts to resolve

24   the case if those two cases were related.

25        The Court denied that related case notice -- or whatever,

1    said it was not going to relate the cases.  So those two cases

2    are remaining unrelated.  So that's how we got to where we

3    are.

4        We saw the two cases as sufficiently distinct that we

5    didn't need to relate them and complicate this case.  And,

6    candidly, I'm not counsel for the defendants in our case, but

7    I suspect that they would want nothing to do with a homicide

8    case.

9        **THE COURT:**  I was -- again, indictments are

10   relatively thin.  I understood the allegations to relate to

11   the destruction of evidence that related to this case, which

12   is why I thought they were potentially related.

13       **MR. RIEBLI:**  It is a fair question.  And it relates

14   to destruction of evidence -- of communications that relate to

15   the Grizzlys generally and of certain communications that

16   Mr. Carrillo had that we believe Mr. Carrillo had with the

17   group, but there are other communications that they deleted as

18   well that involve just them.  And so the destruction of

19   evidence goes a little -- it's a little broader than just the

20   communications involving Mr. Carrillo.

21       **THE COURT:**  Okay.

22       **MR. RIEBLI:**  We are attempting to coordinate.  I

23   think that that's where we landed internally.  We need to

24   coordinate with the attorneys in this case, they need to

25   coordinate with us, but it is a live issue, and I appreciate

1    the Court raising it.

2         **THE COURT:**  Let's move to the joint statement with

3    respect to the pretrial schedule.  Given what you've said

4    here, and this is joint with the Government, right,

5    Mr. Kopczynski?

6         **MR. KOPCZYNSKI:**  Yes, that's right.

7         **THE COURT:**  So given what you've said here, if I set

8    a trial date today, you, wouldn't be ready to go until

9    November 7th of 2022, right?  Because the first deadline is 80

10   weeks out.  So 80 weeks out from today is actually

11   October 31st; is that right?

12        **MR. KOPCZYNSKI:**  Yes.

13     Now, I believe the parties have a dispute on this because

14   from the Government's perspective, that's a reasonable and

15   even ample amount of time and we could go to trial in late

16   2022 or 2023, or early 2023, but I know the defense has a

17   different perspective on that.  But from the Government's

18   perspective, absolutely.  This could be 2022.

19        **THE COURT:**  How long do you think the Government's

20   case will take?

21        **MR. KOPCZYNSKI:**  Well, the one caveat I would have to

22   ask, are we talking normal trial days?  I know with COVID --

23        **THE COURT:**  So I'll tell you what my trial day is.

24   And given that it always makes me laugh when people say that

25   we are doing half days, given that I was a trial judge in the

1     state court, and in the state court, given when we had to

2     start and when we had to finish and the hour and a half you

3     had to give to staff, I get in my quote-unquote half day about

4     one hour less than what I would do in a state trial court.

5         I go from 8:00 1:30 every day -- from 8:00 to 1:30 with

6     two 15-minute breaks.  We start every day at 8:00 o'clock.  We

7     have half an hour to discuss issues that may need to be

8     resolved.  The jury is always in the jury box at 8:30.

9         So I prioritize every morning what absolutely needs to be

10    done.  8:30 to 1:30 with two 15-minute breaks.  Four and a

11    half hours of trial every day.  I typically -- if we are --

12    you know, depending on the length of the case -- I start trial

13    on May 3rd in *Apple versus Epic* or *Epic versus Apple*.  We will

14    be going from 8:00 to 3:00 p.m. every day, five days a week.

15    I need to get that case in before I start another case in

16    June.

17        So when I tried the *U.S. versus* -- in the Nuestra Familia

18    case when we went four months, we did the 8:00 to 1:30 we did

19    take Fridays off so people could -- defense lawyers in

20    particular so that they could deal with their other cases or

21    do what they needed to do.  That seemed to work pretty well

22    and it gave us a flex day in case there were things that

23    needed to happen.

24        So you can anticipate four days a week just because I

25    think for longer trials, and especially for defense counsel,

1    that tends to help.

2         **MR. KOPCZYNSKI:**  Sure.

3         With that understanding and, thank you, my best guess

4    today would be this might be three weeks for the Government's

5    case.  We don't see this case as overly complicated.  As the

6    Court knows, there were only two counts in the indictment.

7         My expectation is present, it will stay that way.  Of

8    course it could change.  But assuming it stays as it is now,

9    we think it is a relatively simple case.  I think three weeks

10   is a fair estimate.  Perhaps less even.

11        **THE COURT:**  Okay.  All right.

12        Mr. Thomson, your perspective?

13        **MR. THOMSON:**  I really am not feeling that I am in a

14   position to talk about length of trial nor actually whether

15   November 2022 is in any way feasible.  I did not think we

16   were -- the purpose of this was to set a date for trial at

17   this juncture.  It was to give the Court some information with

18   respect to what we thought the schedule would be.

19        So as to actually talking about a trial date, I would need

20   to defer, perhaps speak to co-counsel and certainly speak with

21   my client, but I would imagine that the date that we would

22   have in mind would be somewhere in 2023 given the voluminous

23   nature of the discovery.

24        This also depends, I guess, on whether or not there is

25   going to be authorization for them seeking the death penalty

1    or not in the case.  If that's a factor, then that's going to

2    change things dramatically as well.  So those are my general

3    comments as to the trial date.

4        I think and I don't know how the Government is going to

5    try their case, but while it may seem fairly uncomplicated to

6    the Government, I can't imagine, given the amount of discovery

7    that we have and the amount of the issues that are presented,

8    that it's going to be tried in a three-week period.  But I

9    can't make any estimate.  I have no estimate whatsoever of how

10   long the defense case would take.

11           **THE COURT:**  On the outside, when do you think you

12   would be ready?

13           **MR. THOMSON:**  If the Court were to require that I

14   answer the question today, I would think September of 2023.

15           **THE COURT:**  Mr. Novak?

16           **MR. NOVAK:**  Thank you, Your Honor.

17       When we were last before the Court, the Court asked us to

18   prepare a working-backwards pretrial schedule.  And that

19   process, I think, led to the proposed schedule that the Court

20   has before it.

21       It was my impression, although I certainly could be wrong,

22   that the Court was hesitant to really address trial dates

23   until we have the death penalty protocol behind us.

24       Mr. Kopczynski has told us that the Government's interest

25   in having local presentations from both defendants under the

1   protocol has not changed, and Mr. Justus has offered to make

2   that presentation, as we stated in our separate report, by

3   October of this year.

4       So while I understand how the Court calculates 80 months

5   from now takes us to October 2022, my assumption is that if we

6   made our local representations by October of this year, that

7   we wouldn't have decisions from the Department of Justice

8   until sometime in the first few months of 2023.

9       Now, the two defendants may be on different tracks or they

10  may not be at the Department of Justice, but what Government

11  counsel has told us is they are on the same track within the

12  Northern District, which is that the Government wants

13  presentations from both defendants.

14      So, I think that Ms. Moeel and I anticipated that the

15  Court may have this question, and we agree with Mr. Thomson

16  that the fall of 2023 is realistic assuming there has been a

17  decision by the Department of Justice significantly before

18  that.  And I think that the joint schedule, which we laid out,

19  notably doesn't address any proceedings that would be required

20  if it were a capital case as to one or the other or both

21  defendants.

22      So I hope that answers the Court's question plus a little

23  additional bonus information.

24          **THE COURT:**  When will you be ready on the outside?

25          **MR. NOVAK:**  The same time as Mr. Thomson represented.

1   And that's something that we feel that we can abide by at this

2   point in time.  I know it's quite aways out, but I still think

3   that until we have either a decision by the Government that

4   they don't need a local presentation from Mr. Justus or we've

5   completed it, that has to be the focus of our efforts, which

6   is preparing the local presentation and preparing whatever

7   materials of presentation are made in Washington.

8        And I would add that while I respect that the Government

9   views it as a simple case, I think that from Mr. Justus'

10  perspective it is not so simple.  It is a complicated case and

11  I think that Your Honor knows from the Court's review of the

12  complaint -- the affidavits filed in support of the complaints

13  which were separately filed against the two defendants before

14  the case was indicted, that there are very likely to be some

15  serious problems with a joint trial regardless of the capital

16  posture of the case.

17       I am not speaking for Mr. Thomson, but I think that -- I'm

18  not trying to be obtuse, but I think the Court understands

19  what I'm saying.

20       **MR. KOPCZYNSKI:**  Your Honor, if I may, I would

21  appreciate to respond to a couple of those points.

22       One, I believe Mr. Novak misspoke in saying that he would

23  expect a decision from the Department of Justice in 2023.  So

24  that is clearly not true.

25       Even if the Court accepted the idea proposed by the

1      defense of mitigation presentations this fall, a decision

2      could be expected from the Department of Justice some number

3      of months thereafter, perhaps putting this into early 2022,

4      not 2023.

5            **MR. NOVAK:**  Yes.

6            **MR. KOPCZYNSKI:**  Moreover, it continues to be our

7      position that we can do more than one thing in this case.  As

8      we approach the one-year anniversary of this murder and

9      attempted murder, surely counsel has bandwidth to begin, at

10     least, some of the other matters contemplated by this schedule

11     at the same time as they work on mitigation presentations.

12     And there's simply no need -- even if the Court is inclined to

13     accept that fall deadline for presentations, there is simply

14     no need every other aspect of the case would be on standby.

15           **MR. THOMSON:**  Counsel is right, I did misspeak, Your

16     Honor.  I skipped over an entire year in terms of the DOJ

17     process.

18         I think that we could expect a decision in no less than

19     four months from the Government whenever the presentations are

20     made and the recommendation is made.  That's my experience,

21     although the Government doesn't want to be ordered to provide

22     a decision by a certain deadline.  But if we made our

23     presentations in October, I expect that we would hear

24     something at the earliest in February or March of 2022.

25         So then the question is, if you have an 80-week pretrial

1    schedule that begins let's just say on March 1st of 2022,

2    you're basically ending up in the summer with a trial date.

3    And the schedule that we have proposed does not include any

4    proceedings related to capital litigation.  And it doesn't --

5    well, I was going to go down the rabbit hole of what those

6    types of litigation deadlines might look like, but the Court

7    well knows what they would look like, the range of issues.

8    **THE COURT:**  Mr. Kopczynski, this joint -- when I said

9    November 2022 based upon -- I didn't say November '21, I said

10   November '22, which is 80 weeks from now.

11   So, I don't know if Mr. Thomson misspoke or not when he

12   said September of 2023.

13   **MR. THOMSON:**  No, I did not, Your Honor.

14   And while it may not be necessary to add, I would say in

15   response to what Mr. Kopczynski indicated, I don't think I've

16   ever been accused of idly standing by in a case of this

17   magnitude as we proceed to trial.

18   **MR. KOPCZYNSKI:**  Frankly, that's just all the more

19   reason then.  If the defense are saying they have done the

20   work and they are ready to, for example, taking the first item

21   on this list, would they make some motion for recusal or

22   change of venue?  Why not begin that now?

23   **THE COURT:**  Mr. Kopczynski, let me ask you, and --

24   how many people do you have working on this case?  Are you the

25   only one?

1          **MR. KOPCZYNSKI:**  In the U.S. Attorney's Office, is

2     that the question?

3          **THE COURT:**  Yes.

4          **MR. KOPCZYNSKI:**  Yes.  Yes.

5          **THE COURT:**  You don't have any other lawyer working

6     with you?

7          **MR. KOPCZYNSKI:**  We have a supervisory chain.  And,

8     of course, supervisors follow the progress of a case.  But I

9     am counsel for the Government in this case.  Of course, if the

10     matter goes to trial, there will be an additional AUSA.  It's

11     our typical practice.

12          **THE COURT:**  What are your trial conflicts in 2023?

13     Does anybody have a trial conflict in 2023?

14          **MR. THOMSON:**  No, Your Honor.

15          **MR. KOPCZYNSKI:**  No, Your Honor.

16          **MR. NOVAK:**  Your Honor, this is Richard --

17          **MS. MOEL:**  No, Your Honor.

18          **MR. NOVAK:**  I don't have any trials set in any

19     district in 2023 at this time, Your Honor.

20       I have a matter set before Judge Koh in May of 2022.  I

21     don't want to go too far down the rabbit hole, but that is a

22     very long trial.  That trial date was predicated on the

23     assumption that there would be a decision by the Department of

24     Justice about whether or not it would seek the death penalty

25     against my client prior to -- maybe even prior to today.  It's

1   a trial date that has been pending a long time, and we still

2   haven't even been to the Department of Justice.

3          **THE COURT:**  Is this the Skates case?

4          **MR. NOVAK:**  Yes.  I represent Mr. Chavez.  He is a

5   co-defendant of Mr. Skates.

6          **THE COURT:**  When did you make the presentation?

7          **MR. NOVAK:**  We have not made a presentation.  We have

8   never been to Washington, DC.

9          **THE COURT:**  When did you make the local presentation?

10          **MR. NOVAK:**  I could look back in my records.  We were

11   scheduled to make a presentation to the Department of Justice

12   in March of last year, and that date was vacated at our

13   request by the Capital Case Committee.

14      So it's not a question -- if I can assume the Court's

15   query, it's not that we were never invited.  I do believe that

16   Mr. Anderson actually made a recommendation to Washington.  We

17   were then invited.  Then the pandemic arrived.  And that was

18   vacated and we have never been invited back yet.  I am not

19   suggesting that we won't be invited back.  I'm confident that

20   we will be.  And then there's some other Rule 5 issues that I

21   probably shouldn't get into --

22          **THE COURT:**  I'm not looking for anything totally

23   confidential, I was more looking for --

24          **MR. NOVAK:**  I understand.  I want to respect what

25   Stephen Meyer of the Government has said and not said on the

1    record.

2        So I guess all I'm really saying, Your Honor, is that the

3    trial date that Judge Koh set a very long time ago, the

4    pretrial scheduling order that went along with that, that ship

5    has basically sailed because of COVID and the delays in going

6    to DOJ.  So while I cannot say what Judge Koh thinks a

7    replacement trial date should be, that case is presently set

8    for May of 2022 and could bleed over into early 2023 or even

9    mid-2023 if it started on time.

10            THE COURT:  I don't understand.  It's a six-month

11    trial?

12            MR. NOVAK:  No.  The Government's estimate was a

13    year.

14            THE COURT:  And it's supposed to go you say May 2022?

15            MR. NOVAK:  Yes, Your Honor.  It's supposed to go

16    May 2022.  The Government's estimate, if it was a joint

17    capital trial was a year to include guilt phase and penalty

18    phase for two defendants.

19        So without trying to anticipate what Judge Koh might or

20    might not do in light of the 18th Amended Scheduling Order

21    having been vacated during the COVID period and us not having

22    been to DOJ on that case, I think that if the Court set a

23    trial date in September of 2023 as the defendants are

24    suggesting would make sense, that wouldn't conflict with Judge

25    Koh's schedules even if Judge Koh didn't change her trial

1    schedule.

2         Also, I would add, that if for some reason Mr. Chavez is

3    not authorized in that case, my status as learned counsel in

4    that case, and unless the Court has something else in mind, I

5    wouldn't be trying the case as a noncapital case.  However, my

6    co-counsel in that case is the Federal Public Defender of

7    Oregon, so there's all kinds of logistics there.

8              **THE COURT:**  All right.  When did you want -- when did

9    you want to come back?  What are we going to do in 60 days?

10             **MR. KOPCZYNSKI:**  From the Government's perspective,

11   I'm just not sure.  Because we're working on some discovery

12   requests from the defense, and I think we have been working

13   well.  I don't anticipate there will be a need for any motions

14   practice on that.

15        And, again, just to be candid, nothing else is happening

16   in the case.  So I'm not sure -- we can come back in 60 days.

17   I don't know what exactly there would be to talk about.  But

18   of course we would appreciate the opportunity to check in with

19   the Court.

20             **MR. THOMSON:**  I suggested 60 days, Your Honor,

21   because I can't imagine that something will not occur in this

22   case over the next 30 to 60 days just given everything that

23   goes on in these types of cases.  And I thought that it would

24   be appropriate for the Court to know where the parties stood

25   as to various issues.

1       I'm certainly willing to have it go at a later date if

2   that's what the Court wants.

3           **THE COURT:**  All right.  Let me do this:  I will set

4   you in July.  My plan would be at the next conference to set a

5   trial date.  I have heard your perspectives.  I can let you

6   know right now that I cannot try this case in the first

7   quarter of 2023.  So, if I don't try it in 2022, the earliest

8   I would try it in 2023 is April 3rd.  So, just to FYI,

9   Mr. Kopczynski.  It is not going to happen during that first

10  quarter.

11      It's not exactly clear to me that it needs to be tried as

12  late as September given what you've provided to me.  Like I

13  said, the earliest would have been November of 2022.  We are

14  looking at somewhere really between April through the summer.

15  That's where we are looking.

16      If I had to set it today, I would set August 7th because I

17  think the defense always tries to give themselves a little bit

18  extra.  So if you want a date, I can give you August 7th.  You

19  can get going.

20          **MR. THOMSON:**  August 7th, 2023, Your Honor?

21          **THE COURT:**  Yep.

22          **MR. THOMSON:**  Given all of the stuff that is going

23  on, and hopeful in working towards that, that would be fine

24  with Sergeant Carrillo.

25          **THE COURT:**  I know it's not what you want,

1    Mr. Kopczynski, but, frankly, it took almost a year, I think,

2    to get decisions back on -- in the Nuestra Familia case.  If

3    we can move faster, we can move faster.  We can always

4    advance.  I will be in constant contact with everybody.

5            MR. KOPCZYNSKI:  Understood.  I certainly appreciate

6    that.  If the Court's concern is allowing time for the death

7    penalty protocol process, then I absolutely appreciate the

8    Court's willingness to continue this -- you know, monitor

9    that.  If it turns out these are not authorized --

10           THE COURT:  The dynamic changes.

11           MR. KOPCZYNSKI:  From our perspective that would be

12   all the more reason we would get going sooner than summer of

13   2023.

14           THE COURT:  Given what Mr. Novak said, I think it is

15   probably best to get on everyone's calendar.  You know,

16   it's -- I do want to have something to work towards.  And I

17   know that I can't do it that first quarter.  So, you know, if

18   we can move things up so nobody is scrambling, I am happy to

19   do that, too.  But --

20           MR. NOVAK:  Your Honor, August 7th of 2023 is fine

21   with Mr. Justus.  Ms. Moeel and I have conferred about that in

22   the background, if I can refer to other social media tools

23   that way.  So we're good with that.

24       And I think that once we have decisions from the

25   Department of Justice, it will be more productive to talk

1    about whether that date makes sense to the Court for both

2    defendants, how it affects joint -- joinder and severance

3    issues.  I mean, at this point it's all hypothetical.

4              **THE COURT:**  So why don't we say tentative trial date

5    of August 7th, 2023 assuming that this is a capital case.

6              **MR. THOMSON:**  Understood, Your Honor.

7              **THE COURT:**  The Court will revisit it if we get a

8    decision more quickly.  And if it is not a capital case, I can

9    advance it.

10             **MR. KOPCZYNSKI:**  Understood.  Thank you, Your Honor.

11             **THE COURT:**  Okay.

12             **THE CLERK:**  So the July date for a status?

13             **THE COURT:**  I think I have potentially July 12th?

14             **THE CLERK:**  Yes.

15             **THE COURT:**  We have classroom C July 12th.  Does that

16   work for everybody?

17             **MR. THOMSON:**  Yes.

18             **MR. NOVAK:**  Yes.  That's fine, Your Honor.

19             **MR. KOPCZYNSKI:**  That's fine for the Government.

20             **THE COURT:**  We'll put it at the end of the day again

21   at 2:30.

22        I know, Mr. Riebli, keep in mind what I said, okay?

23             **MR. RIEBLI:**  Yes, Your Honor.

24             **MR. KOPCZYNSKI:**  Your Honor, may I briefly address

25   two housekeeping matters?

1          **THE COURT:**  You may.

2          **MR. KOPCZYNSKI:**  Thank you.

3      So, one, just really to make a note of it in the record,

4  the Court may have seen there was some news coverage last

5  week, and in particular an article on *ProPublica* that talks

6  about this case, among other things, and about Mr. Carrillo.

7      The Government did note that there is reference in that

8  article to some material that is in the discovery in this

9  case.

10      Now, I note this really only to say --

11          **THE COURT:**  Mr. Kopczynski, could you, especially in

12  today's age, there is an awful lot of different kinds of media

13  and media sources.  So maybe you should bring me a little bit

14  up to speed on exactly what you are talking about.

15      The only thing I've recently seen relates to Mr. Riebli's

16  case.

17          **MR. KOPCZYNSKI:**  Sure.

18      So, there was an article -- I apologize, I don't have the

19  exact day of it, it was last week.  It's on the website.  News

20  organization called *ProPublica*.  They published a series of

21  articles, including this one last week in partnership with

22  *Frontline*, which is a PBS program.  And it's a -- sort of an

23  investigative journalism piece.  There were interviews with

24  Mr. Carrillo, interviews with some of the people close to him,

25  discussion of this case, some discussion of the other case.

1          And I mention it now only because of this point about the

2     journalists talking about having access to some material that

3     I know is in the discovery in this case.  And one example is a

4     recording of a conversation between a person close to

5     Mr. Carrillo and law enforcement.

6          And to be very clear, I am not accusing anyone of

7     violating the protective order.  I don't have specific

8     information about how the journalist got ahold of it.  But I

9     just note it today because, frankly, it's on my mind and I'm a

10     little troubled.  And I would hope that everyone is reminded

11     of the need to abide by our protective order signed by Your

12     Honor last summer.

13          Again, I really am not in a position today to say how

14     exactly the journalist got ahold of that.  I'm not making

15     accusations, but it is a troubling aspect of this recent media

16     coverage.

17          **MR. THOMSON:**  Your Honor, I'm going to respond to

18     that.

19          While not framed as an accusation, it certainly is how it

20     comes across.  I can assure the Court, I can assure

21     Mr. Riebli, I can assure Mr. Kopczynski that no one,

22     absolutely no one in Sergeant Carrillo's defense team provided

23     any information to this so-called piece of journalism that is

24     being talked about here.

25          And it is troubling to me that this was brought up in this

1    way in which the accusation, albeit not called one, is laid at

2    the hands of someone.  I suggest that if Mr. Kopczynski has

3    something in mind, he should contact the reporter.  And I use

4    that term in that sense to discuss what may have happened or

5    may not have happened.  But I assure the Court that no one on

6    the Carrillo defense team provided anything to this reporter,

7    not even speaking to the reporter.

8          **MR. KOPCZYNSKI:**  Well, Mr. Carrillo himself spoke to

9    the reporter.  But, again, my intention --

10         **MR. THOMSON:**  I'm going to stop this.  I am more than

11   glad to go in camera and discuss what it is that occurred in

12   this case and how it is that some of the information may have

13   been obtained by the reporter.  I'm saying again, no one from

14   the Carrillo defense team talked to the reporter or provided

15   any information to the reporter regarding this.

16       As to how there may have been material taken from

17   Mr. Carrillo by the reporter is a subject that I would most

18   lovelily like to explore, but that has nothing to do with the

19   defense team.  So I am requesting that the Court direct the

20   prosecution that if they have anything along these lines that

21   they want to bring up, that they do so in a pleading that can

22   be responded to and can be dealt with and addressed in an in

23   camera hearing in part so we can move forward.

24       I do not want to have an open-ended discussion about these

25   matters, one, being sprung on us and, two, not well-founded.

1    A simple phone call from Mr. Kopczynski to me may have handled

2    some of these matters and we would not have to have this

3    matter addressed before the Court at this point in time.

4         **THE COURT:**  Anybody else on topic?

5         **MR. KOPCZYNSKI:**  Clearly I will follow up with

6    Mr. Thomson.

7         A second matter, Your Honor, again, very briefly,

8    consistent with what I was saying earlier, the Government is

9    endeavoring to respond to some of Mr. Thomson's discovery

10   requests.  After a little bit of mixup in the docket, we have

11   now at Docket 79-1 a subpoena we are asking the Court's

12   approval to issue.  That will --

13        **THE COURT:**  That's approved.  Those are for the

14   medical records --

15        **MR. KOPCZYNSKI:**  Yes, Your Honor.

16        **THE COURT:**  That -- there was a change -- I saw that

17   this morning.  I reviewed it.  The Court will issue the

18   subpoena requested.

19        **MR. KOPCZYNSKI:**  Very good.  Thank you.

20        I have nothing else.

21        **THE COURT:**  Okay.  Ms. Stone, did you note that?

22        **THE CLERK:**  Yes.  Yes.

23        **THE COURT:**  Mr. Thomson, anything else?

24        **MR. THOMSON:**  No, Your Honor.

25        **THE COURT:**  Mr. Novak?

1          **MR. NOVAK:**  No.  Thank you, Your Honor.

2          **THE COURT:**  Ms. Moeel?

3          **MS. MOEEL:**  No.  Thank you, Your Honor.

4          **THE COURT:**  Okay.

5      Like I said, if I can get this case tried earlier, my

6   preference is to get it tried earlier.  You are all trial

7   lawyers, you know that memories fade.  It is better to get

8   things tried sooner rather than later as long as we have

9   sufficient safeguards to protect people's due process.

10      But I do worry, given my experience, that it will be a

11  long time before we hear back from the Government.  It is

12  ordered that the defense submission occur no later than

13  October 1st.  But we will keep checking.  At this point, the

14  request by the defense for in camera discussions about their

15  attorney work, I don't need that right now.

16      I think that's it for now.  We will -- we should have --

17  we already have a stipulation with respect to exclusion of

18  time, but in any event, I will see you all back here in July,

19  July 12th --

20          **MR. NOVAK:**  Your Honor, may I raise one very brief

21  non-controversy issue?

22          **THE COURT:**  If it's controversial, you can raise

23  that, too.

24          **MR. NOVAK:**  Well, I'm just promising it is not

25  controversial.

1          Mr. Justus informed us over the weekend that he was having

2     a medical issue, which is in the middle of being addressed by

3     the medical staff at Santa Rita.  But I told him that I would

4     try to use today's hearing just to either get a thumbs up or a

5     thumb down in terms of whether he needs any intervention from

6     counsel or the Court.

7          Mr. Justus, is everything okay?

8               **THE DEFENDANT:**  I'm good.

9               **MR. NOVAK:**  Thank you, Your Honor.  I appreciate

10    that.  I was just thinking about whether we needed a report

11    from the marshals.  I know the nature of the medical issue and

12    the treatment, and it sounds like it is being taken care of.

13              **THE COURT:**  All right.  We will see you in a few

14    months.  We are adjourned.

15              **MR. NOVAK:**  Thank you.

16              **MR. KOPCZYNSKI:**  Thank you, Your Honor.

17              **MR. RIEBLI:**  Thank you, Your Honor.

18              **MS. MOEL:**  Thank you, Your Honor.

19              **THE COURT:**  Thank you.

20                   (Proceedings concluded at 3:31 p.m.)

21

22

23

24

25

### CERTIFICATE OF REPORTER

I, Diane E. Skillman, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*Diane E. Skillman*

DIANE E. SKILLMAN, CSR 4909, RPR, FCRR

Thursday, May 27, 2021