Pages 1 - 33

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**Before the Honorable Yvonne Gonzalez Rogers, Judge**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | NO. CR-20-00265 YGR |
| | ) | |
| VS. | ) | Monday, July 12, 2021 |
| | ) | |
| STEVEN CARRILLO AND | ) | Oakland, California |
| ROBERT ALVIN JUSTUS, | ) | |
| | ) | **Status Conference** |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**REPORTER'S TRANSCRIPT OF ZOOM PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:          **STEPHANIE HINDS, ESQUIRE**
                        Acting United States Attorney
                        450 Golden Gate Avenue, 11th Floor
                        San Francisco, California  94102
                **BY:  Patrick O'Brien,**
                      **Assistant United States Attorney**s

For Defendant           LAW OFFICES OF JAMES S. THOMSON
Carrillo:               732 Addison Street, Suite A
                        Berkeley, California 94710
                **BY:  JAMES S. THOMSON, ESQUIRE**

For Defendant           **RICHARD GLENN NOVAK, ESQUIRE**
Justus:                 65 North Raymond Avenue, Suite 320
                        Pasadena, California 91103

**Reported By:**        Diane E. Skillman, CSR 4909, RPR, FCRR
                        Official Court Reporter

            TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

<u>Monday, July 12, 2021</u>                                    2:28 p.m.

                P R O C E E D I N G S

                       o0o

        **THE CLERK:**  I'll call the case.

    Calling Criminal action 20-0265 United States versus

Steven Carrillo and Robert Alvin Justus.

    Counsel, please state your appearances.

        **MR. O'BRIEN:**  Good afternoon, Your Honor.  Patrick

O'Brien for the United States.

        **THE COURT:**  Mr. Thomson, you are muted.  Good

afternoon.

        **MR. THOMSON:**  Good afternoon.  My machine seems to be

fighting it.

    Good afternoon, Your Honor.  James Thomson on behalf of

Sergeant Steven Carrillo whose presence has been waived and

the Court has issued an order waiving his appearance.

        **THE COURT:**  All right.

    Mr. Novak?

        **MR. NOVAK:**  Thank you, Your Honor.

    Good afternoon.  Richard Novak for Mr. Justus, who is

present by VTC from Santa Rita.  And I'm also appearing on

behalf of my co-counsel, Ms. Moeel, who is teaching at the

National Criminal Defense College right now in Rhode Island.

        **THE COURT:**  Okay.  Great.

    So for purposes of the record, we still are operating

1    under General Order 74 and 79.  We are coming out of the

2    COVID-19 pandemic, but we still are limiting the number of

3    proceedings that are happening in the courtrooms.  With the

4    assistance of the Alameda County Sheriff, we do have access to

5    a classroom at Santa Rita Jail, and for status conferences

6    defendants are able to appear remotely.

7        I concur that Mr. Carrillo asked to be excused and his

8    appearance waived, and I agreed to that this time.

9        So, I understand that the Government -- let's get an

10    update from you, Mr. O'Brien.  This is your first appearance

11    in front of me on this case.  In fact, I think any case.  I

12    don't know that I met you before.

13          **MR. O'BRIEN:**  Yes, Your Honor, that's correct.

14        And I can update the Court on where things stand from my

15    perspective if the Court would like.

16          **THE COURT:**  Yes, please.

17          **MR. O'BRIEN:**  So, Your Honor, I made an appearance in

18    this case on June 4th, 2021.  AUSA Philip Kopczynski

19    transferred to another United States Attorney's office, so I

20    will be appearing in this case going forward for the

21    Government.

22        Although I made an appearance in June, we have continued

23    to do what we can to move this case forward.  And in keeping

24    with that, I met and conferred with defense counsel for both

25    defendants.  We addressed ongoing discovery meet-and-confer

1   process that counsel for Mr. Justus had raised where they had

2   requested discovery from the *United States versus Rush* case.

3       We picked up those conversations, and we produced to both

4   defendants all of the discovery from that case that had been

5   produced to the four defendants in that case.  So that was

6   produced at the end of June.  It was a substantial production

7   to the defendants which I imagine defense counsel is still

8   reviewing.

9       We have also met and conferred regarding setting up a time

10  for defense counsel to review the physical evidence in this

11  case.  Those discussions about finding a date that works for

12  the parties are ongoing, but we were in touch as -- just this

13  morning about finding additional dates for that review.

14      There is also an update on the death penalty.  As I'm sure

15  the Court saw from the status statements filed by the

16  defendants, the Government notified counsel for the defendants

17  that the Acting U.S. Attorney's recommendation had left the

18  United States Attorney's office and is now pending with the

19  Capital Review Committee in Washington.  So from the

20  Government's perspective, the October 1st deadline for the

21  local presentation that the Court set at the April 2021 status

22  conference is essentially moot.

23      We have been in touch with counsel for the defendants

24  regarding next steps, and those next steps would include

25  whether there's going to be a conference scheduled for the

1    defendants before the Capital Review Committee.  And we have

2    scheduled a conference with counsel for Mr. Thomson [sic], as

3    Mr. Thomson stated in his status report.

4         As the Court knows, once it leaves -- once the

5    recommendation leaves our office, we don't control the timing

6    of the recommendation.  So I think the discussions about

7    whether this is going to be a capital case or whether this is

8    going to be a noncapital case in terms of setting the schedule

9    any further, with respect to the order -- the proposed -- the

10   stipulation the parties filed where we laid out the weeks

11   before an August 2023 trial date when certain things would

12   happen.

13        I think we are still in the same place as in April where

14   we don't know whether this is going to be a capital case or

15   not, but I will update counsel for the defendants and the

16   Court as we learn more about the timing of the different

17   things.

18        I can't say anything more about the recommendation given

19   the confidentiality of the process, but the recommendation has

20   left our office which is another step in moving the case

21   forward.

22        I am also happy to talk about the recent announcement by

23   the Attorney General regarding the moratorium on death

24   penalties, which I have not had a chance to talk to counsel

25   for defendants about, but the bottom line is that it won't

1    affect the process right now that we are going through.

2        The Attorney General has ordered a moratorium on

3    executions and a review of the Justice Manual provisions

4    regarding the death penalty, but the current Justice Manual

5    provisions remain in effect, so the department will continue

6    to follow its existing processes regarding, one, decisions to

7    seek or not seek the death penalty and, two, decisions

8    regarding whether a change of circumstances warrant

9    reconsideration of prior decision to seek.

10       The Attorney General has not made any policy decisions

11   that change the department's litigating positions in cases

12   where there was authorization to seek the death penalty that

13   was previously granted, and I do not have a timeline for when

14   that review will be completed, but, again, I will update

15   counsel for the defendants if I learn anything that would

16   impact the processes that we're following in this case.

17           **THE COURT:**  All right.  Anything else?

18           **MR. O'BRIEN:**  Not from the Government, Your Honor, at

19   this time.

20           **THE COURT:**  Mr. Thomson.

21           **MR. THOMSON:**  Yes, Your Honor.

22       I really think that I've set everything out in regards to

23   the current status of the case and the status report that we

24   filed on July 3rd to let the Court know where we were at and

25   where we were going.  If the Court has any particular

1    questions, I can answer those.

2        **THE COURT:**  I haven't seen a request for associate

3    counsel yet.  Did one get filed?

4        **MR. THOMSON:**  I emailed Jeffrey Hansen and asked him

5    to make a recommendation based upon the selection that I had

6    made.  I have not heard anything back from that.

7        I also had a conversation with the CJA supervising

8    attorney regarding that matter as well.  So I think it's out

9    of my hands and it is in the FPD's hands which, as I

10   understand it, it then goes to you.

11       **THE COURT:**  Okay.  So I will be on the lookout for

12   that, Mr. Thomson.

13       **MR. THOMSON:**  Yes, Your Honor.

14       **THE COURT:**  Mr. Novak, anything from your side?

15       **MR. NOVAK:**  No, Your Honor.

16       Beyond what we set forth in the status report that we

17   filed last week, there's nothing that Mr. O'Brien said which I

18   think requires a response or additional input from Mr. Justus.

19       At this time we have not been asked to make a presentation

20   to the Capital Case Committee, but we have also not been told

21   that one will not be necessary.  Sorry for the double

22   negatives.

23       So we are in a little bit of a holding pattern but, of

24   course, we will be prepared to comply with the October 1st

25   deadline if that's -- if something is needed from us in the

1    next two and a half months.

2           **THE COURT:**  Okay.

3       It does occur to me that I would like to put into place a

4    schedule in the event that this is not going to be a capital

5    case to get other things moving so that we don't fall behind

6    track.

7       What I did is, I looked at your scheduling statement from

8    Docket 71.  So we can adjust, but everybody is busy and I want

9    to make sure we get on people's calendars.

10      So let's assume for purposes of argument that in the next

11   few months you find out that this is not a capital case, as I

12   set out tentative scheduling notes based upon your

13   suggestions, it seems to me that this case can be tried in

14   November of next year, assuming it's not a capital case.

15      So I'm looking to set a tentative trial date for

16   November 7th, 2022 in the event it is not a capital case.

17      Do you have any conflicts with that date?

18           **MR. O'BRIEN:**  No, Your Honor.

19                 (Pause in the proceedings.)

20           **MR. THOMSON:**  Your Honor, you caught me without that

21   piece of paperwork in front of me.  There's something that

22   tells me I have trial set in late fall of 2022, but I don't

23   have that information in hand.  My calendar only goes through

24   2021.

25           **THE COURT:**  How can you get it, Mr. Thomson?

1          **MR. THOMSON:**  If you can give me one second.

2          **THE COURT:**  I will.

3      Mr. Novak, any conflict?

4          **MR. NOVAK:**  It's a maybe and I can explain, but does

5      the Court want me to wait for Mr. Thomson to walk back through

6      the door?

7          **THE COURT:**  I do.

8          **MR. THOMSON:**  At this time, Your Honor, no, I don't

9      have any conflicts in November 2022.

10         **THE COURT:**  Mr. Novak?

11         **MR. NOVAK:**  Thank you, Your Honor.

12     And I don't know what Ms. Moel's schedule is at that

13     time, but what I do know is that at least on paper, I am

14     presently scheduled to begin a two-defendant quite large

15     racketeering case that has many, many, many counts before

16     Judge Koh in May of 2022.

17     I am appointed as learned counsel.  Our client has not

18     been through the DOJ protocol yet, but the Government's

19     estimate of the trial time, if it were a two-defendant capital

20     case, is one year.  So there's a lot of ifs there, right?  Is

21     it a two-defendant capital case?  Is it a one-defendant

22     capital case?  Is my client --

23         **THE COURT:**  My inclination is to set it for

24     November 7th.  There are a lot of ifs here, too.  We don't

25     know if this is a capital case.

1          **MR. NOVAK:**  Absolutely.

2          **THE COURT:**  Just so we can get it on people's

3    calendar and radar.  I also think that there are things that

4    we can do this fall and then rolling into the new year to

5    begin to get us prepared.

6          So looking at your Docket 71 and giving you, you know, the

7    rest of the summer and part of September to continue to work

8    on your mitigation efforts in the event that you get called to

9    do a presentation, it seems to me that this -- and I'm using

10   your descriptions.

11         So filing any motions for recusal, motions to disqualify,

12   motions for change of venue, I would like to see those filed

13   by October 15th of this year.  I just don't understand why we

14   couldn't have those on file.  They seem to be pretty basic.

15   Or they are not going to get filed.

16         If I'm being recused or you are going to try to disqualify

17   me or something like that, I would like to know now.  There is

18   no reason not to have that resolved.

19         Any problem with the filing deadline?

20         **MR. THOMSON:**  Your Honor, this is James Thomson again

21   on behalf of Sergeant Carrillo.

22         I don't envision filing such a motion, so I'm not saying

23   anything about that.  But I am going to be pretty busy between

24   now and October getting ready for this presentation with DOJ.

25   So I just hesitate in committing to like an October 15th date

1    only because I'm not going to have any time to work on that

2    while I'm doing the DOJ presentation.

3        And, again, that said, I don't envision filing such a

4    motion.  But since it's on the schedule and it was brought up

5    by somebody at some point, I certainly owe it to Sergeant

6    Carrillo in my due diligence to investigate that matter.

7            **THE COURT:**  Mr. Novak?

8            **MR. NOVAK:**  Your Honor, I think that -- I mean, it is

9    an agreed-upon schedule the parties submitted.  I think that

10   the description of this phase was something that initially

11   came from prior --

12           **THE COURT:**  I don't -- you don't set my schedule,

13   Mr. Novak, I set my schedule taking into consideration what

14   you all have suggested.  So --

15           **MR. NOVAK:**  All I wanted to say, Your Honor, is that

16   I think this description of this phase of motions originated

17   with the Government.  I don't think either Mr. Thomson or I

18   anticipated recusal or disqualification motions.  It was

19   something that was in a draft that we received and we worked

20   over, and it seemed premature to be crossing out types of

21   motions.

22       That said, I was not trying to control the Court's

23   schedule.  I was just describing the -- with the long preface,

24   I guess, that I don't see Mr. Justus filing a motion to recuse

25   or disqualify this Court either.

1          **THE COURT:**  So I'll put November 5th.  And if it

2   passes, then it passes and we are done.  Okay?

3          **MR. THOMSON:**  That's fine, Your Honor.

4          **THE COURT:**  The next one were motions for severance,

5   bills of particular, or discovery of jury composition records,

6   any motions under Rule 8, 12(b)(3), except for 12(b)(3)(C) and

7   12(b)(3)(E).

8      I was thinking for those, again, I mean, if -- I don't

9   know why you lumped them together the way you did, but it

10  seems to me we should -- we certainly want to know at some

11  point whether these need to be severed.

12     I don't know if November is too early for severance, but

13  clearly discovery or bills of particular, if you want to file

14  those motions, you should file them, it seems to me, in

15  November so we can response -- you know, the Court can rule on

16  it and we can have, you know, all of that laid out.

17     With respect to jury composition records, that, you know,

18  takes time, too, so it seems to me that trying to get these

19  motions filed sometime in November would be appropriate.

20     Comments?

21                  (Pause in the proceedings.)

22          **MR. NOVAK:**  Jim, I think your microphone is off.

23          **THE COURT:**  I would include in that, Mr. Thomson, the

24  motions to compel discovery.  At this point, after you have

25  the evidence review, it seems to me you've already said you

1    think you have everything.  So if we don't have something,

2    then I would like -- and you can't agree, I would like those

3    motions to get filed.

4            MR. THOMSON:  I understand, Your Honor.  I think that

5    if you are going to combine those motions especially, that I

6    would ask that you give us until even middle, towards the end

7    of December to file those two sets of motions.

8            THE COURT:  I can keep them separate.

9            MR. THOMSON:  Then I would ask the filing of motion

10    for -- the first group, severance, bill of particulars, and

11    stuff, I would ask until the end of November.  And then the

12    motions for discovery I would ask to the end of December.

13            MR. NOVAK:  Your Honor, my only input, if I may, on

14    that is that a motion to sever is partially going to be

15    impacted by the Attorney General's decision.  So if this is a

16    schedule that assumes that neither defendant is authorized but

17    we don't know yet by the date that the Court is anticipating,

18    then I think you could possibly end up with -- the Court could

19    end up with a couple of different rounds of severance motions

20    which seems inefficient.

21            THE COURT:  Let's take out -- let's take out the

22    severance because I think that that is a separate -- it has

23    separate issues attached to it.

24            MR. NOVAK:  Agreed.

25            THE COURT:  So if we take out severance --

1    Mr. Thomson, I'm going to say November 19th to force you not

2    to work over Thanksgiving.

3         MR. THOMSON:  Your Honor, the Court is going to set

4    the schedule and I'm going to abide by the Court's schedule,

5    but I'm probably going to work over Thanksgiving anyway in

6    some other matter.

7         THE COURT:  We all do, but you are not going to work

8    on my deadline.

9         MR. THOMSON:  I understand.

10        THE COURT:  And then when we are done with this, I

11   want you all to meet and confer in terms of responsive dates

12   or, you know -- or you can do it maybe -- if you don't file

13   anything, then there is nothing to respond to.

14        But Mr. O'Brien should be able to have Thanksgiving as

15   well, right?  One of the reasons why we are doing this early

16   is so that we don't get jammed and we have plenty of time so

17   that we can have decent briefing and then we can have a

18   hearing, and then I have enough time to get you answers.

19        MR. THOMSON:  I understand, Your Honor.  I completely

20   understand.

21        But I'm delayed a little bit in this process as opposed to

22   Mr. Justus' counsel.  I'm going to be working straight through

23   to get the DOJ presentation done by October 1.  I am not going

24   to be looking at the evidence now while it is being scheduled

25   with Mr. Justus and the Government.

1    So once I finish that October 1, I'm going to have to look

2    at the evidence.  I'm going to have to look at the other

3    issues that are present.  So I'm only asking for November 30th

4    to file the motions so that I can have time to do all of that

5    beforehand.

6         **THE COURT:**  All right.  November 24th.  That's all

7    I'll give you.

8         **MR. THOMSON:**  Fine, Your Honor.  That does not

9    include motions for severance, correct?

10        **THE COURT:**  Correct.

11    Motions to compel discovery, we'll say December 20th

12    unless you want to move that into January.  We can move that

13    into January.

14        **MR. THOMSON:**  I prefer that, Your Honor.

15        **THE COURT:**  January 21st.

16    The Government expert disclosures....

17              (Pause in the proceedings.)

18    ... You had motions to suppress before the disclosures.

19    You want to keep it that way in terms of scheduling?

20        **MR. THOMSON:**  Your Honor, I think the motions to

21    suppress were Fourth Amendment motions, perhaps Fifth

22    Amendment motions, not motions with respect to exclusion of

23    expert testimony after a *Daubert* hearing, or anything like

24    that.  I would -- if -- this was a joint stipulation.  If it

25    were my choice, I would like to have expert disclosures made

```
 1    now.
 2              THE COURT:  Well, Mr. O'Brien, do you know what
 3    experts you are going to be calling?
 4              MR. O'BRIEN:  At this point, Your Honor, I wouldn't
 5    be able to provide a list of that to the Court.  I think it
 6    does make sense, I think, to tie it with some degree of
 7    closeness to a trial date.  I think that's often the practice
 8    here where we know that there is a trial date happening and
 9    the experts are disclosed and we can deal with those knowing
10    that we are going to need them.
11        So having them in -- if there is a November 2022 trial
12    date, having them in the early spring of 2022, I think, would
13    still make sense under the schedule, about seven months out.
14    So that would be the Government's position on the expert
15    disclosure issue.
16              THE COURT:  Expert disclosures by February 4th.
17    Filing of motions to suppress -- why do you want those motions
18    before the disclosures, Mr. Novak?
19              MR. NOVAK:  I think that maybe we see them as
20    conceptually different.  There's Fourth Amendment and Fifth
21    Amendment suppression issues because there were many searches
22    executed --
23              THE COURT:  Why are you -- is there a connection
24    period?
25              MR. NOVAK:  Between the motions to suppress and
```

1    expert issues?

2              **THE COURT:**  Yes.

3              **MR. NOVAK:**  No.  I don't believe there is any

4    connection.

5              **THE COURT:**  That's why I was asking -- I was looking

6    at the link at the timing, but if there is no linkage, then

7    everybody can file those things on February 4th.  So you can

8    file your motions to suppress, the Government can file its

9    disclosures, everybody can file on the 4th.  That's why I was

10   asking the question in case there was some linkage between the

11   two.

12       And then --

13             **MR. THOMSON:**  Excuse me, Your Honor.

14       Question:  That only gives us 14 days after we filed the

15   motions to compel discovery.  To turnaround and file motions

16   to suppress, of which there are a number of search warrants, I

17   don't remember the exact count, but it is well above 10.

18   There is a lot of work to do with respect to those motions to

19   suppress.

20       So I would ask if the Court is going to have the motions

21   to suppress that we be allowed to file those early March.

22             **THE COURT:**  All right.  March 5th.

23       Again, I'm hopeful you don't have to file motions to

24   compel discovery.

25             **MR. THOMSON:**  Yes.  I think we are all hopeful we

1      don't have to file as many motions as we might.

2          If we do, that's a lot of work to do, and I want to make

3      sure that the Court has appropriate briefing on these issues.

4              **THE COURT:**  Okay.  The 404(b) evidence, April 4th.

5      404(b) evidence, in and of itself, that always generates

6      litigation.  So I don't want that happening too late in the

7      process.  So April 4th for disclosures.

8          Two weeks after that -- so two weeks after that is the way

9      you did this, so *Jencks* disclosures, April 18th.  Filing of

10     *Dauberts*, May 2nd, which would be three months after the

11     disclosure by the Government.

12             **MR. THOMSON:**  What is the date again on that, Your

13     Honor, May 2nd?

14             **THE COURT:**  May 2nd.

15         If someone -- who has the working document for this Docket

16     71?  Is that you, Mr. O'Brien?

17             **MR. O'BRIEN:**  Yes, I believe we have the work copy of

18     it.

19             **THE COURT:**  Can you send me the Word copy so that I

20     can turnaround and order more quickly, and don't have to

21     retype all of this?

22             **MR. O'BRIEN:**  Yes, Your Honor.

23             **THE COURT:**  We'll get an order, Mr. Thomson, out in

24     writing with all these dates.

25             **MR. THOMSON:**  I appreciate that, Your Honor.  I would

1    like to take notes at the same time.

2              **THE COURT:**  Okay.

3         And then with respect to your next bucket, I'm thinking

4    June 20th with defense reciprocal July 5th, exchange of

5    motions July 25th, oppositions August 8th, a filing of

6    Government *Dauberts* and any motions not resolved by April 15th

7    [sic].

8              **MR. THOMSON:**  April 15th, Your Honor?

9              **THE COURT:**  April 15th -- I'm sorry, August 15th.

10   Sorry.

11        And then the filing of your joint pretrial statement

12   September 12th, with your first pretrial conference

13   September 28th.

14        Now, the one change is two items down.  Your filing of

15   jury questionnaires.  That needs to happen on the 12th as

16   well.  And that is because we will -- we need a lot of lead

17   time for the jury questionnaires to go out.  So I need that on

18   the 12th so we can talk about it on the 28th and then I can

19   get it to the jury office so it can be processed and

20   disseminated.

21        The rest of your issues, the jury instructions, et cetera,

22   that -- what I was thinking is your first pretrial conference

23   on September 28th, and then a final pretrial conference on

24   October 14th.

25        Frankly, I would like -- I prefer to have all that jury

1    material in advance, but, you know, for some reason you all

2    segregated it.  So if you think you need more time, I can give

3    you more time.

4        But jury instructions are pretty important.  If there are

5    legal issues, I would like to have the time to deal with the

6    legal issues.

7            **MR. THOMSON:**  As I understand it, Your Honor, you

8    have that date right now as September 12th or did you change

9    it to the 28th?

10           **THE COURT:**  My preference is to have everything by

11   the 12th.

12           **MR. THOMSON:**  But if we need more time, you would

13   allow us until the 28th for the filing of joint proposed jury

14   instructions?

15           **THE COURT:**  So the 28th would be our first pretrial

16   conference.  If you need more time, I mean, I'm relatively

17   flexible.  With the second pretrial conference on

18   October 14th.

19           **MR. THOMSON:**  Yes.

20           **THE COURT:**  So I'll put that in the order.  I would

21   like it all on the front end.  If you need more time, just ask

22   me for it.

23           **MR. THOMSON:**  Can we ask that at the time we file the

24   joint pretrial conference statement on September 12th or do

25   you want us to ask it before that so that you are not

1    surprised when you don't get it on the 12th when you would

2    really like it?

3          THE COURT:  We have hundred of cases, Mr. Thomson.

4    I'm going to -- you know, the thing that I like about the

5    criminal bar is that you are all professionals.  And you don't

6    fight like the civil lawyers do.

7       So I'm going to ask that you do it.  If you need more

8    time, when you realize you need more time, just ask me for it.

9          MR. THOMSON:  That's fine, Your Honor.

10         THE COURT:  Okay.

11      So four weeks before trial, for the Attorneys' Eyes only,

12   that would be October 10th.  I know pretrial conference on

13   October 14th, we'll start our jury selection November 7th.

14      With respect to jury selection, though, you should know my

15   plan is to provide you with jury questionnaires beginning the

16   week of October 24th.  You will be required to review them, to

17   meet and confer, and to try to agree based on the

18   questionnaires alone to suggest to the Court that people

19   should be excused so that jury selection is efficient.

20      We did this in the Nuestra Familia case that I tried and

21   it worked very well.  So, that would be the request.  We will

22   be meeting, so we can talk about that more later.

23      Okay.  With respect to the motions for severance, what I

24   would recommend is -- I do think, now that you have a

25   schedule, and we can talk about if you want to adjust any of

1    these dates if you didn't jump in and otherwise ask, is that

2    we not meet again until November.  I am not sure there is

3    anything to do before October.

4        It was recommended by Mr. Novak in his statement.  I know,

5    Mr. Thomson, you were suggesting something earlier, but I'm

6    not sure what else I can do in the interim.

7        And then at our next meeting perhaps we will have more

8    information about the Government's decision, and at that time

9    we can decide when it would be appropriate to have motions for

10   severance scheduled.

11       Thoughts?

12       **MR. O'BRIEN:**  Your Honor, that's fine from the

13   Government's perspective.  I would just note what I said

14   earlier, that I think November makes sense and that it is more

15   likely we will have more information to report, but I don't

16   control the timing of when things move through committee to

17   next levels of review on the death penalty protocol.

18       **THE COURT:**  Mr. Thomson, Mr. Novak, any other

19   thoughts?

20       **MR. THOMSON:**  No, Your Honor.  It's just that that

21   decision is really key to all of this.  I mean, the Court has

22   a schedule now as if it is not going to be a death case.

23   That's great.  If that's the case, then I understand the

24   schedule.  But if we don't come back until November, and they

25   don't have a decision by November on whether it's a capital

1    case as to Mr. -- Sergeant Carrillo or as to Mr. Justus, we

2    have motions due on the 24th, bills of particulars, et cetera.

3        Whereas we should be investigating penalty stuff and doing

4    guilt-phase investigation and trying to get the case moving

5    forward in that sense, whereas we are going to be -- the two

6    are going to clash if we don't have that recommendation by

7    then.

8        So if that recommendation doesn't spill over until -- or

9    doesn't get decided until January or February or March of next

10   year, we are going to have these two competing trains going at

11   each other.  I am not doing anything other than voicing what

12   must be the obvious, right, which is that's going to be a

13   little difficult to manage.

14       I'm glad to wait until November and hope that they provide

15   us notice by that time, but I just -- I worry about the

16   recommendation not getting back that quickly and us all of a

17   sudden doing all of this work as if it's a simple guilt-phased

18   trial which is delaying us to do the kind of preparation work

19   that we would need to do if it's a capital case.

20       And they make a big difference even in terms of the amount

21   of guilt-phase investigation that you do compared to -- in a

22   capital case compared to what you might do in a non-capital

23   case because the guilt-phase evidence is only going to be used

24   for determination of guilt; whereas the guilt-phase evidence

25   if it's a capital case is going to be used by the jury in

1   making its determination as to penalty.

2       So they really are two different types of cases and they

3   are two different sets of work.  So I'm just voicing what I

4   may later advise the Court of, that the clash is too much for

5   me to, I think, adequately represent Mr. -- Sergeant Carrillo

6   at some point in time.  That said, I will come back in

7   November.

8           **THE COURT:**  Mr. Novak?

9           **MR. NOVAK:**  I'm sensitive to and I tend to agree with

10  everything Mr. Thomson is saying.  I think based on my

11  experience with the capital case process, which I would say is

12  considerable, but I think Mr. Thomson has more, the odds that

13  Mr. Thomson's presentation to the committee in early October

14  will result in a decision by November is very small in my

15  experience.  If Mr. Thomson sees it differently, I don't mean

16  to speak for him.

17      But it takes a few months for the committee to deliberate

18  and pass its recommendation to the Associate Attorney General

19  who then deliberates and makes a recommendation to the

20  Attorney General.

21      So I'm also concerned that we may not have a decision by

22  the end of the calendar year.

23          **THE COURT:**  Okay.  Well, I'll think about it, but it

24  seemed to me that -- at least we have to have some plan.

25          **MR. THOMSON:**  I understand, Your Honor.

1              **THE COURT:**  Here's a plan.

2              **MR. THOMSON:**  Right.

3              **THE COURT:**  And you know --

4              **MR. O'BRIEN:**  Your Honor, one suggestion may be that

5    some of these earlier dates, particularly for motions that

6    don't appear to be ones that the defense are contemplating

7    right now, we could have some dates for those and have this

8    tentative plan where we come back -- maybe we come back in

9    late October or early November and we assess whether there is

10   more information that would allow us to put this schedule that

11   the Court just outlined actually in place where everyone will

12   be held to those deadlines.

13       It may also be -- it may be a point the Government has an

14   update where it is at least another level above the Capital

15   Review Committee or that there is no update.  So we may

16   have -- that may be an alternative where we have some dates in

17   place.  The earliest dates are ones that the defense has said

18   they are not currently contemplating, but they are ones that

19   could be still put in place and then we would have some

20   structure.

21       But if the Court wants to enter this order as well, I

22   think, like I said, I can't control when the process is

23   decided from here, but I will keep defense counsel and the

24   Court updated as I can consistent with the Justice Manual's

25   confidentiality.

26

1    **THE COURT:**  What I wanted to do in part was put

2    something in place that made sense for a date-specific trial

3    and gave me enough time, you know, to address motion work

4    before a trial date.

5        So, for instance, in November, if we decide that it just

6    doesn't make sense, then we push -- we can push everything

7    back by four months, let's say, and then the whole schedule

8    moves four months.  But at least we have something -- some

9    operating parameters for getting the case to trial.  That's

10   what I am trying to do.

11   **MR. THOMSON:**  I understand completely, Your Honor.  I

12   do.  And I hope the Court appreciates the fact that when, for

13   example, when the Department of Justice contacted us and said

14   we would like to make a presentation, we were able to keep the

15   same deadline making the DOJ presentation that we had

16   originally set for making the local presentation.  So there

17   was no extra delay.  In fact, there was no delay at all.  We

18   actually advanced that by maybe as much as six months in time.

19       So I think that the parties are moving forward and we have

20   been informally meeting and conferring on discovery issues and

21   other matters.  So I appreciate the comment -- the Court's

22   comments earlier that you like working with the criminal bar

23   because we are professional and I think that we will continue

24   to maintain that.

25       I'm just trying to put up a little bit of a yellow or red

1    flag, especially since I didn't know that we might be

2    scheduling a guilt-phase trial beginning in November of 2022

3    before we began today.

4        So I am kind of putting my hand up saying, whoa, whoa,

5    whoa.  Maybe it may have to be adjusted later.  I understand

6    what the Court is trying to do and I am going to follow the

7    Court's order.

8            **MR. NOVAK:**  May I make a suggestion?  I apologize for

9    the echo.  I'm not sure if it's only in my headphones.

10       Your Honor, just by way of example, the first round of

11   motions includes a motion for change of venue.

12       This is a case where the conduct impacted the courthouse

13   where Your Honor sits.  In other words, the death of Officer

14   Underwood occurred while he was guarding this courthouse.  I'm

15   not trying to pre-litigate the venue issue at all, but I think

16   if this is a capital case as to one or the other defendants,

17   then the issue of venue also takes on also the veneer of the

18   Eighth Amendment requirement for heightened reliability, and

19   the Court would probably want to be very cautious about how --

20   having jurors walk by what I will call the crime scene every

21   day on the way in and out of the courthouse, could be

22   significant.

23           **THE COURT:**  Mr. Novak, you know, on that topic, we

24   can easily try this case in San Francisco.

25           **MR. NOVAK:**  Okay.

28

1          **THE COURT:**  We sometimes use the San Francisco

2     courthouse even with an Oakland-venued case because there

3     could be a variety of reasons why it would make more sense.

4          We've got a secured courtroom in San Francisco.  I mean,

5     there's lots of reasons.  So, you know, I am not opposed to

6     just trying the case in San Francisco.

7          **MR. NOVAK:**  So that may -- I'm not speaking for the

8     Government and I'm not speaking for Mr. Thomson and

9     Mr. Carrillo's defense team, I guess what I -- maybe it was a

10    long-winded way of saying maybe, given the best-case scenario

11    in a decision from DOJ, maybe the schedule that the Court

12    outlined today we should actually just kick it out a few

13    months with the structure in place.

14         I understand that the Court wants to try this case long

15    before the August of 2023 date that was set if it's a capital

16    case, and I agree with that that it doesn't need to be pending

17    that long, but it does seem to me that Mr. Thomson's concern

18    about hypothetically getting a notice of intent, and then

19    immediately focusing on these issues may be, from a defense

20    attorney's perspective, a little bit backwards.

21         I think that's what Mr. Thomson was saying.  So I don't

22    know what the answer is with the hypothetical, but it may be

23    just starting the litigation before we hear from DOJ is --

24         **THE COURT:**  I guess I'm not willing to do that

25    because DOJ can take forever.  They can take forever.  And at

1    a certain point if they don't move, then the answer is, too,

2    bad, you're too late.

3         **MR. NOVAK:**  That's true.

4         **THE COURT:**  That's the other answer.  And this Court,

5    I mean, generally speaking, judges in this district have done

6    that.  If they are taking too long, then the answer is no.

7         So, you know, we are already -- I mean, it's -- it was a

8    difficult year.  Everything was slowed because of the

9    pandemic.  But I think that, you know, memories fade.  And if

10   this thing is going to get tried, it needs to be tried.  If

11   it's not, then that's fine, too.  But we have to have a path

12   to the courthouse.

13        And your point on the location, I understand that.  You

14   want me to try it in San Francisco, I will try it in San

15   Francisco.  It's just a bridge.

16        Other concerns?

17        **MR. THOMSON:**  Nothing from me, Your Honor.

18        **MR. O'BRIEN:**  Nothing from the Government, Your

19   Honor, other than I did want to note the Speedy Trial Act

20   issue that I just wanted to raise on the record when we are

21   concluded with this discussion.

22        **THE COURT:**  Okay.  I did not hear what you said, but

23   I think we have concluded this discussion.

24        **MR. O'BRIEN:**  Okay.  Sorry about that.  I was just

25   noting that there was a Speedy Trial Act exclusion issue that

1   I wanted to note on the record.  As I was preparing for the

2   status conference, I noticed in the minutes that from the

3   April 19th status conference, that there was a note about

4   there had already been an exclusion of time through

5   August 19th, 2021 in this case.  And I think that may be

6   incorrect.

7       I think there was an exclusion of time through

8   August 19th, 2020 as far as I could tell, and I believe at the

9   last status conference on the record the parties agreed to

10  stipulate to exclude time under the Speedy Trial Act for both

11  complexity and effective preparation.  There was no

12  stipulation filed to that effect, so I didn't see that.

13      All I would note today is that the parties did agree to

14  exclude time under the Speedy Trial Act through today's date

15  and we would agree to exclude time through the next status

16  conference for effective preparation and complexity.  And the

17  cleanest way to do that for the record may be just have a

18  stipulation and proposed order we would file for the Court

19  after today's appearance.

20          THE COURT:  Is that your memory as well, Mr. Thomson,

21  Mr. Novak?  I thought we had done this in writing, that it was

22  a complex case and that time had been excluded.

23          MR. THOMSON:  I recall it being deemed a complex

24  case.  I think I was the one that requested that or maybe it

25  was a joint declaration.  I am willing to exclude time through

1    the August 2023 trial date.  I don't know if the Court needs

2    to have it every status conference.  But it is complex.  It's

3    not going to get less complex.  And I am willing to do that

4    and you can make an order that we don't have to do this each

5    time.

6              **THE COURT:**  Mr. Novak?

7              **MR. NOVAK:**  I don't have an independent recollection,

8    Your Honor.  I would be happy to check the docket and the

9    minutes, but I really don't want to pretend that I remember.

10             **THE COURT:**  Let's get it in writing, please.  I

11   thought that it was, but this is a complex case as this

12   discussion over the last hour has indicated.  So I deem it to

13   be complex.

14      So Mr. Thomson is willing to exclude time until

15   August 2023.  Mr. Novak, how far are you willing to exclude

16   time?

17             **MR. NOVAK:**  I don't see any reason to -- need for us

18   to remember to do this each time we have a status conference.

19   So I think that that's a wise and simple course.

20      So the date that the Court originally set this trial, if

21   it's a capital trial, I think is a fine end date for

22   excludable time.

23             **THE COURT:**  Mr. O'Brien?

24             **MR. O'BRIEN:**  That's fine from the Government's

25   perspective, Your Honor.  I believe that date was August 7th,

```
1    2023.

2              THE COURT:  I'll exclude time until August 7th, 2023.

3    I still would prefer, Mr. O'Brien, if you circulate a

4    stipulation to the defense counsel, and let's get that on

5    file.

6              MR. O'BRIEN:  Yes, Your Honor.

7              THE COURT:  In terms of a status conference,

8    Mr. Thomson is your -- is the indication from you to be ready

9    at the beginning of October or at the end of October?  I guess

10   I was assuming the beginning of October.

11        MR. THOMSON:  No, I won't make the presentation by

12   October 1st.

13        MR. NOVAK:  I believe that the committee actually

14   meets on Monday, October 4th because I have a presentation in

15   another matter before the committee on that Monday.

16        MR. THOMSON:  Your Honor, I just meant that I would

17   have all the paperwork in, and I will have made the

18   presentation by October 1st.  So that may be the 27th, or

19   earlier, if possible.

20             THE COURT:  Okay.  So, let me just count.  Today is

21   the 12th.

22                  (Pause in the proceedings.)

23       Next time that I think I might have classroom C, again, we

24   don't know if we are going to keep it, but for now let's

25   assume that we will have it.  October 25th.
```

1      Does that work?

2              **MR. THOMSON:**  What time, Your Honor?

3              **THE COURT:**  Same time, 2:30.

4              **MR. THOMSON:**  It's fine by me.

5              **MR. NOVAK:**  My schedule is clear on that day, Your

6      Honor.

7              **MR. O'BRIEN:**  That works for the Government as well,

8      Your Honor.

9              **THE COURT:**  Okay.

10     So let's -- Ms. Stone, we will open up a criminal

11     calendar, assuming classroom C -- if for some reason I find

12     out that I am not going to have it, then we will be in touch

13     with everybody who is on that calendar date.

14     All right?  But October 25th, classroom C, 2:30.  And

15     we'll talk about whether or not everything gets readjusted

16     then.  Okay?

17             **MR. NOVAK:**  Very well.

18             **MR. THOMSON:**  Thank you, Your Honor.

19             **THE COURT:**  All right.  Everybody stay safe.

20             **MR. NOVAK:**  You, too.

21             **THE COURT:**  We are adjourned on this case.  Thank

22     you.

23             **MR. O'BRIEN:**  Thank you, Your Honor.

24                     (Proceedings concluded at 3:27 p.m.)

25

## CERTIFICATE OF REPORTER

I, Diane E. Skillman, hereby certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DIANE E. SKILLMAN, CSR 4909, RPR, FCRR

Wednesday, September 1, 2021

**DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC**