**Pages 1 - 33**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Yvonne Gonzalez Rogers, Judge

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | **NO. CR 20-00265-YGR** |
| | ) | |
| STEVEN CARRILLO AND ROBERT | ) | |
| ALVIN JUSTUS, JR., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Oakland, California
Monday, November 1, 2021

<u>**TRANSCRIPT OF PROCEEDINGS**</u>

<u>**APPEARANCES:**</u>

For Plaintiff:
                    OFFICE OF THE UNITED STATES ATTORNEY
                    450 Golden Gate Avenue
                    San Francisco, CA  94102
          **BY:  PATRICK K. O'BRIEN**
               **ASSISTANT UNITED STATES ATTORNEY**

For Defendant Steven Carrillo:
                    LAW OFFICES OF JAMES S. THOMSON
                    732 Addison Street, Suite A
                    Berkeley, CA 94710
          **BY:  JAMES S. THOMSON, ESQUIRE**


Reported By:  Pamela Batalo-Hebel, CSR No. 3953, RMR, FCRR
              Official Reporter

**APPEARANCES CONTINUED:**

For Defendant Robert Alvin Justus, Jr.:

                             RICHARD G. NOVAK, APLC
                             P.O. Box 5549
                             Berkeley, CA 94705
           **BY:  RICHARD G. NOVAK, ESQUIRE**

                             MOEEL LAH FAKHOURY LLP
                             1300 Clay St., Suite 600
                             Oakland, CA 94612
           **BY:  SHAFFY MOEEL, ESQUIRE**

<u>**Monday - November 1, 2021**</u>                    **2:28 p.m.**

**P R O C E E D I N G S**

**---oOo---**

    **THE CLERK:**  Calling Criminal Action 20-0265, United States vs. Steven Carrillo and Robert Alvin Justus.

    Counsel, please state your appearances.

    **MR. O'BRIEN:**  Good afternoon, Your Honor.  Patrick O'Brien for the United States.

    **THE COURT:**  Good afternoon.

    **MR. THOMSON:**  James Thomson on behalf of Steven Carrillo, whose appearance has been waived, Your Honor.

    **THE COURT:**  Good afternoon.

    **MR. NOVAK:**  Good afternoon, Your Honor.  Richard Novak and Shaffy Moeel for Mr. Justus.  He is appearing through the Zoom system from the Santa Rita Jail with his consent.

    **THE COURT:**  Thank you.  Good afternoon.

    Mr. Justus, can you hear us okay?

    **THE DEFENDANT:**  Yes.

    **THE COURT:**  All right.  If at any point during these proceedings something happens and you can't hear, just wave your arms or something so we can fix the technical difficulties.

    We are still in the COVID-19 pandemic era.  We still are operating under General Orders 74 and 78 and continue to do the criminal status conferences using the Zoom platform with the

1    cooperation of Santa Rita Jail.

2        All right.  A number of things to do today, but I'd like

3    to start with a status.

4        Mr. Thomson, perhaps you have the most relevant status at

5    this point.  Did your meeting with Main Justice go forward?

6    Can you tell me?

7        **MR. THOMSON:**  Yes, Your Honor.  We met with the

8    Department of Justice Capital Review Committee and Capital Case

9    Section and made our presentation, and the matter has now been

10   submitted, I think is probably the best term, to them.

11   Mr. O'Brien might have an update with respect to the committee,

12   but the written presentation and the personal in-person -- not

13   in-person -- the Zoom or telephonic presentation was made in

14   October.

15       **THE COURT:**  And after that's done, Mr. Thomson, what

16   is your expectation in terms of decision?  Did they give you

17   any sense, or based on experience, do you have any sense?

18       **MR. THOMSON:**  They did not make any mention at all

19   about the amount of time that it could would.  I did speak with

20   Mr. O'Brien this morning, and I think he might provide some

21   information with respect to the committee itself.

22       But I do know that right now, there are approximately 50

23   to 60 cases that are pending in front of either the Office of

24   the Deputy Attorney General or the Office of the Attorney

25   General for decision who have made it through the Capital

1  Review Committee and the Capital Case Section analysis.  I

2  think that there are approximately 20 cases that are pending in

3  front of the Capital Review Committee itself.

4      It's one of those matters where nobody knows the internal

5  workings of the committee or the ODAG or the OAG, so it's

6  really kind of a little bit of guesswork as to how soon it

7  could come.  I certainly would not anticipate anything

8  happening sooner than January or February of next year.  It

9  could be much longer than that.  At the same time, if they did

10  something in the next month, I wouldn't say I was shocked by

11  it.

12          **THE COURT:**  Okay.

13      Mr. O'Brien.

14      **MR. O'BRIEN:**  Your Honor, I spoke with Defense counsel

15  for each defendant this morning.  I learned from the Capital

16  Review Committee that the case has been sent -- or it will be

17  sent soon from the committee to the Office of the Deputy

18  Attorney General, and it has been reviewed by the Capital

19  Review Committee.  So I don't have any estimate of how long it

20  will take once it reaches the Deputy Attorney General's level

21  or the Attorney General's level, but it will proceed shortly

22  from the committee level to the ODAG level.

23          **THE COURT:**  And have they issued any decisions

24  whatsoever?

25          **MR. O'BRIEN:**  I'm sorry, Your Honor.  In any case

1  or --

2          **THE COURT:**  In any case.

3          **MR. O'BRIEN:**  I'm personally aware of decisions from

4  the Attorney General directing U.S. Attorney's Offices not to

5  seek the death penalty.  There is a case actually with

6  Mr. Thomson, Mr. Novak, and Ms. Moeel where that was decided in

7  August of 2021.

8          **THE COURT:**  And how long did it take to get that

9  decision and was there a presentation?

10          **MR. O'BRIEN:**  There was not -- there was not a

11  presentation to the committee in that case, Your Honor.  It was

12  a several-month process from beginning to end.

13          **THE COURT:**  Can someone give me more clarity on that

14  particular one just as a data point?

15          **MR. O'BRIEN:**  So, Your Honor, there was no local

16  presentation or a committee presentation in that case.  I do

17  not have the date at which it was submitted -- I believe it was

18  in April of 2021 -- from our office to the committee level, and

19  it was decided in roughly mid August.  It was a gang murder

20  case with three murders at issue and three defendants.

21          **MR. THOMSON:**  As to the more general concept of has

22  the committee and the ODAG and OAG made decisions, so far in

23  President Biden's administration, there have been 17 no-seeks

24  that have been issued.  I do not know when any of the

25  presentations were made or if presentations were made and what

1    the time lag was between making a presentation and there being

2    a decision.  I just don't have any of that information, but I

3    do know that the number is 17.

4              **THE COURT:**  Mr. Novak.

5              **MR. NOVAK:**  I can add a couple observations from my

6    own experience in other districts, Your Honor, but I think the

7    bottom line is -- and I'm not suggesting that the Court views

8    it this way, but it's not an assembly line.  It's not first in,

9    first out; last in, last out.

10         I'm involved in a case where we were not asked to make a

11   local presentation over a year ago.  Different case, different

12   district.  No local presentation, which means it proceeded to

13   Washington, D.C., as an expedited recommendation not to seek

14   the death penalty, and we still haven't heard from the Attorney

15   General.

16         I've been involved in other cases where there were much

17   more complicated issues, arguably more culpable defendants with

18   more potential capital charges where there are decisions made

19   more quickly.

20         So unfortunately for everybody, there's no rhyme and no

21   reason to which case an attorney -- the Attorney General

22   decides in what order.  I know that's not helpful at all.

23              **THE COURT:**  All right.

24         Ms. Moeel, do you want to weigh in?

25              **MS. MOEEL:**  No, Your Honor.  I would defer to the

1  experiences of Mr. Novak and Mr. Thomson.

2          **THE COURT:**  You indicated, Mr. Thomson, 17 no-seeks.

3  Has there been any authorization for the death penalty?

4          **MR. THOMSON:**  Not that I'm aware of, Your Honor.

5          **THE COURT:**  Are you aware of any, Mr. Novak?

6          **MR. NOVAK:**  I would be a little bit more definitive.

7      It is my understanding from the data that there have been

8  no authorizations to seek the death penalty by the current

9  Attorney General.

10          **THE COURT:**  Okay.  Well, I'm not exactly sure where

11  that leaves us, but that's helpful.

12      All right.  After issuing the trial order back in July, I

13  did get a request from Mr. Thomson to review that order.

14  Before we get there, there is a deadline coming up that I don't

15  think is going to be all that controversial and that I'm not

16  inclined to move.  So this is the first deadline for

17  November 5th, motions to disqualify or change venue.

18      In terms of -- and I indicated this last time.  I am

19  trying this case and -- or if there is no resolution, my plan

20  would be to try it in San Francisco given that the events at

21  issue happened here at the Oakland courthouse.

22      Rule 18 talks about the place of prosecution and trial,

23  but it focuses on districts, not courthouses within a district,

24  so San Francisco is the same district as Oakland, as is

25  San Jose.

1    And Rule 21, transfer for trial, again that talks about

2  districts specifically.  I am not inclined to change the

3  district.

4    Our Rule 18-2, an inner-district transfer, seems to

5  provide me with sufficient authority to change the location of

6  the courthouse.  I do not plan on changing the judge, and 18-2

7  contemplates something -- a case which has -- which was not

8  properly assigned under sub -- 18-1, sub A, B, C, or D, but I

9  still think that in the interests of justice and the prompt

10  administration of justice and the proper administration of

11  justice, that the courthouse should be one other than Oakland,

12  and I don't intend to drive all the way down to San Jose every

13  day, so my thought was San Francisco.

14    I can put that in an order today.  If there are any

15  objections, then I'd like to know.

16    Mr. O'Brien?

17    **MR. O'BRIEN:**  Your Honor, the Government would defer

18  to the Court on this issue.  We wouldn't object to the Court

19  ordering that the trial take place in San Francisco.

20    **THE COURT:**  Mr. Novak, I think you're the one that

21  raised this most recently in your Status Conference Statement.

22    **MR. NOVAK:**  That's fine, Your Honor.  We have no

23  objection to that order, and we think it's appropriate.

24    **THE COURT:**  Mr. Thomson?

25    **MR. THOMSON:**  Your Honor, I have no objection, but I

1    would just ask that if the Court issues such an order, that

2    there would be an allowance for there to be change back to

3    Oakland if I were to determine or Mr. Carrillo's defense team

4    were to determine that they wanted to have the case tried in

5    Oakland.

6        I don't envision that, but I don't know, and I just don't

7    want to be cut off without having the chance to talk to

8    individuals with respect to venue and jury selection and other

9    issues.

10       **THE COURT:**  Well, Mr. Thomson, that's why we have

11   deadlines, so the deadline is Friday.  If you want to make a

12   motion that it stay here, you can make that motion, but part of

13   this is to get -- beginning to get some certainty around trial.

14       **MR. THOMSON:**  I understand, Your Honor.

15       **THE COURT:**  I'm not inclined to make an order and say

16   yeah, but this is up in the air.

17       **MR. THOMSON:**  I don't think the order would be up in

18   the air.  All I'm asking for is the opportunity if I made a

19   decision or determination later on that it would best serve

20   Mr. Carrillo to have the trial in Oakland, that the Court would

21   be open to it because I think I expressed in my Status

22   Conference Statement, I have not had the opportunity to make a

23   determination with respect to venue between the two

24   courthouses, Oakland and San Francisco.  I just have not.

25       I have spent all of the time that I have spent on this

case working up the written submission, which was quite

lengthy, with numbers of exhibits and making the oral

presentation.

I'm not the person that can make that decision.  I would

have to consult with others to make it, and I'm not objecting

to the Court issuing the order.  I'm just asking that the Court

allow there for -- you know, the opportunity at some point in

time that if I were to decide otherwise, that I'd be allowed to

make that request.  I'm not suggesting that the Court would

then do it because I asked for it, but --

**THE COURT:**  Mr. Thomson, there is always a motion for

reconsideration.  There's a process, there's a rule, there's a

metric, including delay.  So you can bring a motion for

reconsideration under the rules, and if you -- if there's a

basis for reconsideration, then I can reconsider, but that

would be the process.

**MR. THOMSON:**  I understand.  I don't know whether

there's a time limit for the filing of a motion for

reconsideration or whether that's, you know, controlled by new

evidence.

**THE COURT:**  You would have to justify the delay.

**MR. THOMSON:**  That's fine.  As long as it's controlled

by good cause in allowing me to present whatever new evidence

that I might have, then that's fine, but if it's a ten-day

rule, it doesn't do me any good.

1      **THE COURT:**  So if there's -- well, if there's new

2   evidence that you didn't have access to -- I mean, if you wait

3   a year to bring the motion and you have no basis for having

4   waited a year, then that impacts the motion for

5   reconsideration.

6      **MR. THOMSON:**  Absolutely.  I understand that.  I just

7   didn't know whether there was a set time period that it had to

8   be filed by.  I just don't know the rule with respect to

9   criminal law and motions for reconsideration.  That's the only

10  thing I'm saying, Your Honor.

11     If the Court issued an order and I had to file a motion

12  for reconsideration in ten days, I wouldn't be able to do that

13  because I wouldn't be able to provide the Court with any more

14  information than I'm providing now, but if it's based upon if I

15  have new evidence -- and I certainly understand not sitting

16  around on my hands and waiting for that to develop -- then I

17  respect that and I understand it.

18     **THE COURT:**  All right.  So with respect to any

19  deadlines with motions, there are those options.

20     Okay.  So that deadline will stick, November 5th, and I'll

21  issue an order, and I don't anticipate getting any motions, but

22  at least there is that deadline out there.

23     Okay.  The next deadline that was on -- let me ask.  If

24  this case went to trial, Mr. Novak, I'm assuming I'd have to

25  try your client separate from Mr. Carrillo; right?

1    **MR. NOVAK:**  I think that there is a very strong

2    likelihood that a joint trial would be filled with significant

3    risks of prejudice to one of the defendants, yes, and I think

4    that we tried to communicate that in a very early public

5    pleading.

6          **THE COURT:**  Right.

7          **MR. NOVAK:**  Yeah.

8          **THE COURT:**  Okay.  You didn't lodge any objection

9    yourself to the November 7th trial date, which was issued when

10   we were all together.

11         **MR. NOVAK:**  Well, I think what we said in our most

12   recent status report is that we would be prepared to discuss it

13   today.  I --

14         **THE COURT:**  What I'm saying is when I issued this

15   order back in July, Ms. Moel wasn't on the platform, but you

16   didn't have any conflict with the November 7th date.  So at a

17   minimum --

18         **MR. NOVAK:**  That's correct.  I did not have a trial

19   scheduling conflict where I'm not available because I'm in

20   another courtroom.

21      I do have concerns about whether the schedule gives

22   Mr. Justus enough time to prepare for trial, but I don't have a

23   conflict where I'm already before another judicial officer

24   starting in November.  That's true.

25         **THE COURT:**  Well, Gentlemen, we aren't going to sit

1   around forever waiting for this trial to take place; right?

2   This event happened in May of last year.  Obviously there were

3   problems with COVID.

4       So have you met and conferred?  What is it that you're

5   asking?

6       And, by the way, part of the reason why we have to get a

7   date is because the two of you or the three of you are very

8   busy defense lawyers, so if I don't get a trial scheduled, I'm

9   out of luck, and I've had this problem before with

10  Mr. Philipsborn and others where you've got federal judges who

11  are all jockeying and trying to negotiate for your time.

12  That's why I'm setting a date.

13      So what are you asking for?  It will not be open-ended.

14      **MR. THOMSON:**  Your Honor, are you addressing this to

15  Mr. Novak or both of us?  Ms. Moeel?

16      **THE COURT:**  All three of you.  I'm assuming that

17  Mr. Novak is talking for Mr. Justus at this point.

18      Go ahead, Mr. Thomson.

19      **MR. THOMSON:**  Well, Your Honor, we do have a trial

20  date, and the trial date is in August of 2023, and that was the

21  trial date that we agreed to at the last hearing -- or the

22  hearing before last.  And we've been working off that date if

23  this case were to go capital.  And at that hearing that we had,

24  it was at the Court's calling of it or mentioning of it or

25  whatever it is, if the case were not to be charged capitally,

1    then we could at that point in time look at calendars and

2    advance the date from that August 2023 date, which I understand

3    and I agree with.

4        What I cannot do is try to come up with a November date

5    next year of a guilt phase case given my schedule and the

6    amount of work that will be necessary to be done.

7        So I appreciate the fact that this occurred last May, but

8    there are a lot of cases in this district, none of which

9    probably are quite as significant in terms of all sorts of

10   issues, that have not gone to trial and that have trial dates

11   that are much further out than this particular date.

12       I think that the Court understands and has got to be --

13   given the work that we've done and the submissions that we've

14   made, that Sergeant Carrillo's defense team has been hard at

15   work and doesn't intend not to continue to be hard at work, but

16   I can't make a date that soon.  I just can't do it.

17       And I'm caught in this situation with not having second

18   counsel now, and so I can't have second counsel help me do the

19   motions and do the other work that was involved because of the

20   fact that they know it's a November trial date.  If it doesn't

21   go capital, that's fine, but no one who wants to do the capital

22   case that I need the experience on can agree to take this thing

23   on now knowing the deadlines that the Court would have set if

24   it's a November 2022 trial date -- raise their head.  It's just

25   impossible to do.

1    So if the Court is asking for a date for a non-capital

2    trial in the future to be set to be certain, then I think if

3    you're talking about that, you have to look at spring, you

4    know, March, April, May of 2023, and that's fine.

5         **THE COURT:**  I didn't do this on my own.  You were all

6    on the platform.  These dates didn't come out of thin air.

7         **MR. THOMSON:**  No.  But the idea of changing the plan

8    that the Court had imposed, which was a capital trial date, and

9    if and when the case were determined not to be capital, we

10   would revisit the matter is something that we had no notice of.

11   I certainly did not know that at that court appearance we were

12   going to talk about setting dates, and I particularly recall

13   when the Court asked me am I available and you came up with the

14   date of November 7th -- of November sometime of me having to

15   get up, go get my calendar, and I looked at my calendar, and I

16   said, well, that day I don't have anything.

17        It was only following that court appearance when all of

18   those dates were -- were ascribed based upon that date that I

19   looked at my calendar, I looked at my other deadlines, and

20   that's what caused me to realize that that was an

21   impossibility.  And I set it out in a supplement -- a request

22   for status conference, a status conference statement with

23   respect to second counsel, and a supplement to the request for

24   setting conference.  So it was a surprise.

25        **MR. NOVAK:**  And if I may add something, Your Honor, it

1   was a surprise, and I don't feel -- and I don't know if the

2   Court is suggesting in this -- that it was a conversation.  The

3   Court presented it as the decision that the Court had made, and

4   I understand that that's -- it's the Court's calendar, but I

5   don't think that it's -- it's my experience that the Court said

6   well, how do these dates sound to everybody, and we all sat

7   there mute.  The Court basically said, "This is the schedule

8   I'm giving you," and it was not something that either Ms. Moel

9   and I had a chance to discuss before the Court set it, that

10  Mr. Thomson and Ms. Moel and I could discuss, or that we could

11  even discuss with Mr. O'Brien, and it actually came on the

12  heels of what I would say were two or three very extended

13  conversations that all counsel had together which led to the

14  first scheduling proposal which Mr. Thomson just suggested.

15      I respect the Court's experience that there's a -- I don't

16  know what word the Court used so I'll just use "competition"

17  to, like, get counsel calendared, but I will tell the Court

18  that I have no dates set for trials after September of 2022

19  other than this case.  So if this Court were to set a date

20  along the lines of what Mr. Thomson was suggesting or along the

21  lines of what we all proposed in our joint scheduling proposal,

22  it still would not conflict with anything in my schedule.

23      And while I appreciate the comparison with

24  Mr. Philipsborn, I don't think I have the nationwide

25  commitments that he has in some of his cases.  I do have cases

1   in other districts, as the Court knows, but none of them have

2   trial dates.  I have some cases in the Central District, but

3   none after September of 2022.

4       But I do have very serious concerns about my ability to

5   meet the current scheduling order, especially since I'm about

6   to start a three-month trial before Judge Chen in a

7   racketeering case that involves a homicide which will basically

8   occupy me pretty much full time from December 1st through

9   verdict, and that trial starts in March.

10      So if the Court says what are we asking, I would say

11  please give us the opportunity to understand that the Court is

12  saying it's not going to be August of 2023 and give us a chance

13  to come up with something that is consistent with what we feel

14  we need to do to prepare, and if we need to file something in

15  camera so the Court knows more precisely what that is, I'm

16  happy to do so because much of it cannot be discussed in open

17  court nor should it be.

18          **THE COURT:**  Mr. O'Brien.

19          **MR. O'BRIEN:**  Your Honor, the Government isn't asking

20  for any schedule at this point.  I think the upcoming deadlines

21  are ones that we can keep in place, and if there is a need at

22  the next status conference to delay things, we could revisit it

23  there.

24      And I would note that one of the more significant upcoming

25  deadlines is Government's expert disclosures on February 4th.

1    The other thing I would add is I was not in the status

2    conferences before the last status conference in July, but my

3    understanding was that there was -- the schedule that was

4    submitted to the Court for the August 2023 trial date was

5    contemplating if this is a capital case, which is yet to be

6    determined, but that the Court had signaled that there may be a

7    different date if it's a non-capital case, and that is what the

8    Court did at the last status conference.

9        But the Government at this point would ask that the Court

10   maintain the current deadlines.

11       **THE COURT:**  All right.  I can put you back on my

12   calendar in two weeks when I can get Mr. Justus back on, and

13   you can meet and confer in the next week and then send me

14   something, but I do think that we can be doing things in terms

15   of some of these deadlines and not waiting, because otherwise,

16   I get jammed as well, and, you know, we never know what falls

17   on our plate, so of course, you know, our criminal cases come

18   first, but to the extent that I can spread the work out over a

19   period of time, that helps with my workload and, I would think,

20   in addition to yours, except that when you say, you know, we're

21   out of pocket for six months, that concerns me.  That extends

22   the schedule.

23       **MR. THOMSON:**  Your Honor, when we came up with the

24   original date, it was submitted to the Court, I believe, in

25   April, the schedule that had all of the deadlines for filing

1    motions and other things.  The parties worked very hard to come

2    up with that date as a realistic date given our schedules and

3    given the issues that were in play, assuming it was capital.

4    And I recognize and Mr. Novak does and Ms. Moel recognize as

5    well that if it was not capital, that that would change and the

6    court date could be advanced.

7        I am not saying that the Court is not entitled to,

8    shouldn't require, and I'm not saying that I don't want to

9    continue with the litigation schedule that would allow us for

10   the filing of motions, the disclosure of experts and other

11   folks -- I am not in any way suggesting that the Court do

12   nothing between now and whatever trial date it picks.  I'm not

13   suggesting that at all.  I'm just saying if you put the

14   November date and then you backload it the way that the Court

15   did at the last appearance, I can't physically do it.  I just

16   can't do it.

17       **THE COURT:**  I hear you.  But what I want them to be

18   doing is not backdating.  I want you to then be moving

19   forward --

20       **MR. THOMSON:**  Yes.

21       **THE COURT:**  -- and that's a different calculation

22   because if you remember -- and I marked up my calendar -- you

23   know, you gave me a number of weeks that you needed, and so

24   part of my calculation was based on the week calculation that

25   you had put in your submission, and you were a little bit

1    surprised.  You said -- I don't have it right in front of me,

2    but "I need 52 weeks."  I said, "52 weeks is this."  That's how

3    I got to my own calculations based on some of the guidelines

4    you had given me.

5         **MR. THOMSON:**  Right.  But the Court did it by picking

6    a November date and working backwards.  As you can see from the

7    Status Conference Report, that advanced some of the due dates

8    by 310 days.

9         If we just go ahead and go and set out a schedule and then

10   a trial date ends up being at the conclusion of the pretrial

11   litigation, that doesn't take place.  What happened was those

12   dates that we gave you, the time frame that we gave you, was

13   based upon an August or a September trial date.  I think it was

14   a September, October trial date that we asked for, and the

15   Court decided and said that day, "If you want me to do an

16   August date, I will do it today," and we agreed that that would

17   be the proper date and then we backed it up from that.

18        But to then come in and say November and then back it up

19   from that, I just -- Your Honor, I think the Court knows me.  I

20   can't do it.

21        **THE COURT:**  I hear you, Mr. Thomson.

22        **MR. THOMSON:**  Fine.

23        **THE COURT:**  But the capital submission's made; right?

24        **MR. THOMSON:**  Yes.

25        **THE COURT:**  I don't want to lose time.

1          **MR. THOMSON:**  I understand.

2          **THE COURT:**  I don't want to lose time.

3          **MR. THOMSON:**  And I don't want you to lose time.  I

4    don't want Sergeant Carrillo to lose time.  I just can't make

5    that schedule.  And I'm glad to come up with a schedule that,

6    you know -- that has maybe, you know, a March or April trial

7    date of 2023, non-capital, and then back it up.  I'm glad to

8    work with Mr. Novak and Mr. Moeel and Mr. O'Brien and come up

9    with that schedule and give that to you.  That will be forward

10   moving, and the Court will have a regular schedule in front of

11   it, and we'll go from there.

12        I'm not -- the Court knows me from other cases.  I'm not

13   sitting around delaying.  I'm working hard.  In fact, just to

14   go back to this, I promised you -- I don't know how long ago it

15   was -- but I promised the Court that I would have a written

16   submission to the local U.S. Attorney by October of this year.

17   Not only did I do that, I ended up presenting to DOJ by that

18   same time period, which in my mind was a three-month or

19   four-month advance of that date, so I have done everything in

20   my power to move this case forward and get that submission

21   done.  The submission is done, but we don't know whether it's

22   capital, which means I have to prepare this case as if it is a

23   capital case which requires an immense amount more of

24   investigation and litigation, and I just can't do it with the

25   presence of this November trial date on top of this.  Just -- I

1   just can't do it.

2          **MR. NOVAK:**  Your Honor, I think it would be fruitful

3   for us offline to meet and confer about dates, but I do want to

4   go back to what may be one of the elephants in the room, if I

5   can use that expression, which is the question of a joint trial

6   or two separate trials because if they're going to be separate

7   trials, then -- which the Government may or may not agree with,

8   but I guess the question is do we need to litigate that issue

9   first, and if so, how, because we would then be talking about

10  two separate trials, and there may or may not be similar

11  deadlines.  I mean, it could change.

12         **THE COURT:**  Mr. Novak, I can tell you what I tend to

13  do in these circumstances so you have a sense of what my

14  default is.

15         **MR. NOVAK:**  Great.

16         **THE COURT:**  My default is that all pretrial gets done

17  at the exact same time, and I do that -- I do it in civil

18  cases, I do it in criminal cases, and I do that because my

19  experience indicates that when I don't do it and someone loses

20  a motion, I get all sorts of different kinds of arguments by

21  smart lawyers in the next round.  It's almost like a do-over

22  when the issues are similar.  So I don't allow lawyers to do

23  that.

24      I have, just this morning, met with counsel in five patent

25  cases.  They will all have the exact same schedule so that all

1    of these issues, all of the trial stuff, gets teed up at the

2    exact same time, and they all have the same trial date, and if

3    one settles, the next one goes, and if that settles, the next

4    one goes so they are all ready to go.  Otherwise, again, it's

5    just too -- it takes up too much of the Court's calendar.

6          And, by the way, in civil cases, they all settle, so it

7    works out.  But that way I'm not making some decision and then

8    all of a sudden getting new arguments that should have been

9    made in the first instance.

10         So my plan would be that it stays all on the same

11   schedule.

12         **MR. NOVAK:**  And I think from my perspective, I don't

13   want to be the lawyer coming back and trying to get the Court

14   to change a ruling in round two of a motions context where

15   motion one -- version one didn't go the way our client might

16   want, so I understand that.

17         I do think, though, there is -- there is some sense that

18   in a criminal trial, it is important for Defense counsel to

19   know as early as possible whether in a two-defendant case, for

20   example, it's a joint trial or a separate trial because it does

21   affect in some ways preparation, what witnesses are going to be

22   available, not available.  I mean, it does -- there are issues

23   that may not exist in patent cases in terms of joint versus

24   separate trials.  And I'm not trying to go on at length about

25   that, but I do think that it's -- I think it would be helpful

1    to know earlier rather than later.

2         Of course circumstances can change.  It may be that at one

3    moment the Court thinks that a severance is not necessary and

4    then there's new facts developed later which demonstrate or

5    defense strategies which, in all fairness, need to be disclosed

6    which may change the calculus, so I'm not sure what the answer

7    is, but I at least wanted to raise it.

8              **THE COURT:**  Mr. O'Brien, has the Government made a

9    decision or had any analysis on that topic or should that be

10   the first motion?

11             **MR. O'BRIEN:**  Your Honor, I wouldn't be prepared to

12   address that today.  I think it would be appropriate for that

13   to be litigated if that's the position of Defense counsel, that

14   they want separate trials.

15        I'm happy to discuss a schedule of that issue with them

16   during this two-week period before the next status conference

17   if we're coming back on the 15th.

18             **MR. NOVAK:**  There is clearly a Bruton issue,

19   Your Honor, so the first question is, is the Government going

20   to use Mr. Justus's statement or aren't they because you

21   certainly can't cleanse it so it's pretty straightforward.  And

22   then once you get past the Bruton issue, everything else gets a

23   little bit murky in terms of, frankly, antagonistic defenses

24   and whether that's what the law calls antagonistic defenses or

25   not.

1    **THE COURT:**  I mean, obviously you all can brief it.  I

2    think there are pretty high hurdles here for the Government to

3    get over in terms of trying them together.  There's just too

4    many statements.

5    **MR. O'BRIEN:**  Yes, Your Honor.

6    **MR. NOVAK:**  There is one very long statement, like

7    four-and-a-half hours.

8    **THE COURT:**  Okay.

9    **MR. NOVAK:**  I think I interrupted Mr. O'Brien, and I

10   apologize.  It's just the Zoom thing.

11   **MR. O'BRIEN:**  No -- Mr. Novak, no problem at all.

12   I was just going to say I can address that with Defense

13   counsel and be prepared to raise it again at the next status

14   conference, Your Honor.

15   **THE COURT:**  All right.  So go ahead.  We'll try this

16   again.

17   It will be helpful to me -- a couple of things would be

18   helpful.  One, when you file -- and I would ask that you would

19   file a joint statement, and if you have competing deadlines,

20   put the competing deadlines in there.

21   I can't try this case in February or March of 2023 so

22   don't ask for a trial date then.  I can do it before; I can do

23   it after.

24   It would be helpful for me to know what you're thinking in

25   terms of a schedule for assuming a capital versus a

1    non-capital.  I don't know what assumptions you're making, and

2    so that would be helpful to know, unless you're saying the

3    schedule we're going to give you is the capital schedule, and

4    then if we ever find out anything, then we can try, but by that

5    time, you'll probably already be booked.  I don't know what

6    you're thinking; that is, I don't know, for instance, whether

7    it makes a difference if this classifies as capital versus

8    non-capital in filing a motion for a bill of particulars.  I

9    don't know if that deadline matters depending on that trigger.

10   So if you're making a distinction, then it would be helpful to

11   understand your thinking, unless you want to tell me now.

12          **MR. THOMSON:**  Your Honor, perhaps I could -- for

13   clarification.  It's not so much a matter of whether the bill

14   of particulars is going to be different.  Obviously if there is

15   something in the Indictment that goes to special sentencing

16   factors or other matters that are capital, the bill of

17   particulars would address those issues, perhaps.  And then the

18   other bill of particulars would address the charges themselves.

19          What it is, is a matter of not having the time to do a

20   capital presentation, a capital investigation, a capital, you

21   know, workup of a case versus not doing a non-capital workup.

22          **THE COURT:**  Mr. Thomson, I thought we were done with

23   that.

24          **MR. THOMSON:**  What do you mean?

25          **THE COURT:**  You've made your presentation.

1          **MR. THOMSON:** No, no, no.  In terms of a trial.  If

2     I'm looking at this case -- if this case goes to trial as a

3     capital case, that puts a lot more work on me in terms of

4     investigation, litigation, and everything that is associated

5     with it because I am ending up doing two trials, a penalty

6     trial and a guilt phase trial.  That's what takes the time

7     because there's -- it requires different experts, it requires

8     different investigation, it requires a much larger

9     investigation base, it requires many, many, many more

10    witnesses.

11         I don't think that the parties, unless I'm misreading

12    it -- I don't think the parties disagree with the August 2023

13    trial date if it's capital.  And what the Court was trying to

14    do instead of waiting to see if it's going to be capital is to

15    make a firm date with respect to a non-capital case.

16         I understand that, and I can do that.  I can't do it by

17    November.  So if the Court wants us to pick a date, I could say

18    to the Court I could do a guilt phase case, non-capital, in

19    April of 2022 -- 23.  Excuse me.  I can do that.  I can't do it

20    November of 2022 given my schedule.  But if you're looking at

21    April of 2023, I can get rid of the particular commitments I've

22    got, I can map out a plan to do that, and I think at that point

23    with that in mind, I can most likely get second counsel to come

24    in, help me for the time period that it is still a capital

25    case.  And I can work with counsel, co-counsel and the

1   Government in terms of setting a schedule with an April

2   non-capital trial date as a -- as the mark, which will provide

3   the Court with all -- you know, the litigation schedule that

4   the Court wants and the deadlines that the Court desires and

5   needs in order to have its courtroom function.

6          **THE COURT:**  Mr. Novak.

7          **MR. NOVAK:**  I think that based on our limited

8   interactions with the Capital Case Committee on behalf of

9   Mr. Justus -- in other words, we didn't have to make a

10  presentation -- we would take this short period of time to

11  propose a non-capital trial date and work backward for

12  deadlines.

13         I don't think that -- I mean, things could change.  You

14  know, the Attorney General could send Mr. Justus's file back to

15  the committee and ask for a presentation.  The Attorney General

16  could sit on this case for three years, and it could go to a

17  different administration.  That's a highly unlikely scenario.

18  Both of those are.  But I think that we are assuming that

19  that's not going to happen, and we can propose a non-capital

20  trial schedule as well.

21         And I think -- but I do think the first thing that we

22  ought to do before the Court tries to pinpoint trial dates for

23  either defense team is deal with the severance issue because I

24  just think that it actually significantly affects the way cases

25  are prepared for trial.  And I don't really want to say too

1   much more about that in this forum.  I'm happy to explain it

2   more in camera, if necessary.

3          **THE COURT:**  All right.  Why don't you go work on that,

4   and I'll see you in two weeks.  Send me something in advance so

5   I'm not coming into this cold.

6          **MR. THOMSON:**  Is that the 15th at 2:30, Your Honor?

7          **THE COURT:**  We can actually do it earlier than that.

8   I think I can see you at 1:30, if that works.

9          **MR. THOMSON:**  1:30?  That's fine with me.

10         **THE COURT:**  Does 1:30 work?

11         **MS. MOEEL:**  Yes, Your Honor.

12         **MR. NOVAK:**  Your Honor, I'm supposed to be flying back

13   from Louisiana that day.

14         **THE COURT:**  What time do you land?

15         **MR. NOVAK:**  I land in the -- that's a very fair

16   question.  Just give me one second.  I can tell you.  It

17   certainly won't be at 1:30.

18         **THE COURT:**  I only have the afternoon.

19         **MR. NOVAK:**  Oh, I see.  Is there another day that week

20   that the Court has access to Mr. Justus through a classroom?

21         **THE COURT:**  We would have to check the open calendar.

22   That's not -- every other Monday afternoon is my designated

23   slot.

24         **MR. NOVAK:**  I understand.  And I apologize for that.

25         **THE COURT:**  Louisiana is an all-day trip.

1      **MR. NOVAK:**  Yes.  So it's after a day of interviewing.

2   It's like a 2:30 p.m. flight out of New Orleans after being in

3   Mississippi for three days.  I'm sure that sounds like a lot of

4   fun.

5      **THE COURT:**  Sounds like a lot of fried food.

6      **MR. NOVAK:**  God, I hope not.

7      I'm not trying to push the schedule, but would the 22nd

8   make more sense?

9      **THE COURT:**  I don't have it on the 22nd.  So we can --

10  today is the 1st, and I don't have it next week.  Then the

11  15th, and I don't --

12     **MR. NOVAK:**  I see.  It's every other.

13     **THE COURT:**  But we can look for a slot and let you

14  know.

15     **MR. NOVAK:**  Okay.

16     **MR. THOMSON:**  Does the Court want to set the 29th as a

17  backup in case there isn't an open slot or it doesn't agree

18  with our respective calendars?

19     **THE COURT:**  I have 2:00 available on the 29th.

20     **MR. THOMSON:**  That works with me, Your Honor.

21     **MR. NOVAK:**  That's fine, Your Honor.

22     **MR. O'BRIEN:**  That's fine for the Government,

23  Your Honor.

24     **THE COURT:**  Ms. Moeel, does that work for you?

25     **MS. MOEEL:**  I'm sorry.  I was muted.

1     Yes, Your Honor.  That's fine with me.

2          **THE COURT:**  All right.  Try to get me something in

3     about a week, though.  If I agree with you, I don't need to

4     talk to you.  I'll just issue an order.  And then if we have

5     to, we can talk on the 29th.

6          Does someone want to say something?

7          **MR. O'BRIEN:**  Yes, Your Honor.  I would just ask --

8     the Court has excluded time through the August 2023 trial date.

9     Just because that's such a long period of time, I would ask the

10    Court to basically reaffirm its findings from Docket No. 101

11    that this case is still complex and the speedy trial exclusion

12    is appropriate.

13         **THE COURT:**  Well, given -- I will reaffirm.  Given

14    that this entire discussion has been about the Defense not

15    having sufficient time to try this case on November 7th, 2022,

16    and is asking for more time, I do think that there is a request

17    by the Defense to exclude time under the Speedy Trial Act.

18         Mr. Thomson, agreed?

19         **MR. THOMSON:**  That's correct, Your Honor.

20         I was wondering, Your Honor, would you mind giving us

21    until November 12th to submit the schedule to you?

22         **THE COURT:**  That's fine.

23         **MR. THOMSON:**  November 12th.  Thank you.

24         **THE COURT:**  All right.

25         Mr. Thomson, I would really like to get you some help.  If

1  you could perhaps -- and I understand the complication, which I

2  didn't understand before, so if you communicated that to

3  Ms. Weiss, just understand that that doesn't always make it to

4  us because we have discussions with counsel.

5      **MR. THOMSON:**  I understand, Your Honor.  I apologize

6  for not communicating that better in the paperwork so the Court

7  had some understanding.

8      **THE COURT:**  Maybe you did it in today's filing, but I

9  prepped for this case -- I have been on the bench, virtual

10  bench, all day so when I last looked at the docket, which was,

11  I think, Friday to prep this case, I don't remember seeing your

12  filing.

13      **MR. THOMSON:**  We filed on Friday.  We didn't file

14  anything today.  But regardless of what we filed, I may not

15  have been clear enough with respect to the issue of second

16  counsel, and for that I apologize.

17      **THE COURT:**  So I do think it warrants it, and as I've

18  told you before, it's important to get people in here to learn.

19      **MR. THOMSON:**  Yes.

20      **THE COURT:**  From you all.  So that would be a positive

21  thing.

22      All right.  Everybody stay safe.  See you on the 29th if

23  not before.  Okay.  We're adjourned.

24          (Proceedings adjourned at 3:21 p.m.)

25

1

2

3                         <u>CERTIFICATE OF REPORTER</u>

4          I certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6

7    DATE:    Sunday, November 7, 2021

8

9    *Pamela Batalo Hebel*

10   _____
     Pamela Batalo Hebel, CSR No. 3593, RMR, FCRR
11   U.S. Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25