RICHARD G. NOVAK (SBN 149303)
Richard G. Novak, APLC
P.O. Box 5549
Berkeley, CA 94705
626-578-1175
Richard@RGNLaw.com

SHAFFY MOEEL (SBN 238732)
Moeel Lah Fakhoury LLP
1300 Clay St Ste 600
Oakland, CA 94612-1427
510-500-9994
Shaffy@mlf-llp.com

Attorneys for Defendant
ROBERT ALVIN JUSTUS, JR.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>vs.<br><br>**ROBERT ALVIN JUSTUS, JR.,**<br><br>Defendant. | Case No. 4:20-cr-00265-YGR-2<br><br>**DEFENDANT ROBERT ALVIN JUSTUS, JR.'S REQUEST FOR CLARIFICATION AND INVITED REQUEST FOR RECONSIDERATION OF CERTAIN PORTIONS OF THE COURT'S PRE-TRIAL ORDER NO. 2 (Doc. No. 248)**<br><br>BEFORE THE HONORABLE YVONNE GONZALEZ ROGERS, DISTRICT JUDGE<br><br>Status Conference: August 23, 2023 |

Defendant Robert Alvin Justus, Jr., by and through his counsel of record, Shaffy Moeel and Richard G. Novak, hereby requests clarification of one portion of this Court's Pre-Trial Order No. 2, and requests reconsideration of another portion of that Order.

| | | |
|---|---|---|
| 1 | Dated: August 17, 2023 | Respectfully submitted, |

RICHARD G. NOVAK
SHAFFY MOEL


*/s/Richard G. Novak*
RICHARD G. NOVAK
Attorneys for Robert Alvin Justus, Jr.

# DEFENDANT ROBERT ALVIN JUSTUS, JR.'S REQUST FOR CLARIFICATION AND INVITED REQUEST FOR RECONSIDERATION OF CERTAIN PORTIONS OF THIS COURT'S PRE-TRIAL ORDER NO. 2

## I.
## Introduction

The Court entered Pre-Trial Order No. 2 (Doc. No. 248, under seal) on August 7, 2023. As set forth below, Mr. Justus first seeks clarification of the scope of testimony this Court will permit from the government's expert Professor Perliger. Second, Mr. Justus seeks, as he was invited by the Court to do, reconsideration of this Court's order granting without prejudice the government's motion *in limine* number 4 concerning the admissibility of evidence of Mr. Carrillo's mental state close in time to the date of the shooting.

## II.
## The Permissible Scope of Professor Perliger's Expert Testimony

The Court granted, in part, and denied, in part, Mr. Justus' motion under *Daubert* to exclude or otherwise limit the testimony of Professor Perliger. (Doc. No. 248 at 10-14). The order, in the view of Mr. Justus' counsel, reiterates the previously identified limitations this Court is imposing on Professor Perliger's trial testimony pursuant to Federal Rule of Evidence 704(b) and *United States v. Morales*, 108 F.3d 1031 (9th Cir. 1997). However, there is one statement by the Court in the Order which counsel are concerned may be prone to multiple interpretations.

The Court states, "Professor Perliger's overarching opinion that Mr. Justus's *actions* were consistent with the Boogaloo movement is appropriate. He cannot, however, opine that Mr. Justus intended to facilitate Mr. Carrillo's premeditated murder of a federal officer." (Doc. No. 248 at 14, ll. 2-4) Mr. Justus italicizes, here, the word "actions" because this may suggest to the government and to Professor Perliger that the Court has concluded that Professor Perliger can testify that it is his

expert opinion that Mr. Justus's "actions" on May 29, 2020 (separate and apart from his social media posts and other electronic communications) are "consistent with the Boogaloo movement."  Mr. Justus' "actions" on May 29, 2020 include meeting Mr. Carrillo at a BART Station, driving Mr. Carrillo's van for a number of hours, getting out of the van on one or more occasions, and engaging in other specific tasks inside and outside of the van during that period of time.  The government would surely add that certain "inactions" by Mr. Justus on May 29, 2020, such as not escaping from Mr. Carrillo's van and/or not alerting law enforcement of the situation inside the van constitute a larger set of "actions" that comprise the full picture.

None of these specific "actions" and "inactions" on May 29, 2020 have any cognizable "consistency with the Boogaloo movement" as to which Professor Perliger has a proper basis for an admissible opinion.  They are, of course, actions and inactions that the government may argue prove, in conjunction with other admissible evidence and inferences, that Mr. Justus did intend to facilitate Mr. Carrillo's premeditated murder, and which Mr. Justus will argue, based upon evidence and inferences therefrom, do not so prove.  The government can certainly *argue* that Professor Perliger's opinion that Mr. Justus' social media posts and other electronic communications are "consistent with the Boogaloo movement," in combination with the social media posts which the Court ultimately determines are admissible, and other evidence, demonstrate an intent to facilitate a premeditated murder.  However, that is distinct from Professor Perliger expressing an expert opinion that the "actions" and "inactions" of Mr. Justus on May 29, 2020 are "consistent with the Boogaloo movement."

Mr. Justus may be unnecessarily focused on the Court's use of the word "actions," but Professor Perliger has never expressed the opinion that any one of or all of Mr. Justus' "actions" on May 29, 2020, as distinguished from his electronic communications, are "consistent with Boogaloo ideology" other than the long-prohibited opinions about Mr. Justus's state of mind vis-a-vis assisting Mr. Carrillo

in crimes of violence.  Expert testimony about Mr. Justus' actions on May 29, 2020 also opens up a previously unexplored issue; does Professor Perliger have a sound basis for the opinion that Mr. Justus' "actions" (as distinct from his social media posts and electronic communications) are "consistent with Boogaloo ideology"?  He has not previously expressed in writing or in his testimony how he would reach such a conclusion, nor, in Mr. Justus' view, has he actually expressed such an opinion other than those already excluded.

In order for Professor Perliger to have a proper basis under Rule 702 to offer expert testimony that Mr. Justus' "actions" or "inactions" on May 29, 2020 are "consistent with Boogaloo ideology" he would need to be able to establish that those actions and inactions are a "signature" or "modus operandi" of individuals or groups of individuals who act in conformity with that ideology. (*See e.g.*, Fed. R. Evid. 404(b)). The Boogaloo-related subset from Professor Perliger's database of incidents of anti-government extremism does not have any entries upon which that "signature" could be established, nor did his testimony establish any other bases for such an opinion.  As the "actions" and "inactions" of Mr. Justus and Mr. Carrillo on May 29, 2020 are more properly viewed as *sui generis*, such an opinion would be inadmissible.  If it is the government's position that their actions on May 29, 2020 do bear the signature at issue, it has not asserted that position and it certainly did not ask Professor Perliger if that is his opinion and what the bases for that opinion might be.

Finally, there is a second, more fundamental problem with expert testimony as to *modus operandi* in this prosecution.  The Ninth Circuit has squarely held that expert testimony concerning the *modus operandi* of drug trafficking organizations is inadmissible under Rules 401 and 403 against a criminal defendant who is not charged with conspiracy to distribute. *United States v. Vallejo*, 237 F.3d 1008 (9th Cir.), *amended*, 246 F.3d 1150 (9th Cir. 2001); *United States v. McGowan*, 274 F.3d 1251 (9th Cir. 2001); *United States v. Varela-Rivera*, 279 F.3d 1174, 1179 (9th Cir.

2002). Here, Mr. Justus is not charged with conspiring with a Boogaloo-affiliated person, persons, or organization to commit murder. He is charged with aiding and abetting a single individual's premeditated murder. Hence, expert testimony as to the *modus operandi* of the Boogaloo movement is also inadmissible under Rules 401 and 403.

This Court has specifically precluded Professor Perliger from testifying about "Mr. Justus' state of mind on the day of the alleged event" (Doc. No. 248 at 14, ll. 5-7). Mr. Justus requests that this Court clarify its Order with respect to the use of the term "actions." If the Court does intend to permit Professor Perliger to testify that Mr. Justus' "actions" (and/or inactions) on May 29, 2020, as distinct from his electronic communications and social media posts, are "consistent with Boogaloo ideology" it is Mr. Justus' view that the "bases" for such an opinion are absent, that such opinion is inadmissible under *Daubert* and under Rules, 401, 403 and 703, and that, at best, further testimony from Professor Perliger on these issues is necessary before he can be permitted to express such opinions to the jury.

### III.

**Mr. Justus Requests Reconsideration, As This Court Invited Him to Do, of the Ruling Granting without Prejudice the Government's Motion to Exclude Evidence of Mr. Carrillo's Mental State on or About May 29, 2020**

At pages 4-5 of the Court's Order, the Court grants *without prejudice* the government's motion *in limine* to exclude "evidence or testimony purporting to describe the character, personality, mental state, or mental health" of Mr. Carrillo. (Doc. No. 248 at 4-5). However, the Court also recognized that "evidence of Mr. Carrillo's mental state leading up to the attack could corroborate Mr. Justus's defense" and indicated that once the Court has ruled on the government's *Daubert* motion, it would consider a "renewed request by defendant to admit evidence of Mr. Carrillo's mental state on the day of the shooting that is more narrowly tailored to Mr. Justus's defense." (Doc No. 248 at 5, ll. 3-8)

1. The Court has now denied the entirety of both the government's *Daubert* motion and its motion *in limine* to exclude or otherwise limit Dr. Khazanov's expert testimony. (Doc. No. 248 at 5-8) The government's failed *Daubert* motion specifically argued, in part, that Dr. Khazanov did not have a proper basis for testifying about Mr. Carrillo's mental state on and about May 29, 2020.

Mr. Justus does not seek to admit time-consuming expert testimony concerning the complexities of the multiple diagnoses arrived at by each of the four highly experienced mental health professionals who evaluated Mr. Carrillo after his arrest in June 2020. Nor does Mr. Justus intend to elicit the details of the incredibly rich and reliable historical material collected by Mr. Carrillo's defense teams that were properly relied upon by those mental health professionals and by Dr. Khazanov in assessing the etiologies of symptoms they observed and their formal diagnoses.

However, it is proper for Dr. Khazanov to testify to the presence of the *symptoms* of mental illness that are both well-established by those experts and that are consistent with the dynamics that played out in Mr. Carrillo's van on May 29, 2020, as those facts do "corroborate Mr. Justus's defense." Mr. Justus has also placed under subpoena two lay witnesses who will testify to Mr. Carrillo's behavior and statements which reveal his state of mind in the *hours* just prior to the events which transpired on May 29, 2020; behaviors and statements that are consistent with the symptoms observed by the mental health professionals and that are consistent with that which Mr. Justus experienced on May 29, 2020.

Those two witnesses are: 1) Mr. Carrillo's wife, Silvia Amaya, whose statements to Mr. Carrillo's defense team about his paranoid, hyper-vigilant, and aggressive behavior in late May and early June 2020 are well documented in his Santa Cruz County Superior Court sentencing memorandum, and 2) Simon Sage Ybarra, a defendant in the related case *US v. Rush et al.*, who was with Mr. Carrillo in his van on May 28, 2020 and will testify about Mr. Carrillo's unwavering intention to kill law enforcement officers and his persistent efforts to get Mr. Ybarra

to assist him in doing so. Mr. Ybarra has already explained all of that to the FBI. The documents identifying their anticipated testimony on these issues have already been provided to the Court in the exhibits to Mr. Justus' opposition to the government's motion in limine to exclude this evidence.

Mr. Justus would prefer not to waste the jury's time, judicial resources, and the valuable compensable time of the mental health professionals who evaluated Mr. Carrillo by calling one or more of them as witnesses at trial, but he must be permitted to do so if the government intends to either attempt to undermine the reliability of Dr. Khazanov's opinion about Mr. Carrillo's relevant symptoms through cross-examination or to argue to the jury that it should not rely upon that testimony because she did not personally evaluate Mr. Carrillo. Again, neither the United States in this case nor the People in the state court prosecution had Mr. Carrillo evaluated by their own independent mental health experts, nor did they contest the accuracy of their forensic opinions at Mr. Carrillo's sentencing hearings. Whether the government has a good faith basis for attempting to undermine that testimony or argue that it is not reliable is, in Mr. Justus' view an ethical matter for government counsel to consider, given its failure to take the opportunity to develop contrary expert opinion evidence when it had an opportunity to do so.

In order to corroborate Dr. Khazanov's testimony on a matter that is not collateral to Mr. Justus' defense, Mr. Justus must be permitted to call one or more of those experts to testify to their own opinions, unless the government is prepared to limit its cross-examination and argument on these issues. Ms. Amaya and Mr. Ybarra are not experts, but personally experienced the same symptoms that Mr. Justus experienced in essentially the same timeframe, so their brief testimony is corroborative of Mr. Justus' testimony as well as Dr. Khazanov's.

Having denied the government's *Daubert* motion, and in light of Mr. Justus' presentation here of the very narrow scope of the mental state testimony he intends to present with respect to Mr. Carrillo, Mr. Justus requests that this Court amend its

order granting the government's motion *in limine* and permit the limited scope outlined above. Exclusion of this important piece of the defense case would be tantamount to a violation of Mr. Justus' constitutional right to present a complete defense.

Dated: August 17, 2023              Respectfully submitted,

                                    RICHARD G. NOVAK
                                    SHAFFY MOEL


                                    /s/*Richard G. Novak*
                                    RICHARD G. NOVAK
                                    Attorneys for Robert Alvin Justus, Jr.