RICHARD G. NOVAK (SBN 149303)
Richard G. Novak, A Professional Law Corp.
P.O. Box 5549
Berkeley, CA 94705
626-578-1175 (voice)
E-Mail: Richard@RGNLaw.com

SHAFFY MOEEL (SBN 238732)
Moeel Lah Fakhoury LLP
2006 Kala Bagai Way, Suite 16
Berkeley, CA 94704
Phone: 510-500-9994
E-Mail: shaffy@mlf-llp.com

Attorneys for Defendant
ROBERT ALVIN JUSTUS, JR.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND COURTHOUSE

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>vs.<br><br>**ROBERT ALVIN JUSTUS, JR.,**<br><br>Defendant. | Case No. 4:20-cr-00265-YGR-2<br><br>**NOTICE OF MOTION; MOTION OF DEFENDANT ROBERT ALVIN JUSTUS, JR. FOR DECLARATORY RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES, AND EXHIBITS THERETO**<br><br>**[EXHIBITS SEPARATELY FILED UNDER SEAL]**<br><br>BEFORE THE HONORABLE YVONNE GONZALEZ ROGERS, DISTRICT JUDGE<br><br>Date of Hearing: March 14, 2024<br><br>Time of Hearing: 1:00 P.M. |

**NOTICE OF MOTION; MOTION**

To this Honorable Court, the United States of America and its counsel of record: Please take notice that at 1:00 p.m. on March 14, 2024, defendant Robert Alvin Justus, Jr., by and through his counsel of record, Shaffy Moeel and Richard G. Novak, will and hereby does move this Court for an order declaring that the mandatory life sentence provision of 18 U.S.C. § 1111(b) violates Mr. Justus' right to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment to the United States Constitution.

This motion is based upon the attached memorandum of points and authorities, the exhibits separately filed under seal, and any other matters the Court may consider at the hearing on this motion.

Dated: February 6, 2024              Respectfully submitted,

                                                    RICHARD G. NOVAK
                                                  SHAFFY MOEEL

                                                  /s/*Shaffy Moeel*
                                                  SHAFFY MOEEL
                                                  Attorneys for Robert Alvin Justus, Jr.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## Introduction

On September 26, 2023, the jury trial in this matter concluded with the return of a verdict finding Mr. Justus guilty on both count one and count two of the indictment. Count one alleged a violation of 18 U.S.C. §§ 1111, 1114(1), (2)(a), aiding and abetting the premediated murder by Steven Carrillo of David Patrick Underwood. Count two alleged a violation of 18 U.S.C. §§ 1113, 1114(3), (2)(a), aiding and abetting the attempted murder by Steven Carrillo of Sombat Mifkovic.

With respect to count one, Congress has provided for only two punishment options: death, or "imprisonment for life". 18 U.S.C. § 1111(b). Of course, the Attorney General decided that the United States would not seek the death penalty against Mr. Justus, so the only punishment that the Court may impose subsequent to Mr. Justus' conviction on count one is a sentence of imprisonment for life.[1]

As set forth below, Mr. Justus moves this Court to declare that imposition of a mandatory life sentence as required by §1111(b) violates Mr. Justus' rights under the Eighth Amendment to the United States Constitution, which provides, succinctly:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.
>
> U.S. Const. Amend. 8.

---

[1] Notably, Mr. Carrillo was sentenced to a term of imprisonment of 41 years, a term of imprisonment agreed to by the parties and approved by the Court pursuant to Rule 11(c)(1)(C) after he entered pleas of guilty to offenses that did not require imposition of a life sentence.

3

As the Supreme Court explained in *Atkins v. Virginia*:

> A claim that punishment is excessive is judged not by the standards that prevailed in 1685 when Lord Jeffreys presided over the "Bloody Assizes" or when the Bill of Rights was adopted, but rather by those that currently prevail. As Chief Justice Warren explained in his opinion in *Trop* v. *Dulles,* 356 U.S. 86, 2 L. Ed. 2d 630, 78 S. Ct. 590 (1958): "The basic concept underlying the Eighth Amendment is nothing less than the dignity of man. . . The Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Id.,* at 100-101.

*Atkins v. Virginia*, 536 U.S. 304, 311-12, 122 S. Ct. 2242, 2247 (2002).

## II.

**Current Binding Precedent Does Not Reflect Evolving Standards of Decency with Respect to Statutorily Required Mandatory Life Sentences for Adult Defendants Convicted of Murder Who Have Documented Neurocognitive Impairments and Other Mental Illnesses that Impair Decision Making**

### A.   Current Binding Authority

Lest there be any doubt or argument to the contrary, Mr. Justus acknowledges that *current* binding precedent of the Supreme Court holds that imposition upon an adult defendant convicted of murder of a sentence of life imprisonment without the opportunity for release does not violate the Eighth Amendment.

In *Harmelin v. Michigan*, 501 U.S. 957, 111 S. Ct. 2680 (1991), the Supreme Court rejected an Eighth Amendment challenge to a Michigan statute that required a sentence of life without possibility of parole after conviction of an adult for possession of a large quantity of controlled substances. The Ninth Circuit

subsequently relied upon *Harmelin* to reject an Eighth Amendment challenge to imposition of a sentence of life imprisonment under federal laws punishing controlled substances offenses. *United States v. Coverson*, 539 F. App'x 747 (9th Cir. 2013). The Ninth Circuit has also, and more recently, rejected Eighth Amendment challenges to the imposition of life without release sentences upon adults convicted of the same federal murder statute at issue here, 18 U.S.C. § 1111. *United States v. Smith*, 630 F. App'x 672 (9th Cir. 2015).[2]

Separately, the Eighth Amendment does prohibit imposition of a sentence of death upon adults who have significantly impaired intellectual functioning. The Supreme Court's watershed decision in this area, *Atkins v. Virginia*, prohibits imposition of a sentence of death upon a "mentally retarded offender." *Atkins v. Virginia*, 536 U.S. 304, 321, 122 S. Ct. 2242, 2252 (2002). The Supreme Court has also prohibited imposition of a death sentence on all juvenile offenders. *Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183 (2005). The Court has also struck down as inconsistent with the Eighth Amendment state sentencing schemes which mandate imposition of a sentence of life without parole on juveniles convicted of murder. *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455 (2012). Under federal precedent, an adult is any person who is at least 18 years of age. *Id.*

Some state courts have adopted the concept of an "emerging adult" and have extended the prohibition to young adults. See. e.g. *Commonwealth v. Mattis*, 493 Mass. 216 (2024) (extending to age 20 the prohibition on imposition of a mandatory life sentence without possibility of parole). The highest court in Washington reached the same conclusion in *Matter of the Personal Restraint of Monschke*, 197 Wash. 2d 305 (2021).

---

[2] The Sentencing Reform Act of 1984 abolished federal parole. *See* 18 U.S.C. 3551 note; Public Law 98-473; 98 Stat. 2032.)

The views of foreign courts on this issue are also worth noting. The United Kingdom has banned life without parole for any offender under twenty-one years of age at the time of the offense. Sentencing Act 2020, c. 17, § 322, sch. 21, par. 2 (U.K.). In 2022, the Supreme Court of Canada unanimously ruled that life without parole sentences were unconstitutional for all offenders, regardless of age. *R. v. Bissonnette*, 2022 SCC 23.

### B. Rationale for These Eighth Amendment Limitations on Punishment

A review of the decisions cited above reveals a consistent concern that imposition of the death penalty upon adults with intellectual disabilities (*Atkins*) or upon juveniles (*Roper*), and imposition of mandatory life sentences without the possibility of parole upon juveniles (*Miller*) and "emerging adults" (*Mattis* and *Monschke*) are based on an evolving understanding of brain development and the possibility for rehabilitation of young offenders.

In *Atkins*, the Court noted that its death penalty jurisprudence held that there were two reasons consistent with states' legislatures excluding the "mentally retarded" from exclusion of the death penalty: retribution and deterrence. *Atkins* at 319. As to retribution, the Court noted that since the death penalty was already reserved for a narrow category of the most serious crimes and not the culpability of the "average murderer," then the "lesser culpability of the mentally retarded offender surely does not merit that form of retribution." *Id.* With respect to deterrence, the Court noted that the "theory of deterrence in capital sentencing is predicated upon the notion that the increased severity of the punishment will inhibit criminal actors from carrying out murderous conduct." *Atkins* at 320. "Yet it is the same cognitive and behavioral impairments that make these defendants less morally culpable—for example, the diminished ability to understand and process information, to learn from experience, to engage in logical reasoning, or to control impulses—that also make it less likely that they can process the information of the possibility of execution as a penalty and, as a result, control their conduct based upon that information." *Id.* The

Court also held that the reduced capacity of mentally retarded offenders provided yet another justification of excluding them from the death penalty, "the lesser ability of mentally retarded defendants to make a persuasive showing of mitigation in the face of prosecutorial evidence of one or more aggravating factors. Mentally retarded defendants may be less able to give meaningful assistance to their counsel and are typically poor witnesses, and their demeanor may create an unwarranted impression of lack of remorse for their crimes." *Atkins* at 321.

The *Roper* Court held that the Eighth Amendment excluded juvenile offenders under 18 from the imposition of the death penalty by relying on similar reasoning as the *Atkins* Court., *i.e.,* dismissing retribution and deterrence as goals served by the practice. In *Roper*, the Court also relied on emerging scientific and sociologic studies regarding juveniles neurological and social development.

> Three general differences between juveniles under 18 and adults demonstrate that juvenile offenders cannot with reliability be classified among the worst offenders. Juveniles' susceptibility to immature and irresponsible behavior means "their irresponsible conduct is not as morally reprehensible as that of an adult." *Thompson v. Oklahoma*, 487 U.S. 815, 835, 108 S.Ct. 2687, 101 L.Ed.2d 702. Their own vulnerability and comparative lack of control over their immediate surroundings mean juveniles have a greater claim than adults to be forgiven for failing to escape negative influences in their whole environment. See *Stanford*, supra, at 395, 109 S.Ct. 2969. The reality that juveniles still struggle to define their identity means it is less supportable to conclude that even a heinous crime committed by a juvenile is evidence of irretrievably depraved character.

*Roper* at 553.

In *Miller,* the Supreme Court relied upon its prior opinions in *Roper* and *Graham v. Florida, 560 U.S. 48, 130 S. Ct. 2011 (2010) (*holding life without the possibility of parole for juveniles convicted of nonhomicide offenses violates the Eighth Amendment) to hold that the Eighth Amendment prohibits a sentence of life without the possibility of parole for juvenile offenders convicted of murder.  Noting that nothing that the Court said in *Graham* was crime-specific, the *Miller* Court held that *Graham's* reasoning implicated *any* life without parole sentences for juveniles. *Miller* at 2458.   *Miller* also relied on the Court's prior findings regarding the social science distinctions between juvenile and adult brain development.  The Court noted that "youth matters in determining the appropriateness of a lifetime of incarceration without the possibility of parole." *Id.*

In *Commonwealth v. Sheldon Mattis*, the Massachusetts Supreme Court recently held that the Eighth Amendment prohibits imposition of sentences of life without the possibility of parole on "emerging adults" who the Court defines as defendants who were eighteen through twenty years old at the time of the commission of the crime. *Mattis*, 493 Mass. 216.  The Court relied on the prior Supreme Court cases cited above and noted that "[a]n assessment of a punishment's proportionality occurs 'in light of contemporary standards of decency which mark the progress of society." *Mattis* at 224.  In coming to its decision, the Court considered "the updated research on the brains of emerging adults, as well as the way emerging adults are treated in the Commonwealth and elsewhere…" *Id*.  The Court described at length the significance of lack of impulse control, risk taking behavior in pursuit of reward, the significance of peer influence and the capacity for change as core factors that influenced the Court's "scientifically informed view of emerging adults' culpability" and how these areas "factor into our analysis whether contemporary standards of decency permit sentencing that cohort to life without the possibility of parole." *Id.* at 229.  The Court was also influenced by the treatment of

8

emerging adults in the Commonwealth and elsewhere, finding that Massachusetts and other states throughout the country have passed legislation requiring emerging adults to be treated differently than older offenders. *Id.* at 231. The Court was also swayed by a survey of other nations' view of life without parole for this cohort, finding that countries such as the United Kingdom and Canada had already banned the practice. *Id.* at 234.

The Washington Supreme Court has held that sentences of life without the possibility of parole are unconstitutional for offenders up to 21 years old. *Monschke* at 306. "Modern social science, our precedent, and a long history of arbitrary line drawing have all shown that no clear line exists between childhood and adulthood. For some purposes, we defer to the legislature's decisions as to who constitutes an 'adult.' But when it comes to mandatory LWOP sentences, *Miller's* constitutional guaranty of an individualized sentence—one that considers the mitigating qualities of youth—must apply to defendants at least as old as these defendants were at the time of their crimes." *Id.* at 306-307. In *Monschke*, the Court was persuaded that in early adulthood, age was just a number and an individual's level of maturity and ability to assess consequence was varied. *Id.* at 325-326. "What [petitioners] have shown is that no meaningful neurological bright line exists between age 17 and age 18 or, as relevant here, between age 17 on the one hand, and ages 19 and 20 on the other hand. Thus, sentencing courts must have discretion to take the mitigating qualities of youth—those qualities emphasized in *Miller* and *Houston-Sconiers*—into account for defendants younger and older than 18. Not every 19- and 20-year-old will exhibit these mitigating characteristics, just as not every 17-year-old will. We leave it up to sentencing courts to determine which individual defendants merit leniency for these characteristics." *Id.* at 326.

These decisions of the highest court in the land, and of the highest courts of some of the nation's states reflect the "changing standard of decency" guiding Eighth Amendment jurisprudence. The nation is moving away from an approach to

9

1  sentencing individuals, the young and the impaired, to permanent and mandatory
2  sentences of life without parole.  Instead, the courts are trending toward permitting
3  judges to exercise their expertise and discretion in evaluating the appropriate
4  punishment for individual before them.

        **C.**       **Mr. Justus' Neurocognitive Impairments, Complex History of Mental Illness, and Prospect for Rehabilitation Strongly Counsel That Imposition of a Life Sentence Without Possibility of Parole Is Inconsistent with Evolving Standards of Decency**

9        This Court has previously been fully apprised of Mr. Justus' history of
10 diagnosed and misdiagnosed mental illness, his impairments in executive
11 functioning, and his prospects for rehabilitation.  A neurocognitive assessment
12 prepared by Natasha Khazanov, Ph.D., and a comprehensive social history report
13 prepared by mitigation specialist Indiana Albanes are separately filed under seal in
14 support of this motion as exhibits A and B, respectively.
15       Taken together, these reports demonstrate that while Mr. Justus was in his late
16 twenties old at the time of the offenses of conviction, he has long experienced a wide
17 range of mental illnesses including but not limited to depression, anxiety, bipolar
18 disorder, and ADHD.  Dr. Khazanov concluded, importantly that "Mr. Justus has a
19 compromised ability to assess risk, to respond to rapidly changing circumstances,
20 and make decisions under pressure. These impairments are due to a detrimental
21 combination of complex mental illness, comorbid brain damage, illicit drug
22 addiction, and a life-long history of complex trauma."  (Ex. A at 14) Importantly, Dr.
23 Khazanov also concluded that Mr. Justus is a strong candidate for rehabilitation.
24 (Ex. A at 14-15).
25       Mr. Justus' chronological age notwithstanding, the same rationale that have
26 led courts to conclude that the Eighth Amendment and constitutional provisions
27 similar to it prelude imposition of a non-parolable life sentence on adults with
28 intellectual impairments, emerging adults, juveniles or, in the case of Canada, *any*

adult, strongly counsel that evolving standards of decency cannot countenance imposition of the statutorily required sentence here.

### III.
### Conclusion

For the reasons described above, Mr. Justus moves this Court for an order declaring that the mandatory sentence of life imprisonment without the possibility of release provided for at 18 U.S.C. §1111(b) violates his right to be free from cruel and unusual punishment under the Eighth Amendment.

Dated: February 6, 2024                    Respectfully submitted,


                                           RICHARD G. NOVAK
                                           SHAFFY MOEEL
                                           /s/*Shaffy Moeel*
                                           SHAFFY MOEEL
                                           Attorneys for Robert Alvin Justus, Jr